## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| NGHIA "NATHAN" NGUYEN, individually, and on behalf of all others similarly situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) | CLASS ACTION COMPLAINT |
| v. | ) ) | JURY TRIAL REQUESTED |
| PREHIRED RECRUITING, LLC, PREHIRED, LLC, and JOSHUA JORDAN, Individually, | ) ) ) ) ) | |
| Defendants. | ) | |

## NATIONWIDE CLASS ACTION COMPLAINT

1. Plaintiff, NGHIA "NATHAN" NGUYEN ("Plaintiff"), brings this class action complaint against Defendants, PREHIRED RECRUITING, LLC, PREHIRED, LLC, and JOSHUA JORDAN, Individually, (collectively, "Defendant" or "Prehired"), individually, and on behalf of all others similar situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, who purchased Defendant's training program, signed Defendant's Income Share Agreement ("ISA"), and were sued by Defendant, from the earliest allowable time through the date of resolution of this action (the "Class Period"). Plaintiff's allegations against Defendant are based upon information and belief and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge. By and through his counsel, Plaintiff alleges the following against Defendants:

## I.   JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this class action under 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), provides federal courts original jurisdiction over any class action in which any member of a class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5 million, exclusive of interest and costs.   Plaintiff seeks certification of a class of all persons who purchased Defendant's training program, signed Defendant's ISA, and were sued by Defendant during the Class Period.   Such persons reside in the 50 United States and the District of Columbia.

3. The Court has personal jurisdiction over each Defendant.   Each Defendant has conducted and does conduct business within the State of Georgia.   Each Defendant contracts with Georgia citizens and does business within the State of Georgia.   Moreover, each Defendant, directly and/or through intermediaries (including distributors, retailers, and others), distributes, offers for sale, sells, and/or advertises the Prehired training program and ISA in the United States and the State of Gerogia.   Each Defendant has purposefully and voluntarily placed the Prehired training program and ISA into the stream of commerce with the expectation that the training program will be purchased and the ISA will be signed by consumers in Georgia.   The Prehired training program and ISA has been and continues to be purchased and/or signed by consumers in Georgia.   Each Defendant intentionally avails itself of the Georgia market through its marketing and sales of the Prehired training program and ISA in the State of Georgia, by entering into ISA contracts in the State of Georgia, and/or by having such other contacts with Georgia so as to render the exercise of

jurisdiction over it by the Georgia court consistent with traditional notions of fair play and substantial justice.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district.

5. No other forum would be more convenient for the parties and witnesses to litigate this action.

## II.   NATURE OF THE ACTION

6. This is a putative class action on behalf of a nationwide class seeking redress for Defendant's deceptive practices in its marketing, advertising, and execution of the Prehired training program and ISA.

7. Consumers are constantly and increasingly seeking to earn more money and, as a result, many consumers are interested in educational products that assist in improving their employment opportunities.

8. The Prehired training program and ISA is deceptively marketed, advertised, and sold to Plaintiff and the other Class members as a video-based educational training and mentorship program that helps consumers learn about tech/software sales so they can earn a six-figure salary, while paying nothing to Prehired up front. In return, consumers will pay Prehired 12.5% of their salary for four years, or up to $30,000. However, Prehired charges all consumers who sign the ISA $30,000.00, even if they do not finish, or even start, the Prehired training program, and even if Prehired unilaterally removes them from the program.

9. The central message of Defendant's marketing and advertising is that the Prehired training program and ISA was designed as a "no risk program" with a job guarantee.

3

10. Defendant's claims regarding the Prehired training program and ISA are false and misleading because there is no job guarantee for consumers who complete the Prehired training program.

11. Defendant markets and advertises the Prehired training program and ISA as being practical for any schedule.

12. Defendant claims that, "Even if you already have a full-time job, a house full of kids, or other commitments it's still possible to complete the program."

13. Defendant advertises the amount of time it takes to complete the Prehired training program falsely and inconsistently on its website, claiming the program is (a) 60 hours, (b) 60-120 hours, (c) up to 180 hours, and (d) 12 weeks.

14. Contrary to Defendant's marketing and advertising, some consumers were able to complete the Prehired training program in one week, while for other consumers who had prior commitments and no background in tech sales, it took substantially longer than advertised to complete the training program, or they were not able to complete the training program at all.

15. In reality, the Prehired training program was designed so members of the Class would not be able to complete the program.

16. In reality, the Prehired training program was comprised of worthless video-based training courses.

17. Defendant advertises that consumers "start paying dues only *after* they land a job." (emphasis in original).

18. Defendant advertises that consumers "pay nothing until you start earning."

19. Contrary to Defendant's marketing and advertising, Prehired charges all consumers who sign the ISA $30,000.00, even if they do not finish, or even start, the Prehired training program, and even if Prehired unilaterally removes them from the program.

20. Defendant uses its advertising and marketing of the Prehired training program to entice consumers to sign the Prehired ISA.

21. The Prehired ISA is an adhesion contract that does not contemplate reasonable liquidated damages, and instead penalizes members of the Class who do not complete the Prehired training program.

22. The Prehired ISA penalizes members of the Class who do not even start the Prehired training program.

23. The Prehired ISA penalizes members of the Class even if Defendant does not perform on the contract and incurs no losses or damages.

24. Prehired uses the ISA to penalize members of the Class even if Defendant unilaterally removes members of the Class from the Prehired training program.

25. The Prehired ISA does not allow members of the Class to cancel the contract even if they do not start or complete the Prehired training program.

26. The Prehired ISA uses definitions within definitions and confusing language to hide the fact that members of the Class who sign the Agreement will pay $20,000.00 – $30,000.00 after completing the Prehired training program, despite the program taking as little as 1-2 weeks (or 60 hours) to complete.

27. The Prehired ISA uses definitions within definitions and confusing language to hide the fact that members of the Class who sign the Agreement will pay $20,000.00 – $30,000.00

just for signing the ISA, even if members of the Class never start or complete the training program.

28. Defendant filed nearly three hundred (300) lawsuits against members of the Class who did not pay Defendant $30,000.00 after signing the ISA.

29. Defendant filed lawsuits against the members of the Class and engaged in deceptive, misleading, and unlawful acts to collect money from the members of the Class in the following ways:

    a.  Defendant filed all of its lawsuits in Delaware state court, where the Court does not have personal jurisdiction over nearly all members of the Class;

    b.  Defendant failed to properly serve members of the Class with the lawsuits filed against them;

    c.  Defendant sued members of the Class for $25,000.00 each despite the fact that Defendant did not suffer any damages;

    d.  Despite Defendant's ISA allowing for pro rata payment if members of the class do not complete the program, Defendant sued all members of the class for $25,000.00, nearly the maximum amount that Defendant charges consumers under the ISA;

    e.  Defendant filed the lawsuits against members of the class seeking specific performance under the ISA despite the fact that Defendant did not perform under the contract and did not incur any losses or damages;

    f.  Defendant sued members of the Class for $25,000.00 each despite the fact that the training program is comprised of worthless training courses.

30. As a result of its deceptive marketing and advertising, Defendant has generated substantial revenues from sales of the Prehired training program, from the Prehired ISA, and from improper lawsuits filed against members of the Class.

31. Persons like Prehired Recruiting, LLC, Prehired, LLC, and Joshua Jordan illicitly profit by promoting education classes that supposedly will allow student to achieve a "6-Figure Sales Career in 12 Weeks." Instead, they follow a common scheme in which a few-week, worthless training course ultimately costs tens of thousands of dollars and years of hassle.

### III.   PARTIES

32. Plaintiff, Nathan Nguyen, is a natural person residing in Snellville, Gwinnett County, Georgia.

33. During the Class Period, Plaintiff purchased the Prehired training program and signed Defendant's ISA.   Prior to purchasing the Prehired training program and signing Defendant's ISA, Plaintiff viewed and specifically relied upon all of the representations made by Defendant on Defendant's website, on Defendant's profile on LinkedIn, and in emails Defendant and Defendant's agents sent to Plaintiff.

34. Defendant Prehired Recruiting, LLC, is incorporated in Delaware and Florida, and has a principal place of business at 3902 Henderson Blvd, Suite 208-11, Tampa, Florida.

35. Defendant Prehired Recruiting, LLC, was incorporated in Delaware on December 29, 2021, approximately two years after Plaintiff signed Defendant's ISA, for the sole purposes of creating a nexus with Delaware, bringing baseless lawsuits against members of the Class, and misleading members of the Class into believing that they had transacted with a Delaware entity when they had not.

36. Defendant Prehired Recruiting, LLC, has never conducted business operations in Delaware.

37. Defendant Prehired, LLC is incorporated in Delaware and Florida, and has a principal place of business at 3902 Henderson Blvd, Suite 208-11, Tampa, Florida.

38. Defendant Prehired, LLC, was incorporated in Delaware on December 23, 2021, approximately two years after Plaintiff signed Defendant's ISA, for the sole purposes of creating a nexus with Delaware, bringing baseless lawsuits against members of the Class, and misleading members of the Class into believing that they had transacted with a Delaware entity when they had not.

39. Defendant Prehired, LLC, has never conducted business operations in Delaware.

40. Defendant Prehired, LLC is a party to the ISAs signed by members of the Class.

41. Defendant Prehired Recruiting, LLC, is _not_ a party to any ISA signed by any member of the Class.

42. Despite not being a party to any ISA, Defendant Prehired Recruiting, LLC, filed the nearly three hundred (300) lawsuits against members of the Class.

43. Defendant Joshua Jordan is a citizen of the State of South Carolina.

44. Defendant Joshua Jordan has never conducted business operations in Delaware.

45. Defendant Joshua Jordan is the president, CEO, owner, director and/or partner of Defendant Prehired Recruiting, LLC, and Defendant Prehired, LLC, and regularly directs the business practices of Prehired Recruiting, LLC, and Prehired, LLC.

46. At all relevant times, acting alone or in concert with others, Joshua Jordan has formulated, directed, controlled, had the authority to control, and/or participated in the acts and

practices of Prehired Recruiting, LLC, and Prehired, LLC and their employees, including the acts and practices set forth in this Complaint.

47. Defendants were and are doing business within this Judicial District.

## IV.    ALLEGATIONS OF FACT

48. In the course of, and prior to purchasing the Prehired training program and signing Defendant's ISA, Plaintiff reviewed the statements contained on Defendant's website regarding the training program.

49. In the course of, and prior to purchasing the Prehired training program and signing Defendant's ISA, Plaintiff reviewed the statements contained on Defendant's profile on LinkedIn regarding the Prehired training program, which mirror the statements contained on Defendant's website.

50. In the course of, and prior to purchasing the Prehired training program and signing Defendant's ISA, Plaintiff reviewed the statements made by Joshua Jordan and Defendant's agents over the telephone and via email regarding the Prehired training program, which mirror the statements contained on Defendant's website.

51. The website that Plaintiff visited included Prehired's representation that it admitted only less than 5% of applicants. Based on that representation, Plaintiff believed the program was a selective training program that would provide the benefits of a college education without the time commitment.

52. On September 19, 2019, Plaintiff signed Defendant's ISA and purchased Defendant's training program.

53. The "mentors" assigned to Plaintiff merely enforced Defendant's requirements rather than provided guidance.

54. The "mentors" assigned to Plaintiff were often unavailable.

55. Plaintiff completed the video-based "coursework" portion of the Prehired training program, but Defendant's requirements for the "career search process" portion of the Prehired training program were impossible to comply with.

56. As part of the "career search process" portion of the training program, Defendant required Plaintiff and members of the Class to "apply" to 20 tech companies each and every week.

57. Plaintiff discovered that there are not enough tech companies in his area to consistently apply to 20 tech companies each and every week.

58. Defendant required Plaintiff and members of the Class to apply to tech companies through the companies' own application process, and additionally required Plaintiff and members of the Class—as part of the 20 weekly "applications"—to find each company's hiring manager and/or sales director on LinkedIn, find their email address, and send them numerous messages via email and LinkedIn.

59. Defendant's required "application" process as part of its training program was impossible for Plaintiff to comply with.

60. Defendant subsequently and unilaterally removed Plaintiff from the Prehired training program.

61. Despite unilaterally removing Plaintiff from the Prehired training program, Defendant attempted to persuade Plaintiff into returning, and threatened to charge Plaintiff $30,000.00 in tuition fees if he did not return.

62. Defendant sent Plaintiff's $30,000.00 "tuition bill" to collections.

63. Several collection agencies refused to collect the debt upon learning about Defendant's scheme.

64. Defendant advertises and markets the Prehired training program and ISA as an educational tool that guarantees consumers a job with no up-front costs.

65. Defendant advertises and markets the Prehired training program as a simple process that any consumer can complete.

66. As described within this Complaint, Defendant's Class Period representations in marketing and advertising the Prehired training program and ISA are misleading because they:

    a. Omit that once consumers sign the ISA, they cannot cancel it;

    b. Omit that once consumers sign the ISA, they owe Defendant $30,000.00 even if the training program is not completed or even started;

    c. Omit that once consumers sign the ISA, Defendant will charge them $30,000.00 even if Defendant unilaterally removes consumers from the training program;

    d. Falsely claim that Defendant guarantees a job to consumers upon completion of the training program;

    e. Falsely claim that a mentor will be available to consumers throughout the training program;

    f. Falsely claim that the training program can be completed with any schedule;

    g. Make false and inconsistent claims about when consumers will begin making six-figure salaries with the help of Defendant's product;

    h. Make false and inconsistent claims about the average first-year salary;

    i. Make false and inconsistent claims about how long it takes to complete the training program.

67. As described within this Complaint, Defendant's actions are deceptive, misleading, and unlawful because Defendant:

11

a. Created the Prehired training program so that members of the Class either (1) could not complete the program or (2) would not complete the program because it is, in fact, worthless;

b. Planned on members of the Class not completing the program while Defendant had no costs, losses, or expenses;

c. Planned on members of the Class not completing the program so Defendant could extort them for $30,000.00;

d. Created the ISA as an adhesion contract with penalties for not completing the training program;

e. Created the ISA with confusing language and definitions within definitions to hide the fact that members of the Class who sign the ISA will pay $20,000.00 – $30,000.00 after completing the Prehired training program, despite the program having no value and taking as little as 1-2 weeks (or 60 hours) to complete;

f. Created the ISA with confusing language and definitions within definitions to hide the fact that members of the Class who sign the ISA will pay $20,000.00 – $30,000.00 just for signing the ISA, even if members of the Class never start or complete the training program;

g. Filed suit against the members of the Class in Delaware state court where the Court does not have personal jurisdiction over them;

h. Refused to properly serve the members of the Class with the lawsuit;

i. Refused to charge members of the Class a pro rata share depending on how much of the training program they completed;

j. Demanded specific performance on the ISA even though Defendant did not perform on the contract.

**A. <u>Defendant's Misrepresentations and Omissions on its Website</u>**

68. Throughout the Class Period, Defendant stated on its website that the Prehired training program is a "No Risk Program…" "letting you only start paying after you earn your first paycheck." *See* Group Exhibit A.

69. Throughout the Class Period, Defendant stated on its website that "Our members only start paying dues only ***after*** they land a job ***and*** make enough money per month." *See* Group Exhibit A (emphasis in original).

70. Throughout the Class Period, Defendant stated on its website that members of the Class "Pay Nothing Until You Start Earning." *See* Group Exhibit A.

71. Throughout the Class Period, Defendant stated on its website that members of the Class "Pay nothing until you get a job and partner with us in your career." *See* Group Exhibit A.

72. Throughout the Class Period, Defendant stated on its website that "We guarantee you land a $60k + job offer." *See* Group Exhibit B.

73. Throughout the Class Period, Defendant stated on its website that "We guarantee you land a $60k + job offer within 1 year of finishing coursework." *See* Group Exhibit B.

74. Throughout the Class Period, Defendant stated on its website that "As a membership association ***with a job guarantee***…" *See* Group Exhibit B (emphasis added).

75. Throughout the Class Period, Defendant stated on its website that Prehired members have a "six-figure potential in year 2." *See* Group Exhibit C.

76. Throughout the Class Period, Defendant stated on its website that "making 6 figures can happen within just a few years." *See* Group Exhibit C.

77. Throughout the Class Period, Defendant stated on its website that the training program "Fits Your Schedule… Even if you already have a full-time job, a house full of kids, or other commitments it's still possible to complete the program." *See* Exhibit D.

78. Throughout the Class Period, Defendant stated on its website that the training program is "60ish hours of course content and your coursework assignments." *See* Group Exhibit E.

79. Throughout the Class Period, Defendant stated on its website that "you can do [the training program] in as little as 1-2 weeks." *See* Group Exhibit E.

80. Throughout the Class Period, Defendant stated on its website that the training program "typically takes about 60-120 hours over 6-12 weeks." *See* Group Exhibit E.

81. Throughout the Class Period, Defendant stated on its website that "Prehired's program is 40+ hours in course content, another 20 hours of 1:1 work with your Mentor, plus 60 to 120 hours to run our Career Search Process." *See* Group Exhibit E.

82. Throughout the Class Period, Defendant stated on its website that "Throughout your Prehired experience, you'll work with a number of different mentors." *See* Group Exhibit F.

83. Throughout the Class Period, Defendant stated on its website that a career through Prehired can be started "Even if you have no prior experience." *See* Group Exhibit G.

84. Throughout the Class Period, Defendant stated on its website that "You do NOT need any previous sales experience." *See* Group Exhibit G.

85. Throughout the Class Period, Defendant stated on its website that "You do NOT need any experience in the [tech] industry." *See* Group Exhibit G.

86. Throughout the Class Period, Defendant stated on its website that "Prehired members average $69,000 in their first year." *See* Group Exhibit H.

14

87. Throughout the Class Period, Defendant stated on its website that "If you're making $6k per month (which is average for our members in year 1)…" *See* Group Exhibit H.

88. Throughout the Class Period, Defendant posted the following on its website:



*See* Exhibit I.

89. Throughout the Class Period, Defendant made all of the aforementioned statements on its LinkedIn page, in email messages to members of the Class, and/or in telephone conversations with members of the Class.

90. Plaintiff purchased Defendant's training program and signed Defendant's ISA reasonably believing, based on Defendant's representations and omissions, that, indeed, he would not have to pay Defendant until completing the program and finding a job through Prehired, which was false.

91. Plaintiff purchased Defendant's training program and signed Defendant's ISA reasonably believing, based on Defendant's representations and omissions, that, indeed, Defendant guarantees a job, which it does not.

92. Plaintiff purchased Defendant's training program and signed Defendant's ISA reasonably believing, based on Defendant's representations and omissions, that, indeed, Defendant's customers begin making six-figure salaries after one year, which they do not.

93. Plaintiff purchased Defendant's training program and signed Defendant's ISA reasonably believing, based on Defendant's representations and omissions, that, indeed, the program is possible to complete with pre-existing commitments such as a full time job or children, which it is not.

94. Plaintiff purchased Defendant's training program and signed Defendant's ISA reasonably believing, based on Defendant's representations and omissions, that, indeed, he could complete the program in 60 hours, which he could not.

95. Plaintiff purchased Defendant's training program and signed Defendant's ISA reasonably believing, based on Defendant's representations and omissions, that, indeed, he would be assigned a mentor, which he was not.

96. Plaintiff purchased Defendant's training program and signed Defendant's ISA reasonably believing, based on Defendant's representations and omissions, that, indeed, the program could be completed without prior experience in sales or in the tech industry, which it cannot.

97. Plaintiff purchased Defendant's training program and signed Defendant's ISA reasonably believing, based on Defendant's representations and omissions, that, indeed, he would not

have to pay Defendant until he finished Defendant's training program and found a job, which was not true.

98.  Plaintiff purchased Defendant's training program and signed Defendant's ISA reasonably believing, based on Defendant's representations and omissions, that, indeed, the average first-year salary for Defendant's members is $6,000 per month, or alternatively, $69,000 per year, which it is not.

99.  Plaintiff signed Defendant's ISA and purchased Defendant's training program reasonably believing, based on Defendant's representations and omissions, that, indeed, Defendant's 1-2 week, 60-hour video-based training program would not cost $30,000.00, which it does.

100.    Defendant's website, advertisements, and statements are misleading because:

   a.  Contrary to Defendant's advertising that members of the Class will not pay Prehired until they get a job and start working, Defendant's ISA requires members of the Class to pay $20,000 - $30,000 even if: (1) they do not start the Prehired training program, (2) they do not complete the Prehired training program, or (3) they do not get a job through Prehired. *See* Group Exhibit A.

   b.  Contrary to Defendant's advertising that members of the Class will not pay Prehired until they get a job and start working, Defendant uses its ISA to charge members of the Class $30,000 even if Prehired unilaterally removes them from the training program. *See* Group Exhibit A.

   c.  Contrary to Defendant's advertising, Defendant does not offer a job guarantee. Throughout the Class Period, Defendant maintained certain requirements before members of the Class could qualify for the job guarantee, which could take more than twelve (12) months. *See* Group Exhibit B.

d.  Defendant makes false and inconsistent claims about when consumers will begin making six-figure salaries with the help of Defendant's product. *See* Group Exhibit C.

e.  Contrary to Defendant's advertising, the training program is nearly impossible to complete for members of the Class with pre-existing commitments, such as a full-time job or children. *See* Exhibit D.

f.  The training program is nearly impossible to complete for members of the Class with no pre-existing commitments, such as a full-time job or children. *See* Exhibit D.

g.  Defendant makes false and inconsistent claims about the amount of time it takes to complete the Prehired training program (from 60 hours or 1-2 weeks, to over 180 hours or 12 weeks). *See* Group Exhibit E.

h.  Contrary to Defendant's advertising, the training program can take substantially longer to complete than advertised.

i.  Contrary to Defendant's advertising that "[t]hroughout your Prehired experience, [members of the Class] will work with a number of different mentors," Defendant does not provide mentorship to members of the Class. *See* Group Exhibit F.

j.  Contrary to Defendant's advertising, the training program is nearly impossible to complete without prior experience in sales or in the tech industry. *See* Group Exhibit G.

k.  Defendant makes false and inconsistent claims about the average first-year salary. *See* Group Exhibit H.

l.   Defendant failed to answer the question "How much does Prehired cost?" on its website and failed to clearly disclose that Prehired costs, at a minimum, $20,000.00. *See* Group Exhibit I.

101.   Plaintiff read and relied upon the aforementioned statements on Defendant's website, on Defendant's LinkedIn page, in email messages from Defendant and Defendant's agents, and in telephone conversations with Defendant and Defendant's agents, when Plaintiff purchased Defendant's training program and signed Defendant's ISA.

**B.   Defendant's Deceptive, Misleading, and Unlawful Acts: Defendant's Training Program and Income Share Agreement**

102.   Defendant created the Prehired training program to be difficult and time consuming to complete.

103.   Defendant requires consumers to sign an ISA prior to accessing to the training program.

104.   Defendant's ISA does not describe the training program.

105.   Plaintiff and members of the Class relied solely on Defendant's website, LinkedIn page, email messages from Defendant and Defendant's agents, and telephone conversation with Defendant and Defendant's agents to learn about Defendant's training program.

106.   Defendant's ISA does not reflect the promises, guarantees, and/or statements contained on Defendant's website, LinkedIn page, and email messages as described herein.

107.   The Prehired ISA is an adhesion contract that does not contemplate reasonable liquidated damages, but instead penalizes members of the Class who do not complete the Prehired training program.

108.     The Prehired ISA penalizes members of the Class who do not even start the Prehired training program.

109.     Prehired uses the ISA to penalize members of the Class even if Defendant unilaterally removes members of the Class from the Prehired training program.

110.     The Prehired ISA penalizes members of the Class even if Defendant has not performed on the contract at all and has not incurred losses, expenses, or damages.

111.     Despite the Prehired training program costing Defendant little or no money per customer, and despite the training program being of little or no value to consumers and members of the Class, Defendant's ISA requires consumers who complete the Prehired training program to pay between $20,000.00 and $30,000.00.

112.     Although the ISA allows consumers who complete the Prehired training program to pay between $20,000.00 and $30,000.00, members of the Class who do not finish or even start the training program were threatened to pay $30,000.00 and sued for $25,000.00.

113.     The Prehired ISA does not include liquidated damages in the event Defendant does not perform on the contract.

114.     The Prehired ISA contains an arbitration clause that only applies to claims made by consumers against Defendant, and does not apply to claims made by Defendant against consumers.

115.     The Prehired ISA does not allow members of the Class to cancel the contract even if they do not start or complete the Prehired training program.

116.     The Prehired ISA uses definitions within definitions and confusing language to hide the fact that members of the Class who sign the ISA will pay $20,000.00 – $30,000.00 after

completing the Prehired training program, despite the program taking as little as 1-2 weeks (or 60 hours) to complete.

117.     The Prehired ISA uses definitions within definitions and confusing language to hide the fact that members of the Class who sign the ISA will pay $20,000.00 – $30,000.00 just for signing the ISA, even if members of the Class never start or complete the training program.

118.     Defendant knowingly and intentionally concealed and failed to disclose material facts regarding the Prehired ISA and Defendant's application of the ISA to members of the Class who do not complete or even start the Prehired training program.

119.     Defendant knowingly and intentionally concealed and failed to disclose material facts regarding the Prehired ISA and Defendant's application of the ISA to members of the Class who Defendant unilaterally removes from the Prehired training program.

120.     The ISA is an unconscionable contract that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to defraud members of the Class by providing a worthless video-based training course that ultimately costs tens of thousands of dollars and years of hassle.

**C.   Defendant's Deceptive, Misleading, and Unlawful Acts: Suing the Members of the Class**

121.     When members of the Class were unsurprisingly unable to complete the Prehired training program, Defendant filed lawsuits against members of the Class in Delaware state court.

122.     When members of the Class unsurprisingly realized that the Prehired training program was of no value and did not conform to Defendant's advertising and marketing,

and therefore declined to complete the training program, Defendant filed lawsuits against members of the Class in Delaware state court.

123.    Throughout the Class Period, Defendant knew that the State Court of Delaware does not have personal jurisdiction over nearly all members of the Class.

124.    Defendant refused and failed to properly serve members of the Class with the lawsuits filed against them.

125.    Despite the fact that Defendant's ISA allows for pro rata payment if members of the class do not complete the program, Defendant sued the members of the class for $25,000.00, nearly the maximum amount allowable under the ISA.

126.    Defendant filed the lawsuit against members of the Class seeking specific performance under the ISA despite the fact that Defendant did not perform under the contract and did not incur any losses or damages.

127.    Defendant has succeeded in extorting members of the Class for a substantial amount of money as a result of its deceptive, misleading, and unlawful acts in relation to its lawsuits filed against members of the Class.

128.    The conduct alleged above by Prehired follows a pattern documented by the Attorney General for the State of Delaware, which commenced an investigation into the claims and representations that Prehired makes to students and potential students, including those relating to the ISAs. The Delaware AG wrote a letter to Chief Magistrate Judge Alan Davis, of the Justice of the Peace Court in Georgetown, Delaware, where Prehired filed nearly three hundred (300) lawsuits against consumers who signed Prehired ISAs.

129.    The aforementioned letter authored by the Delaware AG states, *inter alia*:

a. "All but two of [the nearly 300 lawsuits filed by Prehired in Delaware] were filed against individuals who do not reside in Delaware and, upon information and belief, have no connection to this State. Similarly, the [Delaware Department of Justice Consumer Protection Unit] does not believe that Prehired had any ties with Delaware until the formation of Prehired Recruiting, LLC in December 2021 for the purpose of filing these lawsuits most, if not all of which, seek $25,000 in alleged damages." *See* Exhibit J.

b. "Prehired describes itself as a "membership association" that provides "training, mentoring and networking to help you land a full-time sales job in a business-to-business (B2B) software company within about 12 weeks even with no previous sales or tech experience." Prehired claims that it only admits less than 5% applicants, and that its program "typically takes about 60-120 hours over 6-12 weeks (about 10 hours per week)," though the program is video-based and self-paced. **However, the [Delaware Department of Justice Consumer Protection Unit] has spoken with one student that was able to complete the program in less than one week**." (Emphasis added) *See* Exhibit J.

c. **"There is probable cause that Mr. Jordan and Prehired Recruiting, LLC attempted to manufacture jurisdiction in this Court of over nearly 300 consumer lawsuits only two of which have any bona fide connection to this State."** (Emphasis in original) *See* Exhibit J.

d. "There appears to be probable cause that Mr. Jordan has engaged in misconduct in connection with the filing and prosecution of these lawsuits, as well as a likelihood that consumers will be harmed as a result… In the meantime, some consumers may

default or settle their cases, not because they believe they owe Prehired the money, but because the costs of defending these lawsuits in terms of time, travel, and lawyers' fees is simply too high." *See* Exhibit J.

e.  "[N]early all of these lawsuits were filed against out-of-state consumers, not businesses, who face substantial and expensive barriers defending themselves in a court that is hundreds or thousands of miles away from home." *See* Exhibit J.

f.  "The risk of harm to consumers nationwide is simply too great for Mr. Jordan (or any other non-lawyer agent selected by Prehired Recruiting, LLC) to continue these lawsuits without qualified legal counsel. Personal jurisdiction, service, and venue are all issues of Constitutional import. It is fundamentally unfair that nearly 300 individual defendants should each be forced to hire an attorney to raise the same defect in Mr. Jordan's lawsuits because Mr. Jordan, who has a staggering **$7,225,000.00** at stake, *chose* to proceed without the assistance of counsel."[1] (Emphasis in original) *See* Exhibit J.

g.  "Prehired Recruiting, LLC and Prehired, LLC appear to have both been recently formed as Delaware limited liability companies for the purposes of creating a nexus to this state. This may have misled consumer-defendants into believing that they had transacted with a Delaware entity when they had not…. The [Delaware Department of Justice Consumer Protection Unit] finds Prehired's assertion that it is conducting operations out of its registered agent's office [in Delaware] disingenuous, at best." *See* Exhibit J.

---

[1] The lawsuits were filed by Joshua Jordan acting as "agent" for Prehired Recruiting.

h. "There is a substantial risk that consumers will confuse Prehired, LLC, a *Delaware* limited liability company that is less than three months old with Prehired, LLC, a *Florida* limited liability company that appears to be the original creditor in most, if not all, of these cases." (Emphasis in original) *See* Exhibit J.

i. "Adding to this confusion, Mr. Jordan has alleged in the matter of *Prehired Recruiting LLC v. Mehmed Tiro*, JP13-22-000897 that "Plaintiff as well as the original creditor is a Delaware limited liability company…" (emphasis added). This does not appear to be true since the Delaware Prehired, LLC entity was not formed until three months after Mr. Tiro allegedly executed his contract." *See* Exhibit J.

j. "In sum, the [Delaware Department of Justice Consumer Protection Unit] is gravely concerned about the imminent harm these lawsuits may cause consumers and is diligently working to determine whether Prehired has violated any consumer protection laws in the course of its dealings with students." *See* Exhibit J.

**D. <u>Ascertainable Damages and Injury</u>**

130.    Plaintiff and members of the Class purchased Defendant's training program and signed Defendant's ISA believing it had the qualities that Plaintiff and members of the Class sought based on Defendant's deceptive advertising and misrepresentations, but the product was actually unsatisfactory to Plaintiff and members of the Class for the reasons stated in this Complaint.

131.    Plaintiff and members of the Class would not have purchased Defendant's training program and signed Defendant's ISA at all, absent Defendant's false and misleading advertisements and misrepresentations.

132.     Plaintiff and members of the Class were induced to and did purchase Defendant's training program and signed Defendant's ISA based on the false statements and misrepresentations described in this Complaint.

133.     Plaintiff and members of the Class were induced to and did purchase Defendant's training program and signed Defendant's ISA based on Defendant knowingly and intentionally concealing and failing to disclose material facts concerning the training program and ISA as described in this Complaint.

134.     Instead of receiving a product that teaches consumers about tech sales so they can earn a six-figure salary, Plaintiff and members of the Class received a worthless video-based training course that ultimately costs tens of thousands of dollars and years of hassle.

135.     Plaintiff and members of the Class lost money as a result of Defendant's deception in that they were required to hire legal counsel to defend themselves against Defendant's baseless lawsuits.

136.     Plaintiff and members of the Class have an immediate and continuing risk of harm as a direct and proximate result of Defendant's baseless lawsuits and demand for $25,000.00.

137.     Members of the Class lost money as a result of Defendant's deception in that they did not receive what they paid for.

138.     Members of the Class lost money as a result of Defendant's deception in that they paid Defendant after Defendant threatened to file suit against them or after Defendant did, in fact, file suit against them.

139.    Plaintiff and members of the Class altered their position to their detriment and suffered damages in an amount equal to the amount they paid for Defendant's training program and/or attorney's fees to defend against Defendant's lawsuits.

## V.    CLASS ALLEGATIONS

140.    Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following nationwide consumer class (the "Class"):

> All consumers who purchased Defendant's training program, signed Defendant's Income Share Agreement, and were sued by Defendant from the earliest allowable time through the date of resolution of this action. Specifically excluded from this Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant; also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

141.    If necessary, Plaintiff brings this action on behalf of the following proposed Subclass:

> All consumers who paid Defendant after being sued by Defendant or after receiving threats from Defendant to sue them, from the earliest allowable time through the date of resolution of this action. Specifically excluded from this Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant; also excluded are any federal, state, or local governmental

27

entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

142.    Unless otherwise stated, the nationwide consumer Class and the Subclass are collectively referred to as the "Class."

143.    Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

144.    **Numerosity**: The Class is sufficiently numerous, as it includes hundreds of persons who have purchased Defendant's training program, signed Defendant's ISA, and were improperly sued by Defendant.  Thus, joinder of such persons in a single action or bringing all members of the Class before the Court is impracticable for purposes of Rule 23(a)(1) of the Federal Rules of Civil Procedure.  The disposition of the Class members' claims in this class action will substantially benefit both the parties and the Court.

145.    The Class is readily ascertainable through Defendant's business records and public Court records.  Notice can be provided to Class members by publication of notice by electronic mail, internet postings, radio, newspapers, and magazines.

146.    **Commonality and Predominance**: There are questions of law and fact common to the Class for purposes of Federal Rule of Civil Procedure 23(a)(2).  Defendant's advertising, marketing, and promotional practices were supplied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class. All Class members were and are similarly affected by having purchased Defendant's training program; having signed Defendant's ISA for the marketed purpose of learning about tech sales and retaining a six-figure salary job, as advertised by Defendant; and

having been sued by Defendant; and the relief sought herein is for the benefit of Plaintiff and other members of the Class. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. Whether Defendant's acts and practices in connection with the promotion, marketing, advertising, distribution, and sale of its training program and ISA as described herein are deceptive, unconscionable, misleading, or otherwise a violation of the relevant consumer protection statutes;

b. Whether Defendant's acts and practices in connection with its enforcement of its ISA as described herein are deceptive, unconscionable, misleading, or otherwise a violation of the relevant consumer protection statutes;

c. Whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, and sale of its training program and use of its ISA;

d. Whether Defendant represented that its training program and ISA has characteristics, benefits, uses, or qualities that they do not have;

e. Whether Defendant was unjustly enriched at the expense of members of the Class as a result of its conduct;

f. Whether Plaintiff and the Class are entitled to injunctive relief based on Defendant's conduct; and

g. Whether Plaintiff and the Class are entitled to damages and the measure of damages owed to them.

147.     **Typicality**: Plaintiff asserts claims that are typical of the claims of the entire Class for purposes of Federal Rule of Civil Procedure 23(a)(3).  Plaintiff and all Class members

have been subjected to the same wrongful conduct because they relied on Defendant's deceptive, misrepresented, and misleading advertisements and marketing; signed Defendant's ISA that they otherwise would not have; purchased Defendant's training program that they otherwise would not have; and were subsequently sued by Defendant. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

148.     **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests antagonistic to those of other Class members. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent him. Plaintiff anticipates no difficulty in the management of this litigation as a class action. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

149.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Defendant's advertising, marketing, promotional practices, training program, and ISA were supplied uniformly to all members of the Class.

150.     **Superiority**: Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above substantially predominate over any questions that may affect only individual members of the Class. Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy. Class members have suffered and will suffer irreparable harm and

damages as a result of Defendant's wrongful conduct. Because of the nature of the individual Class members' claims, few, if any, could or would otherwise afford to seek legal redress against Defendant for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding, and essential to the interests of justice insofar as the resolution of Class members' claims is concerned. Absent a representative class action, Class members would continue to suffer losses for which they would have no remedy, and Defendant would unjustly retain the proceeds of its ill-gotten gains. Even if separate actions could be brought by individual members of the Class, the resulting multiplicity of lawsuits would cause undue hardship, burden and expense for the Court and the litigants, as well as create a risk of inconsistent rulings which might be dispositive of the interests of the other Class members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests. The class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violations of State's Consumer Fraud and Deceptive Business Practices Act**

151.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

152.    Plaintiff brings this Count, Violations of States' Consumer Fraud and Deceptive Business Practices Act, individually and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violations of the respective statutory consumer protection laws, as follows:

    a.  The Alabama Deceptive Trade Practices Act, Ala. Code 1975, § 8-19-1, *et seq.*;

b.  The Alaska Unfair Trade Practices and Consumer Protection Act, AS §
    45.50.471, *et seq.*;

c.  The Arizona Consumer Fraud Act, A.R.S. §§ 44-1521, *et seq.*;

d.  The Arkansas Deceptive Trade Practices Act, Ark. Code §§ 4-88-101, *et seq.*;

e.  The California Unfair Competition Law, Bus. & Prof. Code §17200 *et seq.*;

f.  The California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*;

g.  The Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

h.  The Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

i.  The Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

j.  The D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

k.  The Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

l.  The Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

m.  The Hawaii Unfair Competition Law, H.R.S. §480-1, *et seq.*;

n.  The Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

o.  The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS
    501/1 *et seq.*;

p.  The Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*;

q.  The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann.
    §714H.1, *et seq.*;

r.  The Kansas Consumer Protection Act, K.S.A., § 50-623, *et seq.*;

s.  The Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

t.  The Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S.
    51:1401, *et seq.*;

u.  The Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

v.  The Maryland Consumer Protection Act, MD Code, Commercial Law, §13-301, *et seq.*;

w.  The Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

x.  The Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

y.  The Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

z.  The Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

aa. The Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

bb. The Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq.*;

cc. The Nebraska Consumer Protection Act, Neb. Rev. St. §§ 59-1601, *et seq.*;

dd. The Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*;

ee. The New Hampshire Regulation of Business Practices for Consumer Protection N.D.Rev.Stat. §358-A:1, *et seq.*;

ff.  The New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

gg. The New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq.*;

hh. The New York Consumer Protection from Deceptive Acts and Practices, N.T. GBL (McKinney) § 349, *et seq.*;

ii.  The North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. §75-1.1, *et seq.*;

jj.  The North Dakota Consumer Fraud Act, N.D. Cent. Code Chapter 51-15, *et seq.*;

kk. The Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*;

ll.  The Oklahoma Consumer Protection Act, 15 O.S.2001 §§ 751, *et seq.*;

mm. The Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*;

nn.  The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

oo.  The Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

pp.  The South Carolina Unfair Trade Practices Act, SC Code 1976, § 39-5-10, *et seq.*,

qq.  The South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

rr.  The Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;

ss.  The Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

tt.  The Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

uu.  The Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

vv.  The Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

ww. The Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

xx.  The West Virginia Consumer Credit Ad Protection Act, W.Va. Code § 46A-1-101, *et seq.*;

yy.  The Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq.*; and,

zz.  The Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

153.  Defendant conducts a significant amount of trade and commerce in each of the 50 states and the District of Columbia.

154.  Defendant's training program is "merchandise" within the meaning of each of the

50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act.

155.     Defendant's foregoing misrepresentations and omissions regarding its training program and ISA are deceptive and/or unfair acts or practices prohibited by the consumer fraud statutes set forth above.

156.     Defendant intended to be deceptive and/or unfair to Plaintiff and the proposed Class by intentionally making the foregoing false and misleading statements and omitting accurate statements as alleged above, because had Defendant provided accurate information, Plaintiff and the proposed Class members would not have purchased the training program or signed the ISA.

157.     Defendant's practice of creating, approving, and distributing advertising for the training program and ISA that contained false and misleading representations regarding the training program and ISA for the purpose of selling them to Plaintiff and the proposed Class, as alleged in detail *supra*, is both an unfair act and deceptive practice prohibited by the foregoing statutes.

158.     As described herein, Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the products, and violated and continue to violate the following sections of each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act, which prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact …."

159.     Defendant consciously and deceptively omitted material facts to Plaintiff and the

Class with regard to the training program and ISA in its advertising and marketing of the product.

160.　　Defendant's unconscionable and deceptive conduct described herein included the omission and concealment regarding the training program and ISA in the product's advertising and marketing.

161.　　Defendant intended that Plaintiff and the Class rely on Defendant's acts or omissions so that Plaintiff and the other Class members would purchase Defendant's training program and sign Defendant's ISA.

162.　　Plaintiff and the Class members purchased Defendant's training program and signed Defendant's ISA in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding the training program and application of the ISA.

163.　　Had Defendant disclosed all material information regarding the training program and ISA in its advertising and marketing, and had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class would not have purchased the training program and would not have signed the ISA, or would have paid less for the training program.

164.　　By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the training program, the ISA, and the application of the ISA, Defendant engaged in one or more unfair or deceptive business practices prohibited by each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act.

165.　　Defendant's unfair or deceptive acts or practices, including its misrepresentations,

36

concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the nature and value of the training program and ISA in order to induce Class members to purchase the training program and sign the ISA, and in order to collect payments from Class members.

166.     The facts regarding the nature and value of Defendant's training program and ISA that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their decision to purchase Defendant's training program and sign Defendant's ISA.

167.     Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

168.     Defendant had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act in the course of its business. Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning its training program and application of its ISA because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, it made misrepresentations and/or it made representations that were rendered misleading because they were contradicted by withheld

facts.

169.     The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

170.     As a direct and proximate result of the foregoing, the Plaintiff and Class members have been damaged in an amount to be determined at trial.

171.     As a direct and proximate result of the foregoing, the Plaintiff and Class members experienced mental and emotional distress, anguish, and suffering.

172.     As a direct and proximate result of the foregoing, Plaintiff and Class members did not receive the benefit of their bargain and/or they suffered out-of-pocket loss.

173.     Defendant's violations of each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act present a continuing risk of future harm to Plaintiff and the Class members.

174.     The acts, omissions, and practices of Defendant detailed herein proximately caused members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies paid to Defendant as a result of the lawsuits and/or threats of lawsuits filed against them, that they otherwise would not have, and they are entitled to such damages, together with appropriate penalties, including injunctive relief, treble damages, and attorneys' fees and costs of suit.

175.     The acts, omissions, and practice of Defendant detailed herein proximately caused members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to repay Defendant for the training program that they otherwise would not have, and they are entitled to such damages, together with appropriate penalties, including injunctive relief, treble damages, punitive damages, and attorneys' fees and costs of suit.

176.    As a result of the acts, omissions, and practice of Defendant detailed herein, Plaintiff and members of the Class are at an ongoing risk of future harm by Defendant.

**SECOND CLAIM FOR RELIEF**
**Unjust Enrichment**

177.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

178.    Plaintiff brings this claim on behalf of members of the Subclass in and under the unjust enrichment laws of each of the 50 states and the District of Columbia.

179.    As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.

180.    Specifically, by its misconduct described herein, Defendant has accepted a benefit (*i.e.,* money paid by the Subclass members for Defendant's training program, after being threatened and/or sued by Defendant) to the detriment of the proposed Subclass.

181.    Through the deceptive advertising and marketing tactics and misrepresentations described above, Defendant advertised, marketed and sold to consumers Defendant's training program, and induced consumers to sign its ISA, within the Class Period, by means of fraudulent, deceptive and/or negligent misrepresentations.

182.    Defendant's retention of the full amount of monies paid for the training program following Defendant's threats and lawsuits violates the fundamental principles of justice, equity, and good conscience.

183.    The object and intention of Defendant's scheme was not only to sell said training programs, but also to assure and collect certain profits for Defendant.

184.    Defendant accepted the benefit based on its misrepresentations and omissions regarding the training program and ISA to the proposed Subclass members, and it would

be inequitable for the Defendant to retain the benefit of those monies, as it was paid the money under false pretenses.

185.     The portion of the money illegally paid to and retained by Defendant came directly from the cash and/or checking accounts of all potential Subclass members.

186.     As the training program sales were obtained/induced by improper means, Defendant is not legally or equitably entitled to retain a portion of the profits it realized from the revenue generated.

187.     Defendant breached the public trust by selling its training program through illegal means, and by collecting money through illegal means, to the detriment of Plaintiff and the putative Subclass.

188.     By Defendant's actions in taking and withholding said monies, the putative Subclass conferred, and continue to confer, a benefit upon Defendant, and Defendant is aware of such benefit.

189.     By Defendant's improper and wrongful taking and withholding of the putative Subclass' monies, Defendant was and is financially unjustly enriched.

190.     Defendant's retention of said benefit violates the fundamental principles of justice, equity, and good conscience.

191.     Moreover, the putative Subclass seek a remedy wherein Defendant is required to refund its ill-gotten gains.

192.     Defendant has been enriched, and it would be unjust for Defendant to retain the enrichment, which was secured through illegal and improper means. As such, Defendant must be ordered to pay restitution and disgorge the ill-gotten gains.

193.     A claim for unjust enrichment is proper and properly pled as an independent cause

of action.

194.    Defendant has obtained money to which it is not entitled, and interest on that money, and under these circumstances equity and good conscience require that the Defendant return the money with interest to the proposed Subclass.

195.    As a direct and proximate result of Defendant's actions and/or inactions, members of the putative Subclass have suffered a detriment in an amount to be determined more precisely at trial, including restitution and disgorgement in the amount Defendant was unjustly enriched.

**THIRD CLAIM FOR RELIEF**
**Declaratory Judgment**

196.    Plaintiff realleges and incorporates the allegations Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

197.    Plaintiff brings this claim individually and on behalf of the Class.

198.    A dispute between Plaintiff and the Class and Defendant is before this Court concerning Defendant's conduct and the rights of Plaintiff and the Class that arise under each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act.

199.    Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that Defendant's (1) advertising and marketing of its training program and ISA as alleged herein, (2) use of the ISA, and (3) enforcement of its ISAs by filing nearly three hundred (300) lawsuits against members of the Class in Delaware, are violation of each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act.

200.    Defendant's unlawful conduct and general business practice as described herein are

ongoing. Accordingly, Defendant has violated, and continues to violate, each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act.

201.     As a result of the aforementioned violations, Plaintiff and the Class members have been injured.

## VII.    PRAYER

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against PREHIRED RECRUITING, LLC, PREHIRED, LLC, and JOSHUA JORDAN, Individually, as follows, ON ALL CAUSES OF ACTION:

202.     An order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

203.     An order enjoining Defendants from:

    a.  Marketing the Prehired training program as a "No Risk Program…" "letting you only start paying after you earn your first paycheck."

    b.  Marketing the Prehired training program by claiming "Our members only start paying dues only *after* they land a job *and* make enough money per month."

    c.  Marketing the Prehired training program by claiming consumers "Pay Nothing Until You Start Earning."

    d.  Marketing the Prehired training program by claiming consumers "Pay nothing until you get a job and partner with us in your career."

    e.  Marketing the Prehired training program by claiming "We guarantee you land a $60k + job offer."

f.  Marketing the Prehired training program by claiming "We guarantee you land a $60k + job offer within 1 year of finishing coursework."

g.  Marketing the Prehired training program "As a membership association with a job guarantee…"

h.  Marketing the Prehired training program as providing "six-figure potential in year 2."

i.  Marketing the Prehired training program by claiming that "making 6 figures can happen within just a few years."

j.  Marketing that the Prehired training program "Fits Your Schedule… Even if you already have a full-time job, a house full of kids, or other commitments it's still possible to complete the program."

k.  Marketing the Prehired training program as "60ish hours of course content and your coursework assignments."

l.  Marketing the Prehired training program by claiming "you can do [the training program] in as little as 1-2 weeks."

m.  Marketing the Prehired training program as "typically tak[ing] about 60-120 hours over 6-12 weeks."

n.  Marketing the Prehired training program as "40+ hours in course content, another 20 hours of 1:1 work with your Mentor, plus 60 to 120 hours to run our Career Search Process."

o.  Marketing the Prehired training program by claiming that "Throughout your Prehired experience, you'll work with a number of different mentors."

p.  Marketing the Prehired training program by claiming that a career through Prehired can be started "Even if you have no prior experience."

q.  Marketing the Prehired training program by claiming that "You do NOT need any previous sales experience."

r.  Marketing the Prehired training program by claiming that "You do NOT need any experience in the industry."

s.  Marketing the Prehired training program by claiming that "Prehired members average $69,000 in their first year."

t.  Marketing the Prehired training program by claiming that "If you're making $6k per month (which is average for our members in year 1)…" and

u.  Using or enforcing its Income Share Agreement.

204.    An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful act or practice.

205.    An order compelling Defendant to destroy all misleading and deceptive advertising materials and products.

206.    An order dismissing all complaints filed by Defendant against members of the Class.

207.    An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act, plus pre-and post-judgment interest thereon.

208.    For damages in an amount to be determined at trial.

209.     For statutory damages.

210.     For punitive damages.

211.     Costs, expenses, and reasonable attorneys' fees.

212.     Appropriate preliminary and/or final injunctive relief against the conduct of

Defendant described herein.

213.     For all such other and further relief as the Court may deem just and proper

### JURY DEMAND

214.     Plaintiff demands a trial by jury on all causes of action so triable.


DATED:  July 22, 2022              RESPECTFULLY SUBMITTED,


                        By: /s/ Michael R. Bertucci
                              Michael R. Bertucci
                              IL State Bar #: 6326591
                              Agruss Law Firm, LLC
                              4809 N. Ravenswood Ave., Suite 419
                              Chicago, IL 60640
                              Tel: 312-224-4695
                              Fax: 312-253-4451
                              mbertucci@agrusslawfirm.com
                              Attorney for Plaintiff


                              By: /s/ Shireen Hormozdi
                              Shireen Hormozdi
                              Georgia Bar No. 366987
                              Agruss Law Firm, LLC
                              4809 N. Ravenswood Avenue, Suite 419
                              Chicago, IL 60640&
                              Hormozdi Law Firm, LLC
                              1770 Indian Trail Lilburn Road, Suite 175
                              Norcross, GA 30093
                              Tel: 312-224-4695
                              Direct: 678-960-9030
                              shireen@agrusslawfirm.com
                              Attorney for Plaintiff

# **<u>EXHIBIT A</u>**

# **<u>EXHIBIT B</u>**

# <u>EXHIBIT C</u>

# **EXHIBIT D**

# **EXHIBIT E**

# **EXHIBIT F**

# **EXHIBIT G**

# **<u>EXHIBIT H</u>**

# **EXHIBIT I**

# **<u>EXHIBIT J</u>**