| | |
|---|---|
| NGHIA "NATHAN" NGUYEN, individually, ) and on behalf of all others similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> ) <br> ) <br> v. ) <br> ) <br> PREHIRED RECRUITING, LLC, a Delaware ) limited liability company, PREHIRED ) RECRUITING, LLC, a Florida limited ) Liability company, PREHIRED, LLC, a ) Delaware limited liability company, ) PREHIRED, LLC, a Florida limited liability ) Company, JOSHUA JORDAN, Individually, ) LEIF TECHNOLOGIES, INC., ) MERATAS INC., and ISA PLUS, LLC ) <br> ) <br> ) <br> Defendants. ) | Case No. 1:22-cv-02894-MCH <br><br><br><br> FIRST AMENDED CLASS ACTION COMPLAINT <br><br> JURY TRIAL REQUESTED |

## FIRST AMENDED NATIONWIDE CLASS ACTION COMPLAINT

1. Plaintiff, NGHIA "NATHAN" NGUYEN ("Plaintiff"), brings this class action complaint against Defendants, PREHIRED, LLC, a Delaware limited liability company, PREHIRED, LLC, a Florida limited liability, JOSHUA JORDAN, Individually (collectively, "Prehired"), PREHIRED RECRUITING, LLC, a Delaware limited liability company, PREHIRED RECRUITING, LLC, a Florida limited liability company, (the two Prehired Recruiting, LLC defendants are referred to collectively as "Prehired Recruiting, LLC"), LEIF TECHNOLOGIES, INC. ("Leif"), MERATAS INC. ("Meratas"), and ISA PLUS, LLC (all defendants are referred to collectively as "Defendants"), individually, and on behalf of all others similar situated, pursuant to Rule 23 of the Federal Rules of Civil

1

Procedure, who purchased Prehired's training program, signed Defendants' Income Share Agreement ("ISA"), and were sued by Prehired Recruiting, LLC, from the earliest allowable time through the date of resolution of this action (the "Class Period"). Plaintiff's allegations against Defendants are based upon information and belief and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.  By and through his counsel, Plaintiff alleges the following against Defendants:

## I.    JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this class action under 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), provides federal courts original jurisdiction over any class action in which any member of a class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5 million, exclusive of interest and costs. Plaintiff seeks certification of a class of all persons who purchased Prehired's training program, signed Defendants' ISA, and were sued by Prehired Recruiting, LLC during the Class Period. Such persons reside in the 50 United States and the District of Columbia.

3. The Court has personal jurisdiction over each Defendant.  Each Defendant has conducted and does conduct business within the State of Georgia.  Each Defendant contracts with Georgia citizens and does business within the State of Georgia.  Moreover, each Defendant, directly and/or through intermediaries (including distributors, retailers, and others), distributes, offers for sale, sells, advertises and/or enforces the Prehired training program and/or ISA in the United States and the State of Gerogia.  Prehired, Leif, Meratas, and ISA Plus, LLC have purposefully and voluntarily placed the Prehired training program and ISA

into the stream of commerce with the expectation that the training program will be purchased and the ISA will be signed by consumers in Georgia. Additionally, Prehired Recruiting, LLC, brought lawsuits against members of the State of Georgia involving the Prehired training program and ISA. The Prehired training program and ISA has been and continues to be purchased and/or signed by consumers in Georgia. Each Defendant intentionally avails itself of the Georgia market through its marketing, sales and/or enforcement of the Prehired training program and ISA in the State of Georgia, by entering into ISA contracts in the State of Georgia, and/or by having such other contacts with Georgia so as to render the exercise of jurisdiction over it by the Georgia court consistent with traditional notions of fair play and substantial justice.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district.

5. No other forum would be more convenient for the parties and witnesses to litigate this action.

## II.    NATURE OF THE ACTION

6. This is a putative class action on behalf of a nationwide class seeking redress for Defendants' deceptive practices in its marketing, advertising, execution, and/or enforcement of the Prehired training program and ISA.

7. Defendants Prehired and Prehired Recruiting, LLC, are now being investigated by the Attorney General for the State of Delaware and are being sued by the Attorney General for the State of Washington for the conduct alleged in this Complaint.

8. Consumers are constantly and increasingly seeking to earn more money and, as a result, many consumers are interested in educational products that assist in improving their employment opportunities.

9. The Prehired training program and ISA is deceptively marketed, advertised, and sold to Plaintiff and the other Class members as a video-based educational training and mentorship program that helps consumers learn about tech/software sales so they can earn a six-figure salary, while paying nothing to Prehired up front.

10. The Prehired ISA does not describe the Prehired training program that consumers purchase when they sign the ISA.

11. Unbeknownst to consumers, the Prehired training program is nothing more than approximately fifteen (15) hours of online training videos, recorded by Defendant Joshua Jordan. In return, consumers are required under the ISA to pay Prehired 12.5% of their salary for four years, or up to $30,000.00. However, Prehired charges all consumers who sign the ISA $30,000.00, even if they do not finish, or even start, the Prehired training program, and even if Prehired unilaterally removes them from the program.

12. The Prehired training program is a for-profit nonpublic postsecondary educational institution.

13. The central message of Prehired's marketing and advertising is that the Prehired training program and ISA was designed as a "no risk program" with a job guarantee.

14. Prehired's claims regarding the Prehired training program and ISA are false and misleading because there is no job guarantee for consumers who complete the Prehired training program.

15. Prehired markets and advertises the Prehired training program and ISA as being practical for any schedule.

16. Prehired claims that, "Even if you already have a full-time job, a house full of kids, or other commitments it's still possible to complete the program."

17. Prehired advertises the amount of time it takes to complete the Prehired training program falsely and inconsistently on its website, claiming the program is (a) 60 hours, (b) 60-120 hours, (c) up to 180 hours, and (d) 12 weeks.

18. Contrary to Prehired's marketing and advertising, some consumers were able to complete the Prehired training program in one week, while for other consumers who had prior commitments and no background in tech sales, it took substantially longer than advertised to complete the training program, or they were not able to complete the training program at all.

19. In reality, the Prehired training program was designed so members of the Class would not be able to complete the program.

20. In reality, the Prehired training program was comprised of worthless video-based training courses followed by requirements that are nearly impossible to meet.

21. Prehired advertises that consumers "start paying dues only *after* they land a job." (emphasis in original).

22. Prehired advertises that consumers "pay nothing until you start earning."

23. Contrary to Prehired's marketing and advertising, Prehired charges all consumers who sign the ISA $30,000.00, even if they do not finish, or even start, the Prehired training program, and even if Prehired unilaterally removes them from the program.

24. Prehired uses its advertising and marketing of the Prehired training program to entice consumers to sign the Prehired ISA.[1]

25. The Prehired ISA is an adhesion contract that does not contemplate reasonable liquidated damages, and instead penalizes members of the Class who do not complete the Prehired training program.

26. The Prehired ISA penalizes members of the Class who do not even start the Prehired training program.

27. The Prehired ISA penalizes members of the Class even if Defendants do not perform on the contract and incur no losses or damages.

28. Defendants use the ISA to penalize members of the Class even if Prehired unilaterally removes members of the Class from the Prehired training program.

29. The Prehired ISA does not allow members of the Class to cancel the contract even if they do not start or complete the Prehired training program.

30. The Prehired ISA uses definitions within definitions and confusing language to hide the fact that members of the Class who sign the Agreement will pay $20,000.00 to $30,000.00 after completing the Prehired training program, despite the coursework taking as little as 1-2 weeks (or 60 hours) to complete.

31. The Prehired ISA uses definitions within definitions and confusing language to hide the fact that members of the Class who sign the Agreement will pay $20,000.00 to $30,000.00

---

[1] Defendants Meratas and Leif designed and implemented two separate, but substantially similar, ISA agreements utilized by Prehired (the "Meratas ISA" and the "Leif ISA"). They are referred to collectively as the "Prehired ISA." The Leif ISA is attached hereto as Exhibit K. The Meratas ISA is attached hereto as Exhibit L.

just for signing the ISA, even if members of the Class never start or complete the training program.

32. On or about January 7, 2020, Prehired sold and transferred all of its rights, interests, and title in the ISAs to ISA Plus, LLC.

33. Despite the foregoing, Prehired Recruiting, LLC, which was not a party to any ISA, filed nearly three hundred (300) lawsuits against members of the Class who did not pay Prehired $30,000.00 after signing the ISA.[2]

34. Prehired Recruiting, LLC filed lawsuits against the members of the Class and, along with Joshua Jordan, engaged in deceptive, misleading, and unlawful acts to collect money from the members of the Class in the following ways:

   a. Prehired Recruiting, LLC was not a party to any of the ISAs.

   b. Prehired Recruiting, LLC, never had any rights, interest, or title to the ISAs.

   c. Neither Prehired, LLC, nor Joshua Jordan had any rights, interest, or title in the ISAs because their rights, interest, and title had been sold to ISA Plus, LLC.

   d. Despite signatories to the ISAs living throughout the country, Prehired Recruiting, LLC filed all of its lawsuits in Delaware state court, where the Court does not have personal jurisdiction over nearly all members of the Class;

   e. Prehired Recruiting, LLC failed to properly serve members of the Class with the lawsuits filed against them;

   f. Prehired Recruiting, LLC sued members of the Class for $25,000.00 each despite the fact that Prehired and Prehired Recruiting, LLC did not suffer any damages;

---

[2] Defendants' filings do not specify which Prehired Recruiting entity is the plaintiff in these collection actions.

g.  Despite the Prehired ISA allowing for pro rata payment if members of the class do not complete the program, Prehired Recruiting, LLC sued all members of the class for $25,000.00, nearly the maximum amount that Prehired charges consumers under the ISA;

h.  Prehired Recruiting, LLC filed the lawsuits against members of the class seeking specific performance under the ISA despite the fact that Prehired did not perform under the contract and did not incur any losses or damages;

i.  Prehired Recruiting, LLC sued members of the Class for $25,000.00 each despite the fact that the training program is comprised of worthless training courses.

35. As a result of Prehired's deceptive marketing and advertising, Defendants have generated substantial revenues from sales of the Prehired training program, from the Prehired ISA, and from improper lawsuits filed against members of the Class.

36. The laws of many states where Prehired operates, including but not limited to, Georgia, Washington, North Carolina, and California, require educational institutions such as Prehired to obtain a license, approval, or authorization from the State in order to operate in that State.

37. Prehired does not have a license, approval, or authorization to operate as required by many states, including, but not limited to, Georgia, Washington, North Carolina, and California.

38. Prehired violated the licensing, approval and/or authorization laws of numerous states, including, but not limited to, Georgia, Washington, North Carolina, and California, which provide that the ISAs are therefore void and/or unenforceable.

39. Many or all of the ISAs are void and/or unenforceable, including Plaintiff's ISA.

40. The Prehired ISAs contain a choice of law provision that is void and/or unenforceable.

41. The Leif ISAs contain an arbitration clause that is unconscionable, void and/or unenforceable under Georgia law.

42. The arbitration clause in the Leif ISAs lacks consideration and is therefore void and/or unenforceable.

43. The arbitration clause in the Leif ISAs lacks mutuality and is therefore void and/or unenforceable.

44. The arbitration clause in the Leif ISA does not explain Plaintiff's rights in layman terms, and these rights were not otherwise explained to Plaintiff or members of the Class.

45. The Meratas ISAs contain a jury trial waiver clause that is unconscionable, void and/or unenforceable.

46. The Prehired ISAs contain a class action waiver clause that is unconscionable, void, and/or unenforceable.

47. The Prehired ISAs, arbitration clauses, and class action waivers violate and oppose public policy.

48. By filing nearly 300 complaints in Delaware state court, Prehired Recruitng, LLC and Prehired acted inconsistently with their right to arbitrate the case at bar and waived such right.

49. Georgia Code 20-3-250.7(a)(1), the Nonpublic Postsecondary Educational Institutions Act of 1990, prohibits, among other things, operating a nonpublic postsecondary educational institution or conducting postsecondary activities in the state unless the person, group, or entity operating the institution or conducting the activities is issued a current certificate of valid authorization by the executive director.

50. Prehired is a nonpublic postsecondary educational institution as defined by the Georgia Code, and Prehired conducted postsecondary activities in Georgia.

51. "Any contract entered into with any person for any course of instruction by or on behalf of any owner, employee, or other representative of a nonpublic postsecondary educational institution subject to this part to which a certificate of authorization has not been issued shall be unenforceable in any action brought thereon." Georgia Code 20-3-250.7(e).

52. Prehired, which is not listed among the nonpublic postsecondary educational institutions that hold a current certificate of valid authorization in Georgia, violated Georgia Code 20-3-250.7(a)(1).

53. Georgia law also provides that "(a) No person, group, or entity of whatever kind, alone or in concert with others, shall:

    a. (4) Make or cause to be made any statement or representation, oral, written, or visual, in connection with the offering or publicizing of a course, if such person knows or reasonably should have known the statement or representation to be false, deceptive, substantially inaccurate, or misleading.

    b. (5) Instruct or educate, or offer to instruct or educate, including advertising or soliciting for such purpose, enroll or offer to enroll, contract or offer to contract with any person for such purpose, or award any educational credential, or contract with any institution or party to perform any such act, in this state, whether such person, group, or entity is located within or outside this state, unless such person, group, or entity observes and is in compliance with the minimum standards set forth in Code Section 20-3-250.6, the criteria established by the commission pursuant to

paragraph (2) of subsection (b) of Code Section 20-3-250.5, and the rules and regulations adopted by the commission.

c.   (6) Promise or guarantee employment utilizing information, training, or skill purported to be provided or otherwise enhanced by a course, unless the promisor or guarantor offers the student or prospective student a bona fide contract of employment agreeing to employ said student or prospective student for a specified period of time in a business or other enterprise regularly conducted by him or her where such information, training, or skill is a normal condition of employment.

d.   (7) Do any act constituting part of the conduct or administration of a course or the obtaining of students thereof, if such person knows or reasonably should know that any phase or incident of the conduct or administration of the course is being carried on by the use of fraud, deception, other misrepresentation, or by any person soliciting students without a permit." Georgia Code 20-3-250.7.

54. Prehired violated the aforementioned sections of the Georgia Nonpublic Postsecondary Educational Institutions Act.

55. Meratas and Leif violated, at least, section 20-3-250.7(a)(7) of the Georgia Nonpublic Postsecondary Educational Institutions Act.

56. Plaintiff's Leif ISA does not disclose that Prehired did not have a current certificate of valid authorization to operate in Georgia in violation of Georgia law.

57. Plaintiff's Leif ISA does not advise Plaintiff of his rights under Georgia law, including that the ISA is unenforceable.

58. Georgia Code 20-3-250.7(f) provides that "Any person, group, or entity or any owner, officer, agent, or employee thereof who willfully violates this Code section, Code Section

20-3-250.8, or willfully fails or refuses to deposit with the executive director the records required by Code Section 20-3-250.17 shall be guilty of a misdemeanor."

59. Because Defendants' conduct violates Georgia law, and because Prehired was never issued a certificate of valid authorization to operate in Georgia, Plaintiff's contract is unenforceable and Plaintiff seeks to void his contract and the contracts of other Georgia residents who financed their Prehired training through an illegal ISA.

60. The Prehired ISAs signed by members of the Class in Georgia are unconscionable, void, and unenforceable.

61. At least twenty-five (25) members of the Class reside in Georgia, signed Prehired's ISA in Georgia, engaged in Prehired's training program in Georgia, and were subsequently sued by Prehired Recruiting, LLC and Joshua Jordan in Delaware State Court. *See* Exhibit M.

62. Washington Code 28C.10.090 requires private vocational schools like Prehired to be licensed under the statute in order to "conduct business of any kind, make any offers, advertise or solicit, or enter into any contracts."

63. Prehired is a private vocational school as defined by the Washington Code.

64. "A note, instrument, or other evidence of indebtedness or contract relating to payment for education is not enforceable in the courts of this state by a private vocational school or holder of the instrument unless the private vocational school was licensed under this chapter at the time the note, instrument, or other evidence of indebtedness or contract was entered into." Washington Code 28C.10.180.

65. Prehired, which is not listed among the private vocational schools hat hold a current license under the Washington Code, violated Washington Code 28C.10.090.

66. Washington law also provides that "If a contract or evidence of indebtedness contains any of the following agreements, the contract is voidable at the option of the student or prospective student:

    a. (1) That the law of another state shall apply;

    b. (2) That the maker or any person liable on the contract or evidence of indebtedness consents to the jurisdiction of another state;" Washington Code 28C.10.170

67. Prehired and Leif violated section 28C.10.170(1) of the Washington Code because their ISAs contain a "governing law" clause which states that the laws of New York govern the contract.

68. Prehired and Meratas violated sections 28C.10.170(1)-(2) of the Washington Code because their ISAs contain a choice of jurisdiction and venue clause, and a "governing law" clause which states that jurisdiction and venue is in New York and the laws of New York govern the contract.

69. A violation of Wash. Rev. Code § 28C.10 et seq. "affects the public interest and is an unfair or deceptive act or practice in violation of Wash. Rev. Code § 19.86.020 of the [Washington] Consumer Protection Act."

70. The Prehired ISAs signed by members of the Class in Washington are unconscionable, void, and unenforceable.

71. At least six (6) members of the Class reside in Washington, signed Prehired's ISA in Washington, engaged in Prehired's training program in Washington, and were subsequently sued by Prehired Recruiting, LLC and Joshua Jordan in Delaware State Court. *See* Exhibit N.

72. North Carolina Gen. Stat. 115D-90(a) requires proprietary schools like Prehired to obtain a license in order to "operate, conduct or maintain or offer to operate in this State."

73. Prehired is a proprietary school as defined by the North Carolina Gen. Stat. 115D-87 *et. seq*.

74. "All contracts entered into by proprietary schools with students or prospective students, and all promissory notes or other evidence of indebtedness taken in lieu of cash payments by such schools shall be null and void unless such schools are duly licensed as required by this Article." North Carolina Gen. Stat. 115D-97.

75. The operation of a proprietary school without first obtaining a license is a misdemeanor under North Carolina law. North Carolina Gen. Stat. 115D-96.

76. Prehired, which is not listed among the proprietary schools that holds a current license under the North Carolina statute, violated Carolina Gen. Stat. 115D-90(a).

77. The Prehired ISAs signed by members of the Class in North Carolina are unconscionable, void, and unenforceable.

78. At least seventeen (17) members of the Class reside in North Carolina, signed Prehired's ISA in North Carolina, and engaged in Prehired's training program in North Carolina, were subsequently sued by Prehired Recruiting, LLC and Joshua Jordan in Delaware State Court. *See* Exhibit O.

79. The California Education Code, California Private Postsecondary Education Act, section 94886, requires any person conducting or doing business as a private post-secondary educational institution to obtain approval to operate under the statute. Cal. Educ. Code 94886.

80. Prehired is a private post-secondary educational institution as defined by the California Private Postsecondary Education Act.

81. "A note, instrument, or other evidence of indebtedness relating to payment for an educational program is not enforceable by an institution unless, at the time of execution of the note, instrument, or other evidence of indebtedness, the institution held an approval to operate." Cal. Educ. Code 94917.

82. Prehired, which is not listed among the private postsecondary educational institutions that have been approved in California, violated the California Education Code section 94886.

83. The Prehired ISAs signed by members of the Class in California are unconscionable, void, and unenforceable.

84. At least ten (10) members of the Class reside in California, signed Prehired's ISA in California, and engaged in Prehired's training program in California, were subsequently sued by Prehired Recruiting, LLC and Joshua Jordan in Delaware State Court. *See* Exhibit P.

85. Defendants' ISAs were intentionally drafted to aid Prehired and Prehired Recruiting, LLC in perpetuating their fraudulent scheme against members of the Class.

86. Persons like Prehired Recruiting, LLC, Prehired, LLC, Joshua Jordan, Leif Technologies, Inc., Meratas Inc., and ISA Plus, LLC illicitly profit by promoting education classes that supposedly will allow student to achieve a "6-Figure Sales Career in 12 Weeks." Instead, they follow a common scheme in which a few-week, worthless training course ultimately costs tens of thousands of dollars and years of hassle.

## III. PARTIES

87. Plaintiff, Nathan Nguyen, is a natural person residing in Snellville, Gwinnett County, Georgia.

88. During the Class Period, Plaintiff purchased the Prehired training program and signed Prehired's ISA. Prior to purchasing the Prehired training program and signing the ISA, Plaintiff viewed and specifically relied upon all of the representations made by Prehired on Prehired's website, on Prehired's profile on LinkedIn, and in emails Prehired and Prehired's agents sent to Plaintiff.

89. Defendant Prehired Recruiting, LLC, is a Florida limited liability company with a principal place of business at 3902 Henderson Blvd, Suite 208-11, Tampa, Florida.

90. Defendant Prehired Recruiting, LLC, is a Delaware limited liability company with a principal place of business at 8 The Green, Suite B, Dover, DE 19901.

91. Defendant Prehired Recruiting, LLC, was incorporated in Delaware on December 29, 2021, approximately two years after Plaintiff signed Defendant's ISA, for the sole purposes of creating a nexus with Delaware, bringing baseless lawsuits against members of the Class, and misleading members of the Class into believing that they had transacted with a Delaware entity when they had not.

92. Defendant Prehired Recruiting, LLC, has never conducted business operations in Delaware.

93. Defendant Prehired, LLC is a Florida limited liability company with a principal place of business at 3902 Henderson Blvd, Suite 208-11, Tampa, Florida.

94. Defendant Prehired, LLC is a Delaware limited liability company with a principal place of business at 8 The Green, Suite B, Dover, DE 19901.

95. Defendant Prehired, LLC, was incorporated in Delaware on December 23, 2021, approximately two years after Plaintiff signed Defendant's ISA, for the sole purposes of creating a nexus with Delaware, and misleading members of the Class into believing that they had transacted with a Delaware entity when they had not.

96. Defendant Prehired, LLC, has never conducted business operations in Delaware.

97. Defendant Prehired, LLC, the Florida limited liability company, is a party to the ISAs signed by members of the Class.

98. Defendant Prehired Recruiting, LLC, is _not_ a party to any ISA signed by any member of the Class.

99. Despite not being a party to any ISA, Defendant Prehired Recruiting, LLC, filed nearly three hundred (300) lawsuits against members of the Class.

100. Defendant Prehired Recruiting, LLC is not an assignee of the Prehired ISAs, nor is it an assignee, agent, designee, servicer, officer, director, employee, affiliate, subsidiary, parent of and/or debt collector for Prehired, LLC.

101. Defendant Joshua Jordan is a citizen of the State of South Carolina.

102. Defendant Joshua Jordan has never conducted business operations in Delaware.

103. Defendant Joshua Jordan is the president, CEO, owner, director and/or partner of Defendant Prehired Recruiting, LLC, and Defendant Prehired, LLC, and regularly directs the business practices of Prehired Recruiting, LLC, and Prehired, LLC.

104. At all relevant times, acting alone or in concert with others, Joshua Jordan has formulated, directed, controlled, had the authority to control, and/or participated in the acts and practices of Prehired Recruiting, LLC, and Prehired, LLC and their employees, including the acts and practices set forth in this Complaint.

105.    Defendant Meratas is a corporation with headquarters in Connecticut.

106.    Defendant Leif is a corporation with headquarters in New York.

107.    Defendant ISA Plus, LLC is a Delaware limited liability company.

108.    Defendant ISA Plus, LLC is the corporate successor to SELF Financial, a Delaware limited liability company.

109.    Defendants Meratas and Leif designed and implemented two separate, but substantially similar, ISA agreements utilized by Prehired (the "Meratas ISA" and the "Leif ISA").

110.    Under the Meratas ISA, Meratas is designated as Prehired LLC's "agent" to "manage the customer portal."

111.    Under the Meratas ISA, Meratas has the "authority to act on behalf of" Prehired LLC, including to verify Prehired members' employment status, monitor their earned income, process payments, and perform account reconciliations.

112.    Under the Leif ISA, Leif is designated as Prehired LLC's "agent" including for "managing and processing all aspects of this Agreement."

113.    Under the Leif ISA, Leif has the authority to monitor earned income, process payments, and perform reconciliations.

114.    Plaintiff signed the Leif ISA with Prehired LLC.

115.    Defendants were and are doing business within this Judicial District.

## IV.    ALLEGATIONS OF FACT

116.    In the course of, and prior to purchasing the Prehired training program and signing Prehired's ISA, Plaintiff reviewed the statements contained on Prehired's website regarding the training program.

117. In the course of, and prior to purchasing the Prehired training program and signing Prehired's ISA, Plaintiff reviewed the statements contained on Prehired's profile on LinkedIn regarding the Prehired training program, which mirror the statements contained on Prehired's website.

118. In the course of, and prior to purchasing the Prehired training program and signing Prehired's ISA, Plaintiff reviewed the statements made by Joshua Jordan and Prehired's agents over the telephone and via email regarding the Prehired training program, which mirror the statements contained on Prehired's website.

119. The website that Plaintiff visited included Prehired's representation that it admitted only less than 5% of applicants. Based on that representation, Plaintiff believed the program was a selective training program that would provide the benefits of a college education without the time commitment.

120. On September 19, 2019, Plaintiff signed Prehired's ISA and purchased Prehired's training program.

121. The "mentors" assigned to Plaintiff merely enforced Defendant's requirements rather than provided guidance.

122. The "mentors" assigned to Plaintiff were often unavailable.

123. Plaintiff completed the video-based "coursework" portion of the Prehired training program, but Prehired's requirements for the "career search process" portion of the Prehired training program were impossible to comply with.

124. As part of the "career search process" portion of the training program, Prehired required Plaintiff and members of the Class to "apply" to 20 tech companies each and every week.

125.     Plaintiff discovered that there are not enough tech companies in his area to consistently apply to 20 tech companies each and every week.

126.     Prehired required Plaintiff and members of the Class to apply to tech companies through the companies' own application process, and additionally required Plaintiff and members of the Class—as part of the 20 weekly "applications"—to find each company's hiring manager and/or sales director on LinkedIn, find their email address, and send them numerous messages via email and LinkedIn.

127.     Prehired's required "application" process as part of its training program was impossible for Plaintiff to comply with and required Plaintiff to harass hiring managers.

128.     Prehired subsequently and unilaterally removed Plaintiff from the Prehired training program.

129.     Despite unilaterally removing Plaintiff from the Prehired training program, Prehired attempted to persuade Plaintiff into returning, and threatened to charge Plaintiff $30,000.00 in tuition fees if he did not return.

130.     Prehired sent Plaintiff's $30,000.00 "tuition bill" to collections.

131.     Several collection agencies refused to collect the debt upon learning about Prehired' scheme.

132.     Prehired advertises and markets the Prehired training program and ISA as an educational tool that guarantees consumers a job with no up-front costs.

133.     Prehired advertises and markets the Prehired training program as a simple process that any consumer can complete.

134.    As described within this Complaint, Prehired's Class Period representations in marketing and advertising the Prehired training program and ISA are misleading because they:

  a.  Omit that once consumers sign the Meratas ISA, they cannot cancel it after seven days;

  b.  Omit that once consumers sign the Leif ISA, they cannot cancel it at all;

  c.  Omit that once consumers sign the ISA, they owe Defendants $30,000.00 even if the training program is not completed or even started;

  d.  Omit that once consumers sign the ISA, Defendants will charge them $30,000.00 even if Prehired unilaterally removes consumers from the training program;

  e.  Falsely claim that Prehired guarantees a job to consumers upon completion of the training program;

  f.  Falsely claim that a mentor will be available to consumers throughout the training program;

  g.  Falsely claim that the training program can be completed with any schedule;

  h.  Make false and inconsistent claims about when consumers will begin making six-figure salaries with the help of Prehired's product;

  i.  Make false and inconsistent claims about the average first-year salary;

  j.  Make false and inconsistent claims about how long it takes to complete the training program.

135.    As described within this Complaint, Prehired's Class Period representations in marketing and advertising the Prehired training program and ISA are misleading to Georgia consumers because they omit that the training program and ISA violate Georgia law.

136.    As described within this Complaint, Prehired's actions are deceptive, misleading, and unlawful because Prehired:

   a. Created the Prehired training program so that members of the Class either (1) could not complete the program or (2) would not complete the program because it is, in fact, worthless;

   b. Planned on members of the Class not completing the program while Defendant had no costs, losses, or expenses;

   c. Planned on members of the Class not completing the program so Defendant could extort them for $30,000.00;

   d. Refused to charge members of the Class a pro rata share depending on how much of the training program they completed; and

   e. Demanded specific performance on the ISA even though Defendants did not perform on the contract.

137.    As described within this Complaint, Defendants' actions are deceptive, misleading, and unlawful because Defendants:

   a. Created the ISA as an adhesion contract with penalties for not completing the training program;

   b. Created the ISA with confusing language and definitions within definitions to hide the fact that members of the Class who sign the ISA will pay $20,000.00 to $30,000.00 after completing the Prehired training program, despite the program having no value and taking as little as 1-2 weeks (or 60 hours) to complete;

   c. Created the ISA with confusing language and definitions within definitions to hide the fact that members of the Class who sign the ISA will pay $20,000.00 to

$30,000.00 just for signing the ISA, even if members of the Class never start or complete the training program;

d. Created the ISA for a program that did not have a certificate of authorization in violation of Georgia law;

e. Created the ISA for a program that did not have a license, approval, or authorization to operate in other states; and/or

f. Enforced the ISAs despite the ISAs' above-referenced deceptive, misleading, and unlawful characteristics.

138. As described within this Complaint, Prehired Recruiting, LLC and Joshua Jordan's actions are deceptive, misleading, and unlawful because Prehired Recruiting, LLC and Joshua Jordan:

a. Filed suit against the members of the Class in Delaware state court where the Court does not have personal jurisdiction over most of them;

b. Refused to properly serve the members of the Class with the lawsuit;

c. Filed suit against members of the class despite the fact that Prehired Recruiting, LLC was not a party to the ISAs with members of the Class; and

d. Filed suit against members of the class despite the fact that Prehired had sold its interest, rights, and title to the ISAs to another company.

139. As described within this Complaint, Prehired and Meritas' actions are deceptive, misleading, and unlawful because Prehired and Meritas:

a. Claimed in the Meratas ISA that the Prehired program is worth $15,000.00.

**A.** **Prehired's Misrepresentations and Omissions on its Website**

140.    Throughout the Class Period, Prehired stated on its website that the Prehired training program is a "No Risk Program…" "letting you only start paying after you earn your first paycheck." *See* Group Exhibit A.

141.    Throughout the Class Period, Prehired stated on its website that "Our members only start paying dues only ***after*** they land a job ***and*** make enough money per month." *See* Group Exhibit A (emphasis in original).

142.    Throughout the Class Period, Prehired stated on its website that members of the Class "Pay Nothing Until You Start Earning." *See* Group Exhibit A.

143.    Throughout the Class Period, Prehired stated on its website that members of the Class "Pay nothing until you get a job and partner with us in your career." *See* Group Exhibit A.

144.    Throughout the Class Period, Prehired stated on its website that "We guarantee you land a $60k + job offer." *See* Group Exhibit B.

145.    Throughout the Class Period, Prehired stated on its website that "We guarantee you land a $60k + job offer within 1 year of finishing coursework." *See* Group Exhibit B.

146.    Throughout the Class Period, Prehired stated on its website that "As a membership association ***with a job guarantee***…" *See* Group Exhibit B (emphasis added).

147.    Throughout the Class Period, Prehired stated on its website that Prehired members have a "six-figure potential in year 2." *See* Group Exhibit C.

148.    Throughout the Class Period, Prehired stated on its website that "making 6 figures can happen within just a few years." *See* Group Exhibit C.

149.     Throughout the Class Period, Prehired stated on its website that the training program "Fits Your Schedule… Even if you already have a full-time job, a house full of kids, or other commitments it's still possible to complete the program." *See* Exhibit D.

150.     Throughout the Class Period, Prehired stated on its website that the training program is "60ish hours of course content and your coursework assignments." *See* Group Exhibit E.

151.     Throughout the Class Period, Prehired stated on its website that "you can do [the training program] in as little as 1-2 weeks." *See* Group Exhibit E.

152.     Throughout the Class Period, Prehired stated on its website that the training program "typically takes about 60-120 hours over 6-12 weeks." *See* Group Exhibit E.

153.     Throughout the Class Period, Prehired stated on its website that "Prehired's program is 40+ hours in course content, another 20 hours of 1:1 work with your Mentor, plus 60 to 120 hours to run our Career Search Process." *See* Group Exhibit E.

154.     Throughout the Class Period, Prehired stated on its website that "Throughout your Prehired experience, you'll work with a number of different mentors." *See* Group Exhibit F.

155.     Throughout the Class Period, Prehired stated on its website that a career through Prehired can be started "Even if you have no prior experience." *See* Group Exhibit G.

156.     Throughout the Class Period, Prehired stated on its website that "You do NOT need any previous sales experience." *See* Group Exhibit G.

157.     Throughout the Class Period, Prehired stated on its website that "You do NOT need any experience in the [tech] industry." *See* Group Exhibit G.

158.     Throughout the Class Period, Prehired stated on its website that "Prehired members average $69,000 in their first year." *See* Group Exhibit H.

159.     Throughout the Class Period, Prehired stated on its website that "If you're making $6k per month (which is average for our members in year 1)…" *See* Group Exhibit H.

160.     Throughout the Class Period, Prehired posted the following on its website:



*See* Exhibit I.

161.     Throughout the Class Period, Prehired made all of the aforementioned statements on its LinkedIn page, in email messages to members of the Class, and/or in telephone conversations with members of the Class.

162.     Plaintiff purchased Prehired's training program and signed Defendants' ISA reasonably believing, based on Defendant's representations and omissions, that, indeed, he would not have to pay Prehired until completing the program and finding a job through Prehired, which was false.

163.     Plaintiff purchased Prehired's training program and signed Prehired's ISA reasonably believing, based on Prehired's representations and omissions, that, indeed, Prehired guarantees a job, which it does not.

164.     Plaintiff purchased Prehired's training program and signed Prehired's ISA reasonably believing, based on Prehired's representations and omissions, that, indeed, Prehired's customers begin making six-figure salaries after one year, which they do not.

165.     Plaintiff purchased Prehired's training program and signed Prehired's ISA reasonably believing, based on Defendant's representations and omissions, that, indeed, the program is possible to complete with pre-existing commitments such as a full time job or children, which it is not.

166.     Plaintiff purchased Prehired's training program and signed Prehired's ISA reasonably believing, based on Prehired's representations and omissions, that, indeed, he could complete the program in 60 hours, which he could not.

167.     Plaintiff purchased Prehired's training program and signed Prehired's ISA reasonably believing, based on Prehired's representations and omissions, that, indeed, he would be assigned a mentor, which he was not.

168.      Plaintiff purchased Prehired's training program and signed Prehired's ISA reasonably believing, based on Prehired's representations and omissions, that, indeed, the program could be completed without prior experience in sales or in the tech industry, which it cannot.

169.     Plaintiff purchased Prehired's training program and signed Prehired's ISA reasonably believing, based on Prehired's representations and omissions, that, indeed, he

would not have to pay Prehired until he finished Prehired's training program and found a job, which was not true.

170.	Plaintiff purchased Prehired's training program and signed Prehired's ISA reasonably believing, based on Prehired's representations and omissions, that, indeed, the average first-year salary for Prehired's members is $6,000 per month, or alternatively, $69,000 per year, which it is not.

171.	Plaintiff signed Prehired's ISA and purchased Prehired's training program reasonably believing, based on Prehired's representations and omissions, that, indeed, Prehired's 1-2 week, 60-hour video-based training program would not cost $30,000.00, which it does.

172.	Prehired's website, advertisements, and statements are misleading because:

    a.	Contrary to Prehired's advertising that members of the Class will not pay Prehired until they get a job and start working, Prehired's ISA requires members of the Class to pay $20,000.00 to $30,000 even if: (1) they do not start the Prehired training program, (2) they do not complete the Prehired training program, or (3) they do not get a job through Prehired. *See* Group Exhibit A.

    b.	Contrary to Defendant's advertising that members of the Class will not pay Prehired until they get a job and start working, Prehired uses its ISA to charge members of the Class $30,000 even if Prehired unilaterally removes them from the training program. *See* Group Exhibit A.

    c.	Contrary to Prehired's advertising, Prehired does not offer a job guarantee. Throughout the Class Period, Prehired maintained certain requirements before

members of the Class could qualify for the job guarantee, which could take more than twelve (12) months. *See* Group Exhibit B.

d.  Prehired makes false and inconsistent claims about when consumers will begin making six-figure salaries with the help of Prehired's product. *See* Group Exhibit C.

e.  Contrary to Prehired's advertising, the training program is nearly impossible to complete for members of the Class with pre-existing commitments, such as a full-time job or children. *See* Exhibit D.

f.  The training program is nearly impossible to complete for members of the Class with no pre-existing commitments, such as a full-time job or children. *See* Exhibit D.

g.  Prehired makes false and inconsistent claims about the amount of time it takes to complete the Prehired training program (from 60 hours or 1-2 weeks, to over 180 hours or 12 weeks). *See* Group Exhibit E.

h.  Contrary to Prehired's advertising, the training program can take substantially longer to complete than advertised.

i.  Contrary to Prehired's advertising that "[t]hroughout your Prehired experience, [members of the Class] will work with a number of different mentors," Prehired does not provide mentorship to members of the Class. *See* Group Exhibit F.

j.  Contrary to Prehired's advertising, the training program is nearly impossible to complete without prior experience in sales or in the tech industry. *See* Group Exhibit G.

k.  Prehired makes false and inconsistent claims about the average first-year salary. *See* Group Exhibit H.

l.  Prehired failed to answer the question "How much does Prehired cost?" on its website and failed to clearly disclose that Prehired costs, at a minimum, $20,000.00, if consumers earn more than $40,000 per year. *See* Group Exhibit I.

173.  Plaintiff read and relied upon the aforementioned statements on Prehired's website, on Prehired's LinkedIn page, in email messages from Prehired and Prehired's agents, and in telephone conversations with Prehired and Prehired's agents, when Plaintiff purchased Prehired's training program and signed Prehired's ISA.

**B.  Defendants' Deceptive, Misleading, and Unlawful Acts: The Training Program and Defendants' Income Share Agreement**

174.  Prehired created the Prehired training program to be difficult and time consuming to complete.

175.  Prehired requires consumers to sign an ISA prior to accessing to the training program.

176.  The Meratas ISA and the Leif ISA describe the consideration given to consumers solely as "the program."

177.  Neither the Meratas ISA nor the Leif ISA describes the Prehried training program.

178.  The Meratas ISA and the Leif ISA lack consideration because Prehired's promise to perform is in such uncertain terms that it is illusory.

179.  The Meratas ISA and the Leif ISA lack consideration because Defendants failed to disclose material information about the Prehired training program and Prehired acted in bad faith with regard to providing the training program.

180.     Prehired failed to provide consideration with regard to the ISAs because the alleged consideration was worth less than promised.

181.     Prehired failed to provide consideration with regard to the ISAs because the training program was not delivered as promised.

182.     Plaintiff and members of the Class relied solely on Prehired's website, LinkedIn page, email messages from Prehired and Prehired's agents, and telephone conversation with Prehired and Prehired's agents to learn about Prehired's training program.

183.     Neither the Meratas ISA nor the Leif ISA reflects the promises, guarantees, and/or statements contained on Prehired's website, LinkedIn page, and email messages as described herein.

184.     The Prehired ISA is an adhesion contract that does not contemplate reasonable liquidated damages, but instead penalizes members of the Class who do not complete the Prehired training program by requiring them to pay up to $30,000.00.

185.     The Prehired ISA penalizes members of the Class who do not even start the Prehired training program.

186.     Prehired uses the ISA to penalize members of the Class even if Prehired unilaterally removes members of the Class from the Prehired training program.

187.     The Prehired ISA penalizes members of the Class even if Defendants have not performed on the contract at all and have not incurred losses, expenses, or damages.

188.     Despite the Prehired training program costing Prehired little or no money per customer, and despite the training program being of little or no value to consumers and members of the Class, Defendants' ISAs require consumers who complete the Prehired training program to pay between $20,000.00 and $30,000.00.

189.    Although the ISA allows consumers who complete the Prehired training program to pay between $20,000.00 and $30,000.00, members of the Class who do not finish or even start the training program were threatened to pay the entire $30,000.00 and sued for $25,000.00.

190.    The Prehired ISA does not include liquidated damages in the event Defendant does not perform on the contract.

191.    The Prehired ISA contains an arbitration clause that only applies to claims made by consumers against Prehired, and does not apply to claims made by Prehired against consumers.

192.    The Prehired ISA does not allow members of the Class to cancel the contract even if they do not start or complete the Prehired training program.

193.    The Prehired ISA uses definitions within definitions and confusing language to hide the fact that members of the Class who sign the ISA will pay $20,000.00 to $30,000.00 after completing the Prehired training program, despite the program taking as little as 1-2 weeks (or 60 hours) to complete.

194.    The Prehired ISA uses definitions within definitions and confusing language to hide the fact that members of the Class who sign the ISA will be charged $20,000.00 to $30,000.00 just for signing the ISA, even if members of the Class never start or complete the training program.

195.    Prehired knowingly and intentionally concealed and failed to disclose material facts regarding the Prehired ISA and Prehired's application of the ISA to members of the Class who do not complete or even start the Prehired training program.

196.     Prehired knowingly and intentionally concealed and failed to disclose material facts regarding the Prehired ISA and Prehired's application of the ISA to members of the Class who Prehired unilaterally removes from the Prehired training program.

197.     Under the ISA, consumers will not be charged unless their gross earnings meet a certain minimum threshold.

198.     Despite the foregoing, Meratas and Prehired charged consumers whose gross earnings did not meet the minimum threshold.

199.     At this time, it is unknown whether Leif also charged consumers whose gross earnings did not meet the minimum threshold.

200.     The ISA is an unconscionable contract that was unilaterally drafted by Defendants with full knowledge of the unfair scheme they intended to employ to defraud members of the Class by providing a worthless video-based training course that ultimately costs tens of thousands of dollars and years of hassle.

C. **Prehired Recruiting, LLC and Joshua Jordan's Deceptive, Misleading, and Unlawful Acts: Selling the Interest in the ISA, then Suing the Members of the Class**

201.     On January 7, 2020, Prehired entered into a Forward Purchase Agreement with SELF Financial, which became ISA Plus, LLC.

202.     ISA Plus, LLC is the successor to SELF Financial for purposes of SELF Financial's duties and obligations under the Forward Purchase Agreement.

203.     The Forward Purchase Agreement provides, in pertinent part:

     b.     "Subject to the terms and conditions of this Agreement, on any Purchase Date, Seller shall sell, transfer, assign and otherwise convey to Purchaser, and Purchaser shall purchase and acquire from Seller, all of Seller's right, title and interest in the Receivables described on the Purchase Notices from time to time delivered by

Seller to Purchaser in accordance herewith in respect of the proposed respective Purchase Dates therefor, in each case together with all future Collections with respect to and other proceeds of such Receivables received on or after the applicable Purchase Date (such Collections and proceeds, collectively, the "Related Assets")[.]"

c.  "It is the intention of the parties hereto that each Purchase of Assigned Rights made hereunder shall constitute a "true-sale" from Seller to Purchaser under applicable state law and Federal bankruptcy law, which sales are absolute and irrevocable and provide Purchaser with all indicia and rights of ownership of the Purchased Receivables and such Related Assets. Neither Seller nor Purchaser intends the transactions contemplated hereunder to be, or for any purpose to be characterized as, loans from Purchaser to Seller secured by such property."

204. Under the Forward Purchase Agreement, Prehired is the Seller and ISA Plus, LLC is the Purchaser.

205. Pursuant to the Forward Purchase Agreement, ISA Plus, LLC acquired from Prehired the Purchased Receivables (the ISAs) at issue in this litigation, and all of Prehired's right, title and interest in such Purchased Receivables.

206. Prehired's Forward Purchase Agreement with SELF Financial is a valid and legally binding contract.

207. Pursuant to the Forward Purchase Agreement, as the acquirer of all of Prehired's right, title, and interest in the Purchased Receivables, ISA Plus, LLC is liable, in part, for the damages claimed by Plaintiff and members of the Class against Defendants Prehired and Joshua Jordan.

208.     When members of the Class were unsurprisingly unable to complete the Prehired training program, or when Prehired unilaterally removed members of the Class from the program, Prehired Recruiting, LLC and Joshua Jordan filed lawsuits against members of the Class in Delaware state court.

209.     When members of the Class unsurprisingly realized that the Prehired training program was of no value and did not conform to Prehired's advertising and marketing, and therefore declined to complete the training program, Prehired Recruiting, LLC and Joshua Jordan filed lawsuits against members of the Class in Delaware state court.

210.     Throughout the Class Period, Prehired Recruiting, LLC and Joshua Jordan knew that the State Court of Delaware does not have personal jurisdiction over nearly all members of the Class.

211.     Throughout the Class Period, Prehired Recruiting, LLC, Prehired, LLC, and Joshua Jordan did not have any interest in the ISAs which formed the basis of their lawsuits against members of the Class.

212.     Prehired Recruiting, LLC and Joshua Jordan refused and failed to properly serve members of the Class with the lawsuits filed against them.

213.     Despite the fact that Defendants' ISA allows for pro rata payment if members of the class do not complete the program, Prehired Recruiting, LLC and Joshua Jordan sued the members of the class for $25,000.00, nearly the maximum amount allowable under the ISA.

214.     Prehired Recruiting, LLC and Joshua Jordan filed the lawsuit against members of the Class seeking specific performance under the ISA despite the fact that Prehired did not perform under the contract and did not incur any losses or damages.

215. Prehired and Prehired Recruting, LLC have succeeded in extorting members of the Class for a substantial amount of money as a result of its deceptive, misleading, and unlawful acts in relation to its lawsuits filed against members of the Class.

216. The conduct alleged above by Prehired, Prehired Recruiting, LLC and Joshua Jordan follows a pattern documented by the Attorney General for the State of Delaware, which commenced an investigation into the claims and representations that Prehired makes to students and potential students, including those relating to the ISAs. The Delaware AG wrote a letter to Chief Magistrate Judge Alan Davis, of the Justice of the Peace Court in Georgetown, Delaware, where Prehired Recruiting, LLC filed nearly three hundred (300) lawsuits against consumers who signed Prehired ISAs.

217. The aforementioned letter authored by the Delaware AG states, *inter alia*:

d. "All but two of [the nearly 300 lawsuits filed by Prehired Recruiting, LLC in Delaware] were filed against individuals who do not reside in Delaware and, upon information and belief, have no connection to this State. Similarly, the [Delaware Department of Justice Consumer Protection Unit] does not believe that Prehired had any ties with Delaware until the formation of Prehired Recruiting, LLC in December 2021 for the purpose of filing these lawsuits most, if not all of which, seek $25,000 in alleged damages." *See* Exhibit J.

e. "Prehired describes itself as a "membership association" that provides "training, mentoring and networking to help you land a full-time sales job in a business-to-business (B2B) software company within about 12 weeks even with no previous sales or tech experience." Prehired claims that it only admits less than 5% applicants, and that its program "typically takes about 60-120 hours over 6-12

weeks (about 10 hours per week)," though the program is video-based and self-paced. **However, the [Delaware Department of Justice Consumer Protection Unit] has spoken with one student that was able to complete the program in less than one week**." (Emphasis added) *See* Exhibit J.

f.  **"There is probable cause that Mr. Jordan and Prehired Recruiting, LLC attempted to manufacture jurisdiction in this Court of over nearly 300 consumer lawsuits only two of which have any bona fide connection to this State."** (Emphasis in original) *See* Exhibit J.

g.  "There appears to be probable cause that Mr. Jordan has engaged in misconduct in connection with the filing and prosecution of these lawsuits, as well as a likelihood that consumers will be harmed as a result… In the meantime, some consumers may default or settle their cases, not because they believe they owe Prehired the money, but because the costs of defending these lawsuits in terms of time, travel, and lawyers' fees is simply too high." *See* Exhibit J.

h.  "[N]early all of these lawsuits were filed against out-of-state consumers, not businesses, who face substantial and expensive barriers defending themselves in a court that is hundreds or thousands of miles away from home." *See* Exhibit J.

i.  "The risk of harm to consumers nationwide is simply too great for Mr. Jordan (or any other non-lawyer agent selected by Prehired Recruiting, LLC) to continue these lawsuits without qualified legal counsel. Personal jurisdiction, service, and venue are all issues of Constitutional import. It is fundamentally unfair that nearly 300 individual defendants should each be forced to hire an attorney to raise the same defect in Mr. Jordan's lawsuits because Mr. Jordan, who has a staggering

**$7,225,000.00** at stake, *chose* to proceed without the assistance of counsel."[3] (Emphasis in original) *See* Exhibit J.

j.   "Prehired Recruiting, LLC and Prehired, LLC appear to have both been recently formed as Delaware limited liability companies for the purposes of creating a nexus to this state. This may have misled consumer-defendants into believing that they had transacted with a Delaware entity when they had not…. The [Delaware Department of Justice Consumer Protection Unit] finds Prehired's assertion that it is conducting operations out of its registered agent's office [in Delaware] disingenuous, at best." *See* Exhibit J.

k.   "There is a substantial risk that consumers will confuse Prehired, LLC, a *Delaware* limited liability company that is less than three months old with Prehired, LLC, a *Florida* limited liability company that appears to be the original creditor in most, if not all, of these cases." (Emphasis in original) *See* Exhibit J.

l.   "Adding to this confusion, Mr. Jordan has alleged in the matter of *Prehired Recruiting LLC v. Mehmed Tiro*, JP13-22-000897 that "Plaintiff as well as the original creditor is a Delaware limited liability company…" (emphasis added). This does not appear to be true since the Delaware Prehired, LLC entity was not formed until three months after Mr. Tiro allegedly executed his contract." *See* Exhibit J.

m.   "In sum, the [Delaware Department of Justice Consumer Protection Unit] is gravely concerned about the imminent harm these lawsuits may cause consumers and is diligently working to determine whether Prehired has violated any consumer protection laws in the course of its dealings with students." *See* Exhibit J.

---

[3] The lawsuits were filed by Joshua Jordan acting as "agent" for Prehired Recruiting.

218. The conduct alleged above by Prehired, Prehired Recruiting, LLC and Joshua Jordan follows a pattern documented by the Attorney General for the State of Washington, which has filed a lawsuit against Prehired, Prehired Recruiting, LLC, and Joshua Jordan for violations of the Washington Consumer Protection Act and Private Vocational Schools Act. King County Case No. 22-2-08651-3 SEA.

**D. <u>Ascertainable Damages and Injury</u>**

219. Plaintiff and members of the Class purchased Prehired's training program and signed Prehired's ISA believing it had the qualities that Plaintiff and members of the Class sought based on Prehired's deceptive advertising and misrepresentations, but the product was actually unsatisfactory to Plaintiff and members of the Class for the reasons stated in this Complaint.

220. Plaintiff and members of the Class would not have purchased Prehired's training program and signed Prehired's ISA at all, absent Prehired's false and misleading advertisements and misrepresentations.

221. Plaintiff and members of the Class were induced to and did purchase Prehired's training program and signed Prehired's ISA based on the false statements and misrepresentations described in this Complaint.

222. Plaintiff and members of the Class would not have purchased Prehired's training program and signed Defendants' ISA, absent Prehired's and the ISAs' failure to disclose material information about the Prehired training program.

223. Plaintiff and members of the Class were induced to and did purchase Prehired's training program and signed Prehired's ISA based on Prehired knowingly and intentionally

concealing and failing to disclose material facts concerning the training program and ISA as described in this Complaint.

224.    Plaintiff and members of the Class were induced to and did purchase Prehired's training program and signed Prehired's ISA based on Leif and Meratas failing to disclose material facts concerning the training program and ISA as described in this Complaint.

225.    Instead of receiving a product that teaches consumers about tech sales so they can earn a six-figure salary, Plaintiff and members of the Class received a worthless video-based training course that ultimately costs tens of thousands of dollars and years of hassle.

226.    Plaintiff and members of the Class lost money as a result of Defendant's deception in that they were required to hire legal counsel to defend themselves against Prehired Recruiting, LLC and Joshua Jordan's baseless lawsuits.

227.    Plaintiff and members of the Class have an immediate and continuing risk of harm as a direct and proximate result of Prehired Recruiting, LLC and Joshua Jordan's baseless lawsuits and demand for $25,000.00.

228.    Members of the Class lost money as a result of Defendants' deception in that they did not receive what they paid for.

229.    Members of the Class lost money as a result of Defendants' deception in that they paid Defendants after Prehired threatened to file suit against them or after Prehired Recruiting, LLC and Joshua Jordan did, in fact, file suit against them.

230.    Members of the Class lost money when Meratas charged them despite the Meratas ISA not allowing for Meratas to charge them.

231.    It is unknown at this time whether Leif also charged members of the Class despite the Leif ISA not allowing for Leif to charge them.

232.    Plaintiff and members of the Class altered their position to their detriment and suffered damages in an amount equal to the amount they paid for Prehired's training program and/or attorney's fees to defend against Prehired Recruiting, LLC and Joshua Jordan's lawsuits.

233.    Members of the Class suffered damages in an amount equal to the amount they paid Meratas and/or Leif in contradiction of the ISA.

## V.    CLASS ACTION ALLEGATIONS

234.    Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following nationwide consumer class (the "Class"):

> All consumers who purchased Prehired's training program, signed Defendants' Income Share Agreement, and were sued by Prehired Recruiting, LLC from the earliest allowable time through the date of resolution of this action. Specifically excluded from this Class are Defendants; the officers, directors or employees of Defendants; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir or assign of Defendants; also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action. The Class comprises of approximately 300 members.

235.    If necessary, Plaintiff brings this action on behalf of the following proposed Subclass:

> All consumers who paid Defendants after being sued by Prehired Recruiting, LLC or after receiving threats from Prehired or Prehired Recruiting, LLC to sue them, from the earliest allowable time through the date of resolution of this action.

Specifically excluded from this Class are Defendants; the officers, directors or employees of Defendants; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir or assign of Defendants; also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

236.    Unless otherwise stated, the nationwide consumer Class and the Subclass are collectively referred to as the "Class."

237.    Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

238.    **Numerosity**: The Class is sufficiently numerous, as it includes hundreds of persons who have purchased Prehired's training program, signed Defendants' ISA, and were improperly sued by Prehired Recruiting, LLC.  Thus, joinder of such persons in a single action or bringing all members of the Class before the Court is impracticable for purposes of Rule 23(a)(1) of the Federal Rules of Civil Procedure.  The disposition of the Class members' claims in this class action will substantially benefit both the parties and the Court.

239.    The Class is readily ascertainable through Defendants' business records and public Court records.  Notice can be provided to Class members by publication of notice by electronic mail, internet postings, radio, newspapers, and magazines.

240.    **Commonality and Predominance**: There are questions of law and fact common to the Class for purposes of Federal Rule of Civil Procedure 23(a)(2). Prehired's

advertising, marketing, and promotional practices, and Defendants' ISA's, were supplied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class. All Class members were and are similarly affected by having purchased Prehired's training program; having signed Defendants' ISA for the marketed purpose of learning about tech sales and retaining a six-figure salary job, as advertised by Prehired; and having been sued by Prehired Recruiting, LLC; and the relief sought herein is for the benefit of Plaintiff and other members of the Class. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

n.  Whether Defendants' acts and practices in connection with the promotion, marketing, advertising, distribution, implementation, enforcement, and/or sale of the Prehired training program and Defendants' ISA as described herein are deceptive, unconscionable, misleading, or otherwise a violation of the relevant consumer protection statutes;

o.  Whether Prehired's and Prehired Recruiting, LLC's acts and practices in connection with their enforcement of Defendants' ISAs as described herein are deceptive, unconscionable, misleading, or otherwise a violation of the relevant consumer protection statutes;

p.  Whether Prehired misrepresented or omitted material facts in connection with the promotion, marketing, advertising, and sale of its training program and use of its ISA;

q.  Whether Prehired represented that its training program and ISA has characteristics, benefits, uses, or qualities that they do not have;

r.  Whether Defendants failed to disclose material facts in their ISAs;

s.   Whether Defendants' ISAs lack consideration;

t.   Whether Defendants' ISAs are unenforceable and/or void;

u.   Whether Defendants were unjustly enriched at the expense of members of the Class as a result of their conduct;

v.   Whether Plaintiff and the Class are entitled to injunctive relief based on Defendants' conduct; and

w.   Whether Plaintiff and the Class are entitled to damages and the measure of damages owed to them.

241.   **Typicality**: Plaintiff asserts claims that are typical of the claims of the entire Class for purposes of <u>Federal Rule of Civil Procedure 23(a)(3)</u>.  Plaintiff and all Class members have been subjected to the same wrongful conduct because they relied on Prehired's deceptive, misrepresented, and misleading advertisements and marketing; signed Defendants' ISA that they otherwise would not have; purchased Prehired's training program that they otherwise would not have; and were subsequently sued by Prehired Recruiting, LLC. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

242.   **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4).  Plaintiff has no interests antagonistic to those of other Class members. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent him.  Plaintiff anticipates no difficulty in the management of this litigation as a class action. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

243.     Class certification is appropriate under <u>Federal Rule of Civil Procedure 23(b)(2)</u> because Defendants have acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.  Prehired's advertising, marketing, promotional practices, training program, and ISA were supplied uniformly to all members of the Class.

244.     **Superiority**: Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above substantially predominate over any questions that may affect only individual members of the Class.  Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy. Class members have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct. Because of the nature of the individual Class members' claims, few, if any, could or would otherwise afford to seek legal redress against Defendants for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding, and essential to the interests of justice insofar as the resolution of Class members' claims is concerned. Absent a representative class action, Class members would continue to suffer losses for which they would have no remedy, and Defendants would unjustly retain the proceeds of its ill-gotten gains. Even if separate actions could be brought by individual members of the Class, the resulting multiplicity of lawsuits would cause undue hardship, burden and expense for the Court and the litigants, as well as create a risk of inconsistent rulings which might be dispositive of the interests of the other Class members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests. The

class action device presents far fewer management difficulties, and provides the benefits

of single adjudication, economy of scale, and comprehensive supervision by a single court.

245.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)

because prosecuting separate actions by individual class members would create a risk of

adjudications with respect to individual class members that would be dispositive of the

interests of the other members not parties to the individual adjudications. An adjudication

with respect to one class member will be dispositive of the claims of other class members

as the facts and requested relief apply uniformly.

## VI.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violations of State's Consumer Fraud and Deceptive Business Practices Act**

246.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if

set forth in full herein.

247.     Plaintiff brings this Count, Violations of States' Consumer Fraud and Deceptive

Business Practices Act, individually and on behalf of all similarly situated residents of each

of the 50 states and the District of Columbia for violations of the respective statutory

consumer protection laws, as follows:

    a.  The Alabama Deceptive Trade Practices Act, Ala. Code 1975, § 8-19-1, *et seq.*;

    b.  The Alaska Unfair Trade Practices and Consumer Protection Act, AS §
        45.50.471, *et seq.*;

    c.  The Arizona Consumer Fraud Act, A.R.S. §§ 44-1521, *et seq.*;

    d.  The Arkansas Deceptive Trade Practices Act, Ark. Code §§ 4-88-101, *et seq.*;

    e.  The California Unfair Competition Law, Bus. & Prof. Code §17200 *et seq.*;

    f.  The California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*;

g.   The Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

h.   The Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

i.   The Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

j.   The D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

k.   The Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

l.   The Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

m.   The Hawaii Unfair Competition Law, H.R.S. §480-1, *et seq.*;

n.   The Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

o.   The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;

p.   The Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*;

q.   The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. §714H.1, *et seq.*;

r.   The Kansas Consumer Protection Act, K.S.A., § 50-623, *et seq.*;

s.   The Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

t.   The Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

u.   The Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

v.   The Maryland Consumer Protection Act, MD Code, Commercial Law, §13-301, *et seq.*;

w.   The Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

x.   The Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

y.  The Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

z.  The Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

aa. The Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

bb. The Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq.*;

cc. The Nebraska Consumer Protection Act, Neb. Rev. St. §§ 59-1601, *et seq.*;

dd. The Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*;

ee. The New Hampshire Regulation of Business Practices for Consumer Protection N.D.Rev.Stat. §358-A:1, *et seq.*;

ff. The New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

gg. The New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq.*;

hh. The New York Consumer Protection from Deceptive Acts and Practices, N.T. GBL (McKinney) § 349, *et seq.*;

ii. The North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. §75-1.1, *et seq.*;

jj. The North Dakota Consumer Fraud Act, N.D. Cent. Code Chapter 51-15, *et seq.*;

kk. The Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*;

ll. The Oklahoma Consumer Protection Act, 15 O.S.2001 §§ 751, *et seq.*;

mm. The Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*;

nn. The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

oo. The Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

pp. The South Carolina Unfair Trade Practices Act, SC Code 1976, § 39-5-10, *et seq.*,

qq. The South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

rr. The Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;

ss. The Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

tt. The Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

uu. The Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

vv. The Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

ww. The Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

xx. The West Virginia Consumer Credit Ad Protection Act, W.Va. Code § 46A-1-101, *et seq.*;

yy. The Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq.*; and,

zz. The Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

248.    Defendants conduct a significant amount of trade and commerce in each of the 50 states and the District of Columbia.

249.    Prehired's training program is "merchandise," "goods," and/or "services" within the meaning of each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act.

250.    Defendants' foregoing misrepresentations, omissions, and conduct regarding the Prehired training program and ISA are deceptive and/or unfair acts or practices prohibited by the consumer fraud statutes set forth above.

251. Defendants intended to be deceptive and/or unfair to Plaintiff and the proposed Class by intentionally making the foregoing false and misleading statements and omitting accurate statements as alleged above, because had Defendants provided accurate information, Plaintiff and the proposed Class members would not have purchased the training program or signed the ISA.

252. Defendants intended to be deceptive and/or unfair to Plaintiff and the proposed Class by intentionally creating and utilizing ISAs that lack consideration as described herein.

253. Defendants' ISAs are deceptive, unfair, unconscionable, unenforceable and/or void as described herein.

254. Defendants intended to be deceptive and/or unfair to Plaintiff and the proposed Class by intentionally creating and utilizing ISAs that lack consideration and are deceptive, unfair, unconscionable, unenforceable and/or void as described herein.

255. Prehired's practice of creating, approving, and distributing advertising for the training program and ISA that contained false and misleading representations regarding the training program and ISA for the purpose of selling them to Plaintiff and the proposed Class, as alleged in detail *supra*, is both an unfair act and deceptive practice prohibited by the foregoing statutes.

256. As described herein, Defendants' policies, acts, and practices were designed to, and did, result in the purchase and use of the Prehired training program and ISA, and violated and continue to violate the following sections of each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act, which prohibits "unfair or deceptive acts or practices in the conduct of consumer transactions and consumer

acts or practices in trade or commerce…"

257.    Prehired consciously and deceptively omitted material facts to Plaintiff and the Class with regard to the training program and ISA in its advertising and marketing of the product.

258.    Defendants consciously and deceptively omitted material facts to Plaintiff and the Class with regard to the training program and ISA.

259.    Prehired's unconscionable and deceptive conduct described herein included the omission and concealment regarding the training program and ISA in the product's advertising and marketing, and the threats to sue members of the Class.

260.    Defendnats' unconscionable and deceptive conduct described herein included the omission and concealment regarding the training program and ISA.

261.    Prehired Recruiting, LLC's and Joshua Jordan's unconscionable and deceptive conduct described herein included filing lawsuits against members of the Class despite the defects with the lawsuits as described within this Complaint.

262.    Defendants intended that Plaintiff and the Class rely on Defendants' acts or omissions so that Plaintiff and the other Class members would purchase the Prehired training program and sign Defendants' ISA.

263.    Plaintiff and the Class members purchased the Prehired training program and signed Defendants' ISA in reliance on Defendants' misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding the training program and application of the ISA.

264.    Had Prehired disclosed all material information regarding the training program and ISA in its advertising and marketing, and had Defendants not engaged in the deceptive acts

and practices alleged herein, Plaintiff and the Class would not have purchased the training program and would not have signed the ISA, or would have paid less for the training program.

265.    Had Defendants disclosed all material information regarding the training program and ISA, and had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class would not have purchased the training program and would not have signed the ISA, or would have paid less for the training program.

266.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the training program, the ISA, and the application of the ISA, Defendants engaged in one or more unfair or deceptive business practices prohibited by each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act.

267.    By knowingly and intentionally suing members of the Class despite the defects described within this Complaint, Prehired Recruiting LLC and Joshua Jordan engaged in one or more unfair or deceptive business practices prohibited by each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act.

268.    Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the nature and value of the training program and ISA in order to induce Class members to purchase the training program and sign the ISA, and in order to collect payments from Class members.

269.    The facts regarding the nature and value of the Prehired training program and ISA that Defendants knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their decision to purchase the Prehired training program and sign Defendants' ISA.

270.    Plaintiff and Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.

271.    Defendants had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act in the course of its business. Specifically, Defendants owed Plaintiff and Class members a duty to disclose all the material facts concerning the training program and application of their ISAs because Defendants possessed exclusive knowledge of those facts, they intentionally concealed those facts from Plaintiffs and the Class members, they made misrepresentations and/or they made representations that were rendered misleading because they were contradicted by withheld facts.

272.    The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

273.    As a direct and proximate result of the foregoing, the Plaintiff and Class members have been damaged in an amount to be determined at trial.

274.    As a direct and proximate result of the foregoing, the Plaintiff and Class members

experienced mental and emotional distress, anguish, and suffering.

275.     As a direct and proximate result of the foregoing, Plaintiff and Class members did not receive the benefit of their bargain and/or they suffered out-of-pocket loss.

276.     Defendants' violations of each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act present a continuing risk of future harm to Plaintiff and the Class members.

277.     The acts, omissions, and practices of Defendants detailed herein proximately caused members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies paid to Defendants as a result of the lawsuits and/or threats of lawsuits filed against them, that they otherwise would not have, and they are entitled to such damages, together with appropriate penalties, including injunctive relief, treble damages, and attorneys' fees and costs of suit.

278.     The acts, omissions, and practice of Defendants detailed herein proximately caused members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to repay Defendants for the training program that they otherwise would not have, and they are entitled to such damages, together with appropriate penalties, including injunctive relief, treble damages, punitive damages, and attorneys' fees and costs of suit.

279.     As a result of the acts, omissions, and practice of Defendants detailed herein, Plaintiff and members of the Class are at an ongoing risk of future harm by Defendants.

## SECOND CLAIM FOR RELIEF
### Unjust Enrichment

280.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

281.     Plaintiff brings this claim on behalf of members of the Subclass in and under the unjust enrichment laws of each of the 50 states and the District of Columbia.

282.     As a direct and proximate result of Defendants' misconduct as set forth above, Defendants have been unjustly enriched.

283.     Specifically, by its misconduct described herein, Defendants have accepted a benefit (*i.e.,* money paid by the Subclass members for Prehired's training program, after being threatened and/or sued by Prehired and/or Prehired Recruting, LLC) to the detriment of the proposed Subclass.

284.     Specifically, by its misconduct described herein, Defendants have accepted a benefit (*i.e.,* money paid by the Subclass members for Prehired's training program, after signing Defendants' unconscionable, unenforceable, and/or illegal ISAs) to the detriment of the proposed Subclass.

285.     Through the deceptive advertising and marketing tactics and misrepresentations described above, Prehired advertised, marketed and sold to consumers Prehired's training program, and induced consumers to sign its ISA, within the Class Period, by means of fraudulent, deceptive and/or negligent misrepresentations.

286.     Through the deceptive acts, misrepresentations, and/or omissions described above, Defendants induced consumers to sign their ISA, within the Class Period, by means of fraudulent, deceptive, and/or negligent misrepresentations and/or omissions.

287.     Defendants' retention of the full amount of monies paid for the training program following Prehired's and Prehired Recruiting, LLC's threats and lawsuits violates the fundamental principles of justice, equity, and good conscience.

288.     Defendants' retention of the full amount of monies paid for the training program,

even absent the lawsuits or threats of lawsuits, violates the fundamental principles of justice, equity, and good conscience.

289.    The object and intention of Defendants' scheme was not only to sell said training programs, but also to assure and collect certain profits for Defendants.

290.    Defendants accepted the benefit based on its misrepresentations and omissions regarding the training program and ISA to the proposed Subclass members, and it would be inequitable for the Defendants to retain the benefit of those monies, as it was paid the money under false pretenses.

291.    The portion of the money illegally paid to and retained by Defendants came directly from the cash and/or checking accounts of all potential Subclass members.

292.    As the training program sales were obtained/induced by improper means, Defendants are not legally or equitably entitled to retain a portion of the profits it realized from the revenue generated.

293.    Defendants breached the public trust by selling the Prehired training program through illegal means, and/or by collecting money through illegal means, to the detriment of Plaintiff and the putative Subclass.

294.    By Defendants' actions in taking and withholding said monies, the putative Subclass conferred, and continues to confer, a benefit upon Defendants, and Defendants are aware of such benefit.

295.    By Defendants' improper and wrongful taking and withholding of the putative Subclass' monies, Defendants' were and are financially unjustly enriched.

296.    Defendants' retention of said benefit violates the fundamental principles of justice, equity, and good conscience.

297.     Moreover, the putative Subclass seek a remedy wherein Defendants' are required to refund its ill-gotten gains.

298.     Defendants have been enriched, and it would be unjust for Defendants to retain the enrichment, which was secured through illegal and improper means. As such, Defendants must be ordered to pay restitution and disgorge the ill-gotten gains.

299.     A claim for unjust enrichment is proper and properly pled as an independent cause of action.

300.     Defendants have obtained money to which they are not entitled, and interest on that money, and under these circumstances equity and good conscience require that the Defendants return the money with interest to the proposed Subclass.

301.     As a direct and proximate result of Defendants' actions and/or inactions, members of the putative Subclass have suffered a detriment in an amount to be determined more precisely at trial, including restitution and disgorgement in the amount Defendants was unjustly enriched.

## THIRD CLAIM FOR RELIEF
### Declaratory Judgment

302.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

303.     Plaintiff brings this claim individually and on behalf of the Class.

304.     A dispute between Plaintiff and the Class and Defendants is before this Court concerning Defendants' conduct and the rights of Plaintiff and the Class that arise under each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act.

305.     Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and

liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that:

   a. Prehired's advertising and marketing of its training program and ISA as alleged herein, violates of each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act;

   b. Defendnats' use of the ISA violates of each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act;

   c. Prehired's and Prehired Recruiting, LLC's enforcement of the ISA by filing nearly three hundred (300) lawsuits against members of the Class in Delaware, violates of each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act; and

   d. Plaintiff's ISA and the ISA of all class members are unconscionable, unenforceable, and void.

306.    Defendants' unlawful conduct and general business practices as described herein are ongoing. Accordingly, Defendants have violated, and continue to violate, each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act.

307.    As a result of the aforementioned violations, Plaintiff and the Class members have been injured.

## VII.    PRAYER

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against PREHIRED, LLC, a Delaware limited liability company, PREHIRED, LLC, a Florida limited liability, JOSHUA JORDAN, Individually, PREHIRED RECRUITING, LLC, a Delaware limited liability company, PREHIRED RECRUITING, LLC, a

Florida limited liability company, LEIF TECHNOLOGIES, INC., MERATAS INC., and ISA PLUS, LLC, ON ALL CAUSES OF ACTION:

308.    An order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

309.    An order voiding Plaintiff's ISA and the ISAs of all class members, and deeming the ISAs unenforceable.

310.    An order enjoining Prehired and Prehired Recruiting, LLC from:

   a.  Marketing the Prehired training program as a "No Risk Program…" "letting you only start paying after you earn your first paycheck."

   b.  Marketing the Prehired training program by claiming "Our members only start paying dues only **after** they land a job **and** make enough money per month."

   c.  Marketing the Prehired training program by claiming consumers "Pay Nothing Until You Start Earning."

   d.  Marketing the Prehired training program by claiming consumers "Pay nothing until you get a job and partner with us in your career."

   e.  Marketing the Prehired training program by claiming "We guarantee you land a $60k + job offer."

   f.  Marketing the Prehired training program by claiming "We guarantee you land a $60k + job offer within 1 year of finishing coursework."

   g.  Marketing the Prehired training program "As a membership association with a job guarantee…"

   h.  Marketing the Prehired training program as providing "six-figure potential in year 2."

i.  Marketing the Prehired training program by claiming that "making 6 figures can happen within just a few years."

j.  Marketing that the Prehired training program "Fits Your Schedule… Even if you already have a full-time job, a house full of kids, or other commitments it's still possible to complete the program."

k.  Marketing the Prehired training program as "60ish hours of course content and your coursework assignments."

l.  Marketing the Prehired training program by claiming "you can do [the training program] in as little as 1-2 weeks."

m.  Marketing the Prehired training program as "typically tak[ing] about 60-120 hours over 6-12 weeks."

n.  Marketing the Prehired training program as "40+ hours in course content, another 20 hours of 1:1 work with your Mentor, plus 60 to 120 hours to run our Career Search Process."

o.  Marketing the Prehired training program by claiming that "Throughout your Prehired experience, you'll work with a number of different mentors."

p.  Marketing the Prehired training program by claiming that a career through Prehired can be started "Even if you have no prior experience."

q.  Marketing the Prehired training program by claiming that "You do NOT need any previous sales experience."

r.  Marketing the Prehired training program by claiming that "You do NOT need any experience in the industry."

s.  Marketing the Prehired training program by claiming that "Prehired members average $69,000 in their first year."

t.  Marketing the Prehired training program by claiming that "If you're making $6k per month (which is average for our members in year 1)…" and

u.  Using or enforcing its Income Share Agreement.

311.  An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful act or practice.

312.  An order compelling Defendants to destroy all misleading and deceptive advertising materials and products.

313.  An order dismissing all complaints filed by Prehired Recruiting, LLC against members of the Class.

314.  An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of each of the 50 states' and the District of Columbia's Consumer Fraud and Deceptive Business Practices Act, plus pre-and post-judgment interest thereon.

315.  For damages in an amount to be determined at trial.

316.  For statutory damages.

317.  For punitive damages.

318.  Costs, expenses, and reasonable attorneys' fees.

319.  Appropriate preliminary and/or final injunctive relief against the conduct of Defendants described herein.

320.  For all such other and further relief as the Court may deem just and proper

## JURY DEMAND

321.        Plaintiff demands a trial by jury on all causes of action so triable.

DATED:  September 22, 2022                    RESPECTFULLY SUBMITTED,

By:  /s/ Michael R. Bertucci
        Michael R. Bertucci
        IL State Bar #: 6326591
        Agruss Law Firm, LLC
        4809 N. Ravenswood Ave., Suite 419
        Chicago, IL 60640
        Tel: 312-224-4695
        Fax: 312-253-4451
        mbertucci@agrusslawfirm.com
        Attorney for Plaintiff

By: /s/ Shireen Hormozdi
        Shireen Hormozdi
        Georgia Bar No. 366987
        Agruss Law Firm, LLC
        4809 N. Ravenswood Avenue, Suite 419
        Chicago, IL 60640&
        Hormozdi Law Firm, LLC
        1770 Indian Trail Lilburn Road, Suite 175
        Norcross, GA 30093
        Tel: 312-224-4695
        Direct: 678-960-9030
        shireen@agrusslawfirm.com
        Attorney for Plaintiff

# **EXHIBIT A**

# EXHIBIT B

# EXHIBIT C

# EXHIBIT D

# EXHIBIT E

# EXHIBIT F

# EXHIBIT G

# EXHIBIT H

# EXHIBIT I

# EXHIBIT J

# **EXHIBIT K**

# EXHIBIT L

# EXHIBIT M

# EXHIBIT N

# EXHIBIT O

# EXHIBIT P



## No Risk Program

Our mission is to help ordinary people learn Science-Based Sales® and land high-paying tech sales jobs. With that in mind, we don't want payment to stop you with the talent and drive to succeed with our program.

That's why we're proud to offer Income Share Agreements (ISAs), letting you only start paying after you earn your first paycheck.

# We align our success with yours...

Rather than paying upfront or borrowing money for a Membership in Prehired, members commit to pay a certain percentage of their future income in exchange for their Lifetime Membership Benefits.

Prehired is proud to offer Income Share Agreements (ISAs) allowing members to get access to all our programs and perks with no out-of-pocket cost to start.

Our members only start paying dues only *after* they land a job *and* make enough money per month. See below for details.

prehired.io/membership-dues

15 U.S. Code Subch... | Chapter 58 - Article... | What County am I i... | United States Court...





## Pay Nothing Until You Start Earning

We invest thousands of dollars into training you
before you pay a penny.


preHIRED




preHIRED
Guarantee



### Launch Your Career, Level Up for Life

Learning Science-Based Sales® is just the start of your lifetime membership benefits.

**Learn About Membership Benefits**

### Backed By Our Job Guarantee

We guarantee you land a $60k+ job offer (from a tech company YOU choose).

**Review Our Guarantee**

### Start for $0, Share the Risk

Pay nothing until you get a job and partner with us in your career, using an Income Share Agreement.

**Learn About Membership Dues**



Why Prehired? ⌄    Membership Benefits    Blog    Hire a Member    **Apply Now**







### Launch Your Career, Level Up for Life

Learning Science-Based Sales® is just the start of your lifetime membership benefits.

**Learn About Membership Benefits**

### Backed By Our Job Guarantee

We guarantee you land a $60k+ job offer (from a tech company YOU choose).

**Review Our Guarantee**

### Start for $0, Share the Risk

Pay nothing until you get a job and partner with us in your career, using an Income Share Agreement.

**Learn About Membership Dues**

# Glance At The Numbers

## $60,000

We guarantee you land a $60k+ job offer within 1 year of finishing coursework ($40k base + expected commissions.)

## 12.5%

You pay 12.5% of your gross income for 48 months for your lifetime benefits

## $0

If you're ever not working and are following our process to find a new job, your ISA payments pause

## 8 Years

Your ISA expires after 8 years, even if you've paid nothing



# Membership Benefits

Prehired is a members-only workforce accelerator and community helping members get hired, promoted and pursue 6-figure potential sales careers.

As a membership association with a job guarantee, we help you get hired to tech sales careers at companies YOU want to work for.




# Member Success Guarantee

**We guarantee you land a $60k+ job offer within 12 months of finishing coursework ($40k base + expected commissions.)**

**To qualify for the guarantee, just:**

**1.** Complete the coursework before your official completion date.

**2.** After you're done with the coursework, successfully complete your Career Search Process (CSP) within 12 months.

**3.** Congrats, you've been hired to a great job… or, if you failed after diligently following everything in your Membership Agreement, email your Mentor within 30 days of your last month to be released from your ISA* (see notes below).

*This is not a "no questions asked" guarantee. Changing your goals, changing your mind, or not following through on your commitments aren't valid reasons for release from your ISA or payment obligations.*

* *If you're not working and are following our process to find a new job, your ISA payments pause. If you're curious about the Income Share Agreement payments, you can see details and examples here.*

* *This is a simplified explanation of the Member Success Guarantee. Full details are found in your Membership Agreement if you are accepted into Prehired.*

## The Average Prehired Member Achieves

96% of Prehired members are hired within 6 months of starting

Average first-year earnings: $69k (with six-figure potential in year 2)

Any member who follows the program and doesn't land a 60k+ offer pays nothing


Program
Process (Finding a Job)
Position
Payment

### How long does it take to make six figures?

According to Glassdoor.com, the average income for an experienced person is ~$145,000 in 2020.

BUT making $100,000+ is NOT average for software salespeople in the first year.

In your first year, the average total earnings (base salary + commissions) is $60,000 - $80,000. Of that, $40,000 - $60,000 tends to be base salary.

From what we've seen from, making 6 figures can happen withing just a few years in the industry.













 preHIRED

 preHIRED

 preHIRED

Why Prehired? ⌄    Membership Benefits    Blog    Hire a Member    Apply Now

# The Prehired Experience



## On-Demand - Fits Your Schedule

The Science-Based Sales® curriculum is available on your schedule. Even if you already have a full-time job, a house full of kids, or other commitments it's still possible to complete the program.


Program
Process (Finding a Job)
Position
Payment

 **How long does it take to complete the program and get hired?**    ✕

Our career launch program typically takes about 60-120 hours over 6-12 weeks (about 10 hours per week).

That includes coursework assignments you submit to get feedback on (and may need to re-do) to prove your understanding.

Your abilities prior to joining Prehired often determine how long it will take for you to finish.

If you're currently unemployed or have a few hours a day, you could fnish the program faster.

**How can I finish my coursework faster than 12 weeks?**    ✕

Since you control how fast you go through the 60ish hours of course content and your coursework assignments, you can do it in as little as 1-2 weeks if you have the time.


**How much content and training is there?** Look how much training they're really giving you. Prehired's program is 40+ hours in course content, another 20 hours of 1:1 work with your Mentor, plus 60 to 120 hours to run our Career Search Process until you choose the job offer right for you.

Program

**Process (Finding a Job)**

Position


## 1:1 Mentorship

Throughout your Prehired experience, you'll work with a number of different mentors. Starting off, you'll have an advisor, to help make sure the program is right for you before you join.

Then, while you're completing your Science-Based Sales® coursework, you'll be paired with a Mentor, who can help you complete the program and find your first sales job.





# How Fast Can You Start a Software Sales Career?

Even if you have no prior experience

**Week 1**

Start Course

**Weeks 5-6**

Coursework Approval

**Weeks 7-10**

1:1 Mentoring + Outreach to Target Companies

**Weeks 11-12**

Negotiate Job Offers + Accept One


preHIRED

Why Prehired? ⌄    Membership Benefits    Blog    Hire a Member    Apply Now

Program
**Process (Finding a Job)**
**Position**
**Payment**

 **What kind of sales experience do I need?**    ✕

You do NOT need any previous sales experience. More than 50% of our members in a given month come without a sales background. In a way, it's actually a benefit, because you won't have any bad habits to unlearn.

We've had former Uber drivers, pastors, moms who want to re-enter the workforce after raising kids, people in their 40's and 50's hankering for a career change, etc.

preHIRED

Why Prehired? ⌄    Membership Benefits    Blog    Hire a Member    Apply Now

Program
Process (Finding a Job)
Position
Payment

 **How much tech experience do I need?**    ✕

You do NOT need any experience in the industry, nor do you need to be a tech geek. You can leave that for the software engineers building the software. We're here to sell it.

Selling software is about clarifying people's needs in businesses. We'll teach you how to use the various tools you need to do your job well.

That said, you DO need basic computer proficiency to do our program.

 **preHIRED**

# Your 6-Figure Sales Career Starts Here

After 12 weeks, Prehired members average $69,000 in their first year with 6-figure potential after that. Start with zero upfront cost and a job guarantee.



Program
Process (Finding a Job)
Position
Payment

How do I know this isn't some elaborate scam?     +

How much do I pay in total on an Income Share Agreement (ISA)?     ✕

Your ISA payments are based on your pre-tax income, so it depends:

• If you're making $6k per month (which is average for our members in year 1), you'll pay $750 per month (12.5% of the $6k).

• If you're making $9k per month (which is average for our members in year 2), you'll pay $1,125 per month (12.5% of the $9k).

• If you're making really good money (congrats!), you could pay up to the $30k cap.

• You'll never pay more than $30k.

• If you're ever not working and are following our process to find a new job, your ISA payments pause.

 **preHIRED**

Why Prehired? ˅   Membership Benefits   Blog   Hire a Member   Apply Now

**Program**
**Process (Finding a Job)**
**Position**
Payment

 **How much does Prehired cost?**   ✕

Most of our members pay with an Income Share Agreement (ISA). See ISA payment details and examples here.

Cash and flat-payment plan options are also available.

Whichever option you choose, you have LIFETIME access to our content updates, mentoring, job references, our active online members-only group, live trainings and partner job opportunities.

You have the right to cancel your Prehired Membership within 7 days of starting as long as you've not completed more than 30% of the course.

You will know exactly how much of the course you've completed, since the course dashboard shows you as you go.



**KATHLEEN JENNINGS**
ATTORNEY GENERAL

**DEPARTMENT OF JUSTICE**
NEW CASTLE COUNTY
820 NORTH FRENCH STREET
WILMINGTON, DELAWARE 19801

CIVIL DIVISION (302) 577-8400
FAX: (302) 577-6630
CRIMINAL DIVISION (302) 577-8500
FAX: (302) 577-2496
FRAUD DIVISION (302) 577-8600
FAX: (302) 577-6499
COMMON INTEREST COMMUNITY
OMBUDSPERSON (302) 577-8600
FAX: (302) 577-6499

March 8, 2022

Chief Magistrate Alan Davis
Justice of the Peace Court
5 East Pine St.
Georgetown, DE 19947

*Via hand delivery with courtesy copy via e-mail (Alan.Davis@delaware.gov)*

**Re: Rule 57 Representation of Joshua Jordan o/b/o Prehired Recruiting, LLC**

Dear Chief Magistrate Davis:

The Delaware Department of Justice Consumer Protection Unit ("CPU") has become aware of nearly 300 lawsuits recently filed by a newly-formed Delaware limited liability company called Prehired Recruiting, LLC through its Form 50 Agent Joshua Jordan. All but two of these lawsuits were filed against individuals who do not reside in Delaware and, upon information and belief, have no connection to this State. Similarly, the CPU does not believe that Prehired had any ties with Delaware until the formation of Prehired Recruiting, LLC in December 2021 for the purpose of filing these lawsuits—most, if not all of which, seek $25,000 in alleged damages. The purpose of this letter is to convey the CPU's concerns with Mr. Jordan's ongoing Rule 57 representation of Prehired Recruiting, LLC.

Prehired describes itself as a "membership association" that provides "training, mentoring and networking to help you land a full-time sales job in a business-to-business (B2B) software company within about 12 weeks—even with no previous sales or tech experience."[1] Prehired claims that it only admits less than 5% applicants,[2] and that its program "typically takes about 60-120 hours over 6-12 weeks (about 10 hours per week),"[3] though the program is video-based and self-paced.[4] However, the CPU has spoken with one student that was able to complete the program in less than one week. While the CPU has opened an investigation into Prehired's claims and representations made to students and potential students, including those pertaining to the income share agreements giving rise to Prehired's lawsuits, its most immediate goal is preventing imminent harm to the hundreds of consumers who have already been sued.

---

[1] Prehired FAQ, "What is Prehired?" *available at* https://www.prehired.io/faq.

[2] Prehired FAQ, "Since you admit less than 5% of applicants, what are you looking for?" and "Isn't your 'Six-Figure Sales Career Session" a sales pitch in disguise?" *available at* https://www.prehired.io/faq

[3] Prehired FAQ, "How long does it take to complete the first course?" *available at* https://www.prehired.io/faq.

[4] Prehired FAQ, "How can I finish my coursework faster than 12 weeks?" and "When's the next starting date for your program?" *available at* https://www.prehired.io/faq.

**Form 50 agent representation is a privilege that may be revoked in the sole discretion of the Chief Magistrate.**

Mr. Jordan is prosecuting these cases on behalf of Prehired Recruiting, LLC as a non-lawyer agent pursuant to Delaware Supreme Court Rule 57 and Justice of the Peace Court Form 50. As this Court explained in *In re Rule 57 Representation of Greentree Village Apartments* (C.A. No. JPCM-11-002, Nov. 28, 2011),[5] the purposes of Rule 57 are two-fold. First, Rule 57 is "intended to allow artificial entities easier and less costly access to the Court." *Greentree Village Apartments* at p. 2. Second, Rule 57 is designed "to protect the Court from unauthorized or inappropriate representation of artificial entities." *Id*. The Supreme Court could not have been clearer on this point: "***The ability to represent an artificial entity or public body by a non-lawyer is a privilege, not a right, which may be revoked in the sole discretion of the Chief Magistrate.***" Supreme Court Rule 57(a)(9) (emphasis added).

While Rule 57 agents are not held to the full ethical standards of attorneys practicing in this State, "there is a heightened requirement of good faith and fair dealing required of such agents that is inherent in Rule 57 and the process of representation authorized under that Rule is such that agents must act in a manner benefitting the privilege to practice law in this limited capacity." *In re Rule 57 Representation by Lee Herbert* (C.A. No. JPCM-11-001, Aug. 2, 2011) at p.4.[6] At a minimum, this requires "adherence to general principles of good faith, fair dealing and candor in written and oral communications with other parties to the Court." *Id*. The requirements of Rule 8.4 of the Delaware Lawyer's Rules of Professional Conduct[7] also apply to Rule 57 agents. *Id.*

The standards for reviewing and sanctioning alleged breaches of behavior expected from a Form 50 agent are analogous to those employed in cases of alleged attorney misconduct. *See Greentree Village Apartments* at p. 3. After receiving a complaint, the Court assesses whether there is a

---

[5] *Available at* https://courts.delaware.gov/Opinions/Download.aspx?id=164240.
[6] *Available at* https://courts.delaware.gov/Opinions/Download.aspx?id=162240.
[7] Rule 8.4. Misconduct.

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

"reasonable inference of misconduct on the part of the Form 50 agent or the entity that they represent." *Id*. Upon such a finding, "the Court will conduct a further examination of the matter, reviewing public source documents and requesting information from interested parties." *Id*. If, after conducting this examination, the Court finds probable cause that misconduct has occurred, it will suspend the privileges of the entity or agent involved and schedule a hearing, at which time the agent or entity will have the opportunity to be heard and "show cause why the privilege of Form 50 representation should not be revoked." *Id*. The Court will ultimately make its determination using the preponderance of the evidence standard, "having to be convinced that, more likely than not, the actions of the entity or agents are a breach of the standards required under Rule 57 and/or [the agent's ethical standards]." *Id*.

**<u>There is probable cause that Mr. Jordan and Prehired Recruiting, LLC attempted to manufacture jurisdiction in this Court of over nearly 300 consumer lawsuits—only two of which have any *bona fide* connection to this State.</u>**

There appears to be probable cause that Mr. Jordan has engaged in misconduct in connection with the filing and prosecution of these lawsuits, as well as a likelihood that consumers will be harmed as a result. In the coming days and weeks, the CPU intends to serve Prehired with a subpoena and/or Civil Investigative Demand, but it will take time for the CPU to complete its investigation. In the meantime, some consumers may default or settle their cases, not because they believe they owe Prehired the money, but because the costs of defending these lawsuits—in terms of time, travel, and lawyers' fees—is simply too high. For the reasons set forth below, the CPU respectfully submits that Mr. Jordan's actions leading up to the filing of these cases, along with his post-filing conduct, warrant a review by this Court of whether he should be permitted to continue with his Rule 57 representation.

**First**, nearly all of these lawsuits were filed against out-of-state *consumers*, not businesses, who face substantial and expensive barriers defending themselves in a court that is hundreds or thousands of miles away from home. As illustrated below, ***all but two of the lawsuits are against non-Delaware residents***, with most defendants concentrated in the Southern and Southeastern United States:



The Court is likely to lack personal jurisdiction over nearly all of the defendants, many of whom have probably had no contact whatsoever with Delaware and could not have reasonably anticipated being sued here. While full briefing on this issue is not necessary to resolve the question of Mr. Jordan's fitness to proceed as a Form 50 agent, the CPU remains available to the Court to provide amicus briefing or other assistance that may be desired.

The risk of harm to consumers nationwide is simply too great for Mr. Jordan (or any other non-lawyer agent selected by Prehired Recruiting, LLC) to continue these lawsuits without qualified legal counsel. Personal jurisdiction, service, and venue are all issues of Constitutional import. It is fundamentally unfair that nearly 300 individual defendants should each be forced to hire an attorney to raise the same defect in Mr. Jordan's lawsuits because Mr. Jordan, who has a staggering **$7,225,000.00** at stake,[8] *chose* to proceed without the assistance of counsel.[9] If there is a legal justification for keeping these lawsuits in Delaware, Prehired Recruiting, LLC can present that argument through a Delaware attorney fully bound by the Rules of Professional Conduct.

**Second**, Prehired Recruiting, LLC and Prehired, LLC appear to have both been recently formed as Delaware limited liability companies for the purposes of creating a nexus to this state. This may have misled consumer-defendants into believing that they had transacted with a Delaware entity when they had not. Upon information and belief, Mr. Jordan resides in South Carolina and Prehired has never conducted any business operations in Delaware. According to our review of Prehired's Better Business Bureau website on March 4, 2022,[10] the company is located at 4900 Ohear Ave

---

[8] This assumes that each lawsuit seeks $25,000. 289 lawsuits x $25,000/lawsuit = $7,225,000.000.

[9] It should also be noted that a dismissal for lack of personal jurisdiction, venue, or improper service is generally ***not*** a dismissal on the merits. Thus, the consumer-defendant could still be sued in his or her home jurisdiction, at which time he or she would be required to hire *another* attorney for representation in that case.

[10] The website appears to no longer be available, but a screenshot as of March 4, 2022 is enclosed herewith.

STE 100, North Charleston, SC 29405-5081. The CPU finds Prehired's assertion that it is conducting operations out of its registered agent's office disingenuous, at best.[11]

There is a substantial risk that consumers will confuse Prehired, LLC, a *Delaware* limited liability company that is less than three months old with Prehired, LLC, a *Florida* limited liability company that appears to be the original creditor in most, if not all, of these cases.[12] Adding to this confusion, Mr. Jordan has alleged in the matter of *Prehired Recruiting LLC v. Mehmed Tiro*, JP13-22-000897 that "Plaintiff *as well as the original creditor* is a Delaware limited liability company…" (emphasis added).[13] This does not appear to be true since the Delaware Prehired, LLC entity was not formed until three months *after* Mr. Tiro allegedly executed his contract.[14]

**Third**, as noted above, Prehired Recruiting LLC's cases seek aggregate damages in excess of $7,000,000.00. Rule 57 was designed to provide cost-effective court access to plaintiffs but was not created so that this Honorable Court could serve as a national collection agency for out-of-state creditors holding claims against out-of-state defendants.

In sum, the CPU is gravely concerned about the imminent harm these lawsuits may cause consumers and is diligently working to determine whether Prehired has violated any consumer protection laws in the course of its dealings with students. I am available at the convenience of the Court in-person or via telephone or video conference and would be happy to provide to the Court whatever assistance or information would further the pursuit of justice in these matters.

Very truly yours,

*/s/ Katherine M. Devanney*
Katherine M. Devanney (#6356)
Deputy Attorney General
820 N. French St., Floor 5
Wilmington, DE 19801
302-683-8812
katherine.devanney@delaware.gov

Encl.

CC:     Joshua Jordan
        Prehired Recruiting, LLC

---

[11] *See, e.g.*, Complaint, *Prehired, LLC v. Provins* (Case No. 2:22-cv-00384-MCE-AC, E.D. Cal. March 1, 2022) (Paragraph 1 alleges "Prehired, LLC is a Delaware Limited Liability Company whose principal place of business [is] located at 8 The Green, Suite 10588, Dover, DE 19901."). 8 The Green is the address of Prehired's registered agent, Northwest Registered Agent Service, Inc.
[12] Prehired was originally formed as preHired, LLC a South Carolina limited liability company, on May 14, 2017. On March 1, 2021, preHired LLC merged into Prehired LLC, a Florida limited liability company.
[13] Response to Motion to Dismiss, *Prehired Recruiting, LLC v. Mehmed Tiro*, JP13-22-000897 (filed Jan. 26, 2022).
[14] *See* Complaint, *Prehired Recruiting, LLC v. Mehmed Tiro*, JP13-22-000897 (filed January 27, 2022) (alleging that contract was signed on September 22, 2021).

**Business Profile**



**Prehired, LLC**

Sales Training

## Contact Information

📍 4900 Ohear Ave STE 100
North Charleston, SC 29405-5081

↱ Get Directions

🌐 http://prehired.io/go

📞 (843) 790-2838

🕐 9:00 AM - 9:00 PM ▼

### Want a quote from this business?

**Get a Quote**

## Customer Reviews

 **4.41**/5

Average of 34 Customer Reviews

Start a Review

**Read Reviews**

## Customer Complaints

**7** complaints closed in last 3 years

**4** complaints closed in last 12 months

File a Complaint

**Read Complaints**

## BBB Rating & Accreditation

ACCREDITED BUSINESS    A+

Accredited Since: 8/12/2019

Years in Business: 4

**Customer Reviews are not used in the calculation of BBB Rating**

Overview of BBB Rating

## Products & Services

Membership to the Science-Based Sales® Association. Membership privileges include: online program, personal mentors, online community, live events, and job references for the purpose of thriving in a software sales career.

## Business Details

**Location of This Business**
4900 Ohear Ave STE 100, North Charleston, SC 29405-5081

| | |
|---|---|
| **BBB File Opened:** | 9/5/2018 |
| **Years in Business:** | 4 |
| **Business Started:** | 5/14/2017 |
| **Business Incorporated:** | 5/14/2017 in SC, USA |
| **Accredited Since:** | 8/12/2019 |
| **Type of Entity:** | Limited Liability Company (LLC) |

## Customer Complaints

7 Customer Complaints

**Need to file a complaint? BBB is here to help. We'll guide you through the process.** How BBB Processes Complaints and Reviews

**File a Complaint**

**Most Recent Customer Complaint**

**Complaint Type:** Problems with Product/Service    **Status:** Answered ❓    09/07/2021



PreHIRED is a lie. They hype you up by telling you that you can make 75k a year. The courses they teach you are outdated. For example. When they tried to teach me about hubspot. Also understand this is all online. So it's a video that plays and it...

Read More

**Desired Outcome**
Billing adjustment; Correction to a credit report; Not applicable

# INCOME SHARE AGREEMENT

This Income Share Agreement ("ISA" or "Agreement") is made and entered into by and between Nghia D Nguyen ("Obligor", "I", "you", or "your") and Prehired, LLC ("Obligee"), including any successors or assigns of Prehired, LLC (collectively, "Company"), effective as of the date approved by Company (the "Effective Date").

THIS IS A LEGAL CONTRACT. READ IT CAREFULLY BEFORE SIGNING. BY ENTERING INTO THIS AGREEMENT, YOU AGREE THAT IN RETURN FOR RECEIVING THE PROGRAM OR TRAINING PROVIDED BY PREHIRED, LLC, PREHIRED SCIENCE-BASED SALES®, YOU WILL PAY A PORTION OF YOUR EARNED INCOME TO COMPANY IN ACCORDANCE WITH THE TERMS AND CONDITION OF THIS AGREEMENT. THIS AGREEMENT DOES NOT CONSTITUTE A LOAN. THE AMOUNT YOU MUST PAY UNDER THIS AGREEMENT IS NOT A FIXED AMOUNT. YOUR PAYMENT OBLIGATION IS CONTINGENT ON, AND SHALL VARY BASED ON, YOUR EARNED INCOME EACH YEAR, AS DESCRIBED IN THIS AGREEMENT.

In consideration of the program or training provided to you, and subject to all of the terms, covenants, promises, and conditions contained in this Agreement, you and Company agree as follows:

1. DEFINITIONS.

For purposes of this Agreement:

"Approved Bank Account" means a bank account established by you with a financial institution designated or approved by Company's ISA program manager.

"Derived Monthly Income" equals your Earned Income for an entire calendar year divided by 12.

"Disability" means a determination by the Social Security Administration or other federal or state agency that you are disabled.

"Earned Income" means your total wages, compensation and gross income from self-employment, and other income, as reported or required to be reported for income tax purposes. For example, for U.S. individual taxpayers for the 2018 tax year, this includes the sum of: (a) line 1 (Wages, salaries, tips, etc.) of IRS Form 1040; (b) line 12 (Business income or (loss)) of Schedule 1 (IRS Form 1040); (c) line 17 (Rental real estate, royalties, partnerships, S corporations, trusts, etc.) of Schedule 1 (IRS Form 1040) less any passive income or loss on lines 29a column h and 34a column d of Schedule E (IRS Form 1040); (d) line 21 (Other income) of Schedule 1 (IRS Form 1040), but not including any net operating loss deduction claimed on such line; and (e) line 34 (Net farm profit or (loss)) of Schedule F (IRS Form 1040). For later tax years, Earned Income includes equivalent information reported or required to be reported on the same or any successor IRS forms. Earned Income also includes your pro rata share of net income retained by any legal entity based on your ownership interest and your active participation in such entity or entities; distributions from your active participation in any legal entity or entities to the extent not already included; and any non-cash consideration received or deemed earned by you, directly or indirectly, including, but not limited to, contributions to qualified and non-qualified deferred compensation and retirement benefit plans, fringe benefits not reported as wages for compensation, and equity rights or deferred compensation generated or attributable to the current period of your employment. In addition, Earned Income includes any amounts earned by or payable to you, directly or indirectly, as a result of your provision of services to any related party. If you file tax returns jointly with your spouse, your Earned Income shall not include any income earned solely by your spouse, as demonstrated by you to Company's satisfaction. At its discretion, Company may estimate your Earned Income using documentation other than your U.S. federal income tax return, provided that the documentation is another verifiable source acceptable to Company. All references in this Agreement to income tax returns of, reporting or required reporting by, forms applicable to, or obligations of or to a U.S. taxpayer include substantial equivalents with respect to a non-U.S. taxpayer.

"Employer" means any Person for which you provide services, either as an employee or as an independent contractor and, for U.S. taxpayers, includes any Person required by IRS regulation to provide you with a Form W–2 or a 1099-MISC.

"Program or Training" means: (a) a program of study at a school or educational institution that is eligible under Title IV of the Higher Education Act, as amended from time to time; (b) a proprietary or vocational school; or (c) a program or service that provides you the opportunity to earn Qualified Monthly Earned Income. For the purposes of this Agreement, Program or Training refers to Prehired Science-Based Sales®.

"Income-Earning Month" means a month in which your Earned Income in aggregate for that month exceeds the Minimum Monthly Amount.

"Income Share" refers to a fixed percentage of your Qualified Monthly Earned Income. Your Income Share under this Agreement is 12.50%, subject to adjustment for underreporting or overreporting of Earned Income, as described herein.

"Leif" refers to Leif Technologies, Inc. Leif will serve in connection with other third parties as Company's ISA program manager under this Agreement.

"Leif Platform" means the proprietary cloud-based computing platform used by Leif for the processing and payment functions contemplated by this Agreement, including, among other things, monitoring the Earned Income in your Approved Bank Account and, if applicable, withdrawing Monthly Payments from your Approved Bank Account.

"Minimum Monthly Amount" equals $3,333.33, which is equivalent to $40,000.00 annually.

"Monthly Earned Income" means the amount of Earned Income you receive in each month during the Payment Term. Your Monthly Earned Income will be based on total Earned Income received by you from all sources.

"Monthly Payment" means the amount of your Qualified Monthly Earned Income times your Income Share.

"Payment Cap" equals $30,000.00.

"Payment Term" refers the period during which you have a contingent obligation to make Monthly Payments, as provided under this Agreement.

"Person" means any individual, partnership, corporation, limited liability company, trust or unincorporated association, joint venture or other entity or governmental body.

"Prepayment Amount" means payment or payments made by you to Company that will extinguish your obligations under this Agreement prior to the end of the Payment Term. Prepayment Amount equals the Payment Cap less any Monthly Payments already made under this Agreement, plus any outstanding fees or other amounts that you may owe Company under this Agreement.

"Qualified Income-Earning Month" means a month in which your Monthly Earned Income exceeds the Minimum Monthly Amount.

"Qualified Monthly Earned Income" means your Monthly Earned Income in any Qualified Income-Earning Month.

2. RIGHTS AND OBLIGATIONS UNDER THIS AGREEMENT.

Company agrees to provide you with the Program or Training, subject to the terms and conditions of this Agreement. In return, you agree to pay Company: (a) a total of 48.0 Monthly Payments on your Qualified Monthly Earned Income, subject to reconciliation and your obligation to make additional payment(s) for any underreported Earned Income, as described herein; or (b) until your total Monthly Payments reach the Payment Cap, whichever occurs first ("Payment Satisfaction").

3. LEIF AS ISA PROGRAM MANAGER

You hereby consent to Leif acting as the agent of Company and managing and processing all aspects of this Agreement, including but not limited to monitoring your Earned Income in your Approved Bank Account, processing payments, and performing reconciliations. You further agree to cooperate with all requests made by Leif in connection with your compliance with terms and conditions of this Agreement, including by providing information, documents, and authorizations, as requested from time to time.

4. MAKING PAYMENTS FROM EARNED INCOME.

a. Payment Term. Your Payment Term will start immediately upon completion of or withdrawal from your Program or Training, whichever occurs first. However, your obligation to make Monthly Payments will occur only if you are earning the Qualified Monthly Earned Income or as otherwise provided herein. Your Payment Term will end upon Payment Satisfaction.

b. Reporting of all Earned Income. Upon completion of your Program or Training and throughout the Payment Term, you agree to use the Leif Platform to communicate: (i) all employment positions you accept including, if requested, a description of the business and products or services provided by each Employer and the nature of your position with each Employer; (ii) your base salary for each employment position; and (iii) your projected annual gross Earned Income.You further agree during the Payment Term to update through the Leif Platform any changes in your projected annual gross Earned Income within thirty (30) days of any event giving rise to such change.

c. Monthly Payment Based on Projected Earned Income. Based on the projected Earned Income you report to Leif, subject to reconciliation as provided below, you shall pay Company a Monthly Payment for each month in which you have Qualified Monthly Earned Income.

d. Methods of Payment. Prior to or upon commencement of the Payment Term, you agree to elect one of following options for recurring Monthly Payments and any other payment(s) owing under this Agreement:

i. electronic funds transfers from your Approved Bank Account; or

ii. payments by credit card.

You agree to execute authorizations and any other documentation necessary for Leif to implement your election.

e. Withdrawal of Authorization for Preauthorized Electronic Funds Transfers. You have the right at any time to revoke your prior authorization for electronic funds transfers, subject to providing Leif at least three (3) business days' notice prior to a scheduled payment. Should you elect to do so, revocation will not relieve you of your obligation to make Monthly Payments or any other payment(s) hereunder, and you agree to pay by credit card. If at any time during the Payment Term your circumstances will not permit payment of the Monthly Payment through electronic funds transfers from your Approved Bank Account or by credit card, you may contact Leif to request a reasonable alternative method of payment of your Monthly Payment, which Leif may or may not accept in its sole discretion.

f. Approved Bank Account.

i. Set Up and Maintenance of Approved Bank Account. You agree that, prior to receiving any Earned Income, you will establish a bank account with a financial institution designated or approved by Leif in writing ("Approved Bank Account") and also will permit integration of the Approved Bank Account with Leif's Platform as necessary to permit Leif to track your Earned Income, monitor account activity and balances, perform reconciliations and, if elected by you, process and withdraw your Monthly Payments from your Approved Bank Account. You further agree to provide details of the Approved Bank Account as Leif may reasonably request from time to time. If for any reason (e.g., a change in your employment or address), you would like to change your Approved Bank Account to another bank, you agree to give Leif prior notice of the requested change and such details for the proposed replacement account as Leif may reasonably request. The proposed replacement account shall be subject to Leif's prior approval. If at any time during the Payment Term you change the password to your

Approved Bank Account or otherwise take any action that alters the ability of Leif to access your Approved Bank Account, you agree to give Leif prompt notice of the change and to comply with all requests of Leif to integrate the new Approved Bank Account with the Leif Platform.

ii. Right to Require Change of Approved Bank Account. Notwithstanding the foregoing provision, and even if you already have an Approved Bank Account, you acknowledge that Leif may require you during the Payment Term to open and maintain a new account with a financial institution designated by Leif, and you agree that, upon notice from Leif, that you will promptly open a new account with the designated financial institution and that such account shall then become your Approved Bank Account. You further agree to execute all documents required to open the new Approved Bank Account including, if applicable, authorization for automatic payments from the new Approved Bank Account. You also agree to authorize integration of the Approved Bank Account with the Leif Platform to permit Leif to monitor your EarnedIncome, among other things.

g. Deposit of all Earned Income into Approved Bank Account. You agree that during the entire Payment Term you shall deposit all Earned Income received by you from any and all sources directly into your Approved Bank Account. If you are employed, you agree to cause your Employer to arrange for the direct deposit of all of your Earned Income to your Approved Bank Account. Your refusal or failure to establish the Approved Bank Account or to permit integration with the Leif Platform for the purpose of making Monthly Payments or other payments hereunder shall not relieve you of any of your obligations under this Agreement.

h. Payment Deferrals and Extensions of Payment Term. Leif shall place your ISA in deferment status and not accept payments for any month that your Monthly Earned Income does not exceed the Minimum Monthly Amount (a "Deferred Month"), until such time as your Monthly Earned Income exceeds, or is deemed to exceed the Minimum Monthly Amount (as determined by reconciliation, as described herein), at which time your obligation to make Monthly Payments shall be reinstated. If you reach the maximum number of 96 Deferred Months permitted under this ISA, your payment obligations under this ISA will be terminated.

i. Survival of Obligations. Expiration of the Payment Term only terminates your obligation to make Monthly Payments from Qualified Monthly Earned Income. However, it does not terminate this ISA or any continuing obligations you may have to Company or Leif pursuant to this ISA, including but not limited to the obligation to make additional payments if Leif determines that you underreported your Earned Income.

5. RECONCILIATION. From time to time during the Payment Term, and for a period of one (1) year following the end of the calendar year in which the Payment Term expires, Company shall have the right to examine and audit your records pertaining to your employment and to verify your Earned Income at any point or points during the Payment Term to ensure that you have properly reported or projected your Earned Income and to verify that Leif has properly calculated and deducted Monthly Payments and other payment owing hereunder ("Reconciliation"). You agree to cooperate with the Company and Leif in the Reconciliation process.

a. Confirmation of Earned Income and Employment. To permit Leif to perform Reconciliation, you agree that you shall, within thirty (30) days of request:

i. verify your Earned Income as reported to the IRS by completing and delivering to Leif a IRS Form 4506-T or Form 4506T-EZ (or any successor form) or, at Leif's option, provide Leif with a true and accurate copy of your federal tax return as submitted to the IRS for any calendar year of the Payment Term;

ii. provide Leif with the name, address and phone number of any Employers from which you have received Earned Income and authorize each of your Employers to disclose to us all forms of cash and non-cash compensation paid or provided to or earned by you; and

iii. provide such other documentation including, without limitation, pay stubs, Form W-2s, offer letters, and other information and summaries of any non-written or oral non-cash consideration, equity or deferred compensation arrangements as may be reasonably requested by Leif.

b. Underreported Earned Income.

i. If at any time during the Payment Term, whether intentionally or unintentionally, you underreport your Earned Income, resulting in one or more deferred Monthly Payments, or one or more lower Monthly Payments than Company is entitled to receive under this Agreement, Company will have the right to correct the issue, in its discretion, by: (A) increasing your Income Share for Monthly Payments payable to us for each subsequent Qualified Income Earning Month, to a maximum of 150% of Income Share; or (B) adding a fixed monthly underpayment fee which shall not exceed $1,000.00 per month ("Underpayment Fee"), until such time as the discrepancy has been corrected.

ii. Alternatively, if a Reconciliation shows that you underreported your Earned Income at any time during the Payment Term, so that you made one or more lower Monthly Payments than Company is entitled to receive under this Agreement, Leif shall give you notice within ten (10) days of completion of the Reconciliation of the amount of the underpayment and reasonable documentation of the underpayment calculation. You agree to pay us the aggregate amount of the underpayment within sixty (60) days of receiving such notice. If you do not pay on time, you authorize Leif to deduct the amount of your underpayment from your Approved Bank Account. If the Approved Bank Account is no longer active or there are insufficient funds to pay the underpayment, Company may exercise its legal rights to collect such underpayment. In that case, you agree to pay Company's reasonable costs of collection, including attorney fees.

iii. If a Reconciliation shows or you claim that your Derived Monthly Income for any month in which you made a Monthly Payment was less than the amount of Qualified Monthly Earned Income on which such Monthly Payment was calculated, such Monthly Payment will not be reduced or otherwise refunded unless you can demonstrate with documentation reasonably satisfactory to Leif that such payment was the result of a manifest error.

iv. If a Reconciliation shows that your Derived Monthly Income for any month was more than the amount of Monthly Earned Income you reported for such month, your Monthly Earned Income for that month shall be deemed to equal the Derived Monthly Income, and any additional amounts payable to us will be subject to recapture pursuant to clauses (i) or (ii) above, as the case may be.

c. Overreported Earned Income.

i. If at any time during the Payment Term, for any reason, you overreport your Earned Income, resulting in larger Monthly Payments than Company is entitled to receive under this Agreement, you will have the right to notify Leif of this and provide any documentation that Leif may reasonably request to verify your claim of overpayment If, after Reconciliation, Leif agrees that you overreported your Earned Income, Company will correct the error, in its discretion, by: (A) refunding the amount of the overpayment to your Approved Bank Account in a single payment or by equal payments over a period not to exceed 6 months; or (B) decreasing your Income Share by not less than 10% for each Monthly Payment, until such time as the overage in payments to Company has been corrected.

ii. If the Payment Term ends prior to correction of any overage in payments, as determined by Reconciliation, Company shall pay you the balance of any remaining overpayment within thirty (30) days of the end of the Payment Term.

d. Extension of Time for Reconciliation. If you should file for an extension of the time to file your federal income tax returns or if you fail to provide us with the requested tax, Employer or Earned Income information or you do not otherwise reasonably cooperate with us for purposes of Reconciliation, then the one (1) year period following the end of the calendar year in which the Payment Term expires shall be extended for a period of time equal to the period of time that you failed to provide the requested information or you obtained by filing the extension. It is the intent of this provision that the running of the one (1) year period following the end of the calendar year in which the Payment Term expires shall be extended so that the Company has a full and reasonable opportunity to perform Reconciliation and so that you may not benefit from your failure to comply with your obligations or obtaining an extension.

6. CAP ON PAYMENTS; PREPAYMENT AMOUNT.

a. Payment Cap. The total Monthly Payments you owe under this Agreement will not exceed the Payment Cap.

b. Prepayment Amount. You may at any time pay in full your obligation to the Company by paying an amount equal to the PrePayment Amount.

7. ADDITIONAL PROVISIONS AFFECTING PAYMENTS.

a. Limit on Other Income Share Agreements. You agree that you have not and will not enter into additional income share agreements or similar arrangements with Company or any other Person that, in the aggregate, obligate you to pay a total Income Share exceeding 30.0% of your Earned Income.

b. International Work. If you move out of the United States during your Payment Term, you agree to continue to report Earned Income and to continue paying your Income Share of Qualified Monthly Earned Income. You shall not be in breach of this Agreement so long as you continue to make the required Monthly Payments.

c. Waiver of ISA Due to Death or Total and Permanent Disability. We will waive what you owe under this Agreement, including any past due amounts and fees, if you die or become disabled. If you would like to assert a waiver based on disability, you will need to provide documentation showing that you have been found to be permanently disabled by the Social Security Administration or other federal or state agency due to a condition that began or deteriorated after the Effective Date.

d. Obligation in Event of Withdrawal. If, for any reason, you withdraw from the Program or Training provided pursuant to this Agreement, you may be entitled to a pro rata reduction in your Income Share or the length of the Payment Term, at the sole discretion of Company. You agree to give Company and Leif prompt notice of your withdrawal from the Program or Training and the effective date of your withdrawal.

8. REVIEW OF YOUR TAX RETURNS. For the tax year in which your Payment Term begins through the tax year in which your Payment Term ends, you agree to file timely your U.S. federal income tax returns no later than April 15 of the following year, and to timely file any state or local tax returns by the due date. You agree to notify Leif of any extension you seek for filing federal income tax returns. Moreover, upon request, you agree to sign and file IRS Form 4506-T or Form 4506T-EZ (or any successor form) within thirty (30) days of request, designating Company and Leif as the recipients of the transcripts of your tax returns covering any and all years of your Payment Term. You agree to perform any similar requirements or procedures for any non-U.S. country's taxing authority, as applicable.

9. TAX REPORTING. Company intends to report the tax consequence of the ISA on its tax returns as a financial contract that is eligible for open transaction treatment. Company believes that this tax treatment is more likely than not the proper characterization for federal income tax purposes. Company urges you to consult with your own tax advisors, to ascertain the appropriate manner in which to report your taxes. Company believes that there is a potential benefit if all parties to a transaction report in a consistent fashion. Company encourages you to report in a manner that is consistent for all parties to the transaction. Company recognizes that there may be specific situations where Company or you may find it appropriate to report in a way that is inconsistent with the other party. Company urges you to consult with your tax advisors about the potential consequences of such reporting.

10. COVENANTS AND REPRESENTATIONS OF OBLIGOR. By entering into this Agreement, you represent, warrant and promise to the Company as follows:

a. that you are entering into this Agreement in good faith and with the intention to pay us by making Monthly Payments when due;

b. that all the information you have provided to Company in connection with entering into this Agreement is true and accurate and that you have not provided any false, misleading or deceptive statements or omissions of fact;

c. that you are not contemplating bankruptcy, and you have not consulted with an attorney regarding bankruptcy in the past six months;

d. that you are a U.S. citizen or permanent resident or have a social security number and the legal right to work in the United States;

e. that you will make reasonable and good faith efforts to seek employment immediately following completion of the Program or Training and during all times during the Payment Term that you are not employed or that you have Earned Income less than the Minimum Monthly Amount;

f. during the Payment Term, you will timely report to Leif any changes in your Employment status;

g. during the Payment Term, you will not conceal, divert, defer or transfer any of your Earned Income (including but not limited to any non-cash consideration, equity or deferred compensation rights granted to you) for the purpose of avoiding or reducing your Monthly Payment obligation or otherwise;

h. that you will timely and fully provide all information and documentation required under the terms and conditions of this Agreement or as reasonably requested by Company (including any assignee of Company) and/or Leif, and that such information or documentation shall be true, complete, and accurate;

i. that during the Payment Term you will file all federal, state or local tax returns and reports as required by law, which shall be true and correct in all material respects, that you will report all of your Earned Income on such returns, and that you shall pay all federal, state or local taxes and other assessments when due;

j. that you shall keep accurate records relating to your Earned Income for each year of your Payment Term, including all W-2s, pay stubs, and any invoices or payments relating to self-employment services you provide; and

k. that you will retain all such records for a period of at least one (1) year following the date you fulfill all your payment obligations under this Agreement.

11. COVENANTS AND REPRESENTATIONS OF COMPANY. Company represents, warrants and promises as follows:

a. Confidentiality. Company agrees that all non-public employment or financial information of Obligor and any non-public records or information provided to Leif pursuant to this Agreement is personal and confidential information. Company agrees not to use personal or financial information concerning you or your Employer for any purposes other than (i) as expressly authorized herein or as separately agreed to by you, (ii) as incidental to performance of this Agreement, or (iii) to enforce its rights under this Agreement.

b. Security. Company and Leif shall use and maintain commercially reasonable security controls so as to prevent any unauthorized access to or use any personal and confidential information of Obligor.

12. BREACH AND REMEDIES.

a. Breach. Without prejudice to Company's other rights and remedies hereunder, and subject to applicable law, Company may deem you to be in breach under this Agreement upon any of: (i) your failure to make any Monthly Payment within ninety (90) days of the due date; (ii) your failure to report or update your Earned Income within ninety (90) days of Leif's request; (iii) your failure to provide Leif with a completed and executed IRS Form 4506-T, your social security number, or the name of your Employer(s) within ninety (90) days of Leif's request; (iv) your failure to provide details of and confirm ownership of your Approved Bank Account within ninety (90) days of receiving written notice from us or Leif of such failure; (v) your failure to provide documentation including, without limitation, copies of your federal tax returns, pay stubs, Form W-2s, and offer letters, and summaries of any non-written or oral non-cash consideration, equity, or deferred compensation arrangements as may be reasonably requested by Leif, pursuant to this Agreement; or (vi) your violation of any other provision of this Agreement that impairs Company's rights, including but not limited to, the receipt of information that Leif deems, in its sole discretion, to be materially false, misleading, or deceptive.

b. Remedies upon Breach. Subject to applicable law (including any notice or cure rights provided under applicable law), upon breach, Company shall be entitled to: (i) collect the Prepayment Amount; (ii) enforce all legal rights and remedies in the collection of such amount and related fees (including any rights available to Company to garnish wages or set off any federal or state tax refund); or (iii) utilize any combination of these remedies. You agree to pay Company's costs of collection to the extent permitted by applicable law, including reasonable attorney fees, collection fees charged by a taxing authority for tax refund set-off, and any other fees or costs (including Company's fees and costs due to your bankruptcy or insolvency, if applicable).

c. Equitable Remedies. If Company concludes that money damages are not a sufficient remedy for any particular breach of this Agreement, then Company shall be entitled to seek an accounting, as well as injunctive or other equitable relief to the fullest extent permitted by applicable law. Such remedy shall be in addition to all other legal or equitable remedies available to Company.

13. RETAINED RIGHTS. No breach or the termination of this Agreement will affect the validity of any of your accrued obligations owing to Company under this Agreement. Notwithstanding termination of the Payment Term, Company shall retain all rights to enforce your obligations under this Agreement, including the right to receive the full amount of your Income Share owing hereunder based on your Earned Income during the Payment Term.

14. ELECTRONIC DELIVERY. Leif may decide to deliver any documents or notices related to this Agreement by electronic means. You agree to receive such documents or notices by electronic delivery to the email address provided Company and Leif, and to participate through an on-line or electronic system established and maintained by Company or Leif.

15. PERMITTED COMMUNICATIONS. Company or Leif may use an automatic dialer to place calls or send text messages, or use electronic mail, to communicate with you about payment due dates, missed payments, and other important information, and may use an artificial or prerecorded voice in connection with such communications. You hereby consent to such communications at any telephone number or email address that you provide Company or Leif, now or in the future. You agree that Company and Leif will not be liable to you for any such communications, even if information is communicated to an unintended recipient. You understand that, when you receive such communications, you may incur a charge from your wireless or internet service providers. You agree that Company and Leif shall have no liability for such charges. You also agree that Company and our agents, including but not limited to Leif, may record any telephone conversations with you.

You may withdraw your consent to receive emails or telephone calls or text messages using an automatic dialer or an artificial or prerecorded voice by sending notice by email to support@leif.org (or such other email address as the Company or Leif may provide to you from time to time). The notice must include (i) your name and address, (ii) your cellular telephone number(s), and (iii) your account number, if applicable; and shall expressly state that you are revoking your consent under this Agreement for Company or Leif to email or place calls and send text messages to you using an automatic dialer or artificial or prerecorded voice.

16. CONSENT TO CREDIT AND INCOME VERIFICATION; CREDIT REPORTING; OBLIGOR INFORMATION.

a. In connection with the provision of the Program or Training and by entering into this Agreement, you authorize Company or Leif to obtain your credit report, verify the information that you provide to the Company, and gather such additional information that Company or Leif reasonably determines to help assess and understand your ability to perform your obligations under this Agreement. You understand that Company or Leif may verify your information and obtain additional information using a number of sources, including but not limited to, consumer reporting agencies, third party databases, past and present employers, other school registrars, public sources, and personal references provided by you. Upon your request, you will be notified whether or not Company or Leif obtained you credit report and, if so, the name and address of the consumer reporting agency that furnished the report. You further authorize Company or Leif to share your credit report and information therein with its assigns or affiliates (including but not limited to its parents, investors, and lenders), which Company or Leif will do using reasonable data security procedures.

b. You authorize the Company and its agents (including, but not limited to, Leif) to report information about this Agreement to credit bureaus. Although this Agreement is not "credit," we may inform credit bureaus about your positive payment behavior when you make payments as agreed. However, this also means that late payments, missed payments, or other breaches of this Agreement may be reflected in your credit report.

c. You authorize the Company to use any and all information provided by you, and any data derived from such information, for any purpose, including, without limitation, creation of any additional products or services derived therefrom. You disclaim any proprietary or monetary interest in any such additional products or services.

17. CUSTOMER IDENTIFICATION POLICY. To help the government fight the funding of terrorism and money laundering activities, Leif will obtain, verify, and record information identifying you. When you enter into this Agreement, Leif reserve the right to ask for your name, address, date of birth, social security number, and other information that will allow Company to identify you. Leif may also ask to see your driver's license or other identifying documents.

18. DATA. You hereby consent to Company and Leif's use of information or data (collectively, "Data") provided by or concerning you: (a) to collect and analyze the Data and any other data relating to the provision, use, and performance of this Agreement, the Leif Platform and related systems and technologies; (b) to use the Data to improve and enhance the Leif Platform or for other development, diagnostic, and corrective purposes in connection with this Agreement or any other business of Leif; and (c) to disclose such information and data solely in aggregate or other de-identified form in connection with Leif's businesses. Company and Leif shall own any data derived from or based upon the Data in conjunction with the foregoing rights.

19. NOTICE AND CURE. Prior to initiating any legal action or other proceeding regarding any past, present or future claim, dispute, or controversy, Company or Obligor may have against the other, regardless of the legal theory on which it is based, arising out of, relating to or occurring in connection with this Agreement (a "Claim"), the party asserting the Claim shall give the other party written notice of the Claim and a reasonable opportunity, not less than thirty (30) days, to resolve the Claim. The notice must explain the nature of the Claim and the relief demanded by the party asserting it. If Company is asserting the Claim, Company will send such notice to you at your address appearing in our records or, if you are known to be represented by an attorney, to your attorney at his or her office address. The party asserting the Claim must reasonably cooperate in providing any information about the Claim that the other party reasonably requests. The provisions of this section shall survive termination of this Agreement.

20. ARBITRATION OF CLAIMS AGAINST COMPANY. Except as expressly provided below, Obligor agrees that any Claim against the Company shall be submitted to and resolved by binding arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1 et seq., before the American Arbitration Association ("AAA") under its Consumer Arbitration Rules then in effect (the "AAA Rules", available online at www.adr.org). If the AAA is unable to serve as administrator and Company and Obligor cannot agree on a replacement, a court with jurisdiction will select the administrator or arbitrator. This means that any Claim you have shall be resolved by a neutral third-party arbitrator, and not by a judge or a jury, and you hereby knowingly and voluntarily waive the right to trial on such Claim by any court of law or equity. For purposes of this Arbitration Agreement: (a) the term "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). For purposes of this Arbitration Agreement; (b) the term "Company" includes: (i) the Company; (ii) any assignee of this Agreement; (iii) any assignee, agent, designee or servicer of the Company (including, but not limited to, Leif): (iv) the officers, directors, employees, affiliates, subsidiaries, and parents of all of the foregoing; and (v) any Person named as a co-defendant with Company in a Claim asserted by Obligor, such as servicers and debt collectors. Notwithstanding the foregoing, if a Claim that Obligor wishes to assert against Company is cognizable in a small claims court (or your state's equivalent court) with jurisdiction over the Claim and the parties, Obligor or Company may pursue such Claim in such court; provided, however, that if the Claim is transferred, removed, or appealed to a different court, it shall then be resolved by arbitration, as provided herein. Moreover, any dispute concerning the validity or enforceability of this Arbitration Agreement must be decided by a court; any dispute concerning the validity or enforceability of this Agreement is for the arbitrator.

Any arbitration hearing that you attend will take place before a single arbitrator and shall be held in the same city as the U.S. District Court closest to your address. If you cannot obtain a waiver of the AAA's or arbitrator's filing, administrative, hearing and/or other fees, Company will consider in good faith any request by you for Company to bear such fees. Each party will bear the expense of its own attorneys, experts and witnesses, regardless of which party prevails, unless applicable law or this Agreement provides a right to recover any of those fees from the other party.

The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and privilege rules that would apply in a court proceeding, but subject to any limitations as may be set forth in this Agreement.

This Arbitration Agreement shall survive the termination of this Agreement, your fulfillment of your obligations under this Agreement, and bankruptcy or insolvency by either party (to the extent permitted by applicable law). In the event of any conflict or inconsistency between this Arbitration Agreement and the administrator's rules or other provisions of this Agreement, this Arbitration Agreement will govern.

CLASS ACTION WAIVER: IF A CLAIM IS ARBITRATED, OBLIGOR WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A CLASS ACTION, A PRIVATE ATTORNEY GENERAL ACTION, OR OTHER REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER. Further, unless both Obligor and Company agree otherwise in writing, the arbitrator may not join or consolidate Claims with claims of any other Persons. The arbitrator shall have no authority to conduct any class, private attorney general, or other representative proceeding, and shall award declaratory or injunctive relief only to the extent necessary to provide relief warranted by the Claim. If a determination is made in a proceeding involving Company and Obligor that the class action waiver is invalid or unenforceable, only this sentence of this Arbitration Agreement will remain in force and the remainder of this Arbitration Agreement shall be null and void, provided, that the determination concerning the class action waiver shall be subject to appeal.

RIGHT TO REJECT: You may reject this Arbitration Agreement by emailing a rejection notice to Company at support@leif.org (or such other email address as Company or Leif may provide to you from time to time) within thirty (30) days after the Effective Date. Any rejection notice must include: (i) your name and address; (ii) your cellular telephone number(s); (iii) your account number, if applicable; and shall state that you are rejecting the Arbitration Agreement in this Agreement. Any rejection of this Arbitration Agreement, will not affect any other provisions of, or your obligations under, this Agreement.

21. LIMITATION OF LIABILITY. EXCEPT TO THE EXTENT CAUSED BY THE WILLFUL MISCONDUCT OF COMPANY OR LEIF, NEITHER COMPANY NOR LEIF SHALL BE LIABLE TO OBLIGOR FOR LOSS OF EMPLOYMENT, LOST INCOME OR PROFITS, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, INDIRECT, OR SPECIAL DAMAGES, EVEN IF ADVISED BY OBLIGOR OF THE POSSIBILITY OF SUCH DAMAGES. THE PROVISIONS OF THIS SECTION 21 SHALL SURVIVE TERMINATION OF THIS AGREEMENT.

22. SURVIVAL OF CERTAIN PROVISIONS. Notwithstanding anything to the contrary in this Agreement, the provisions of Sections 3 (Payment Management by Leif), 5 (Reconciliation), 9 (Tax Reporting), 10 (Covenants and Representations of Obligor), 12 (Breach and Remedies), 13 (Retained Rights), 14 (Electronic Delivery), 15 (Permitted Communications), 19 (Notice and Cure), 20 (Arbitration of Claims Against Company), 22 (Limitation of Liability), and 23 (General Provisions) shall survive termination of this Agreement, your fulfillment of your obligations under this Agreement, and bankruptcy or insolvency of either party (to the extent permitted by applicable law).

23. GENERAL PROVISIONS.

a. Entire Agreement. This Agreement sets forth the entire agreement and understanding of the Parties relating to the subject matter herein and supersedes all prior or contemporaneous discussions, understandings and agreements, whether oral or written, between you and us relating to the subject matter hereof.

b. Amendments. This Agreement cannot be modified or amended except with the written consent of both Parties.

c. No Waivers. No delay or failure on the part of either Party to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance.

d. Successors and Assigns. Company (and any Person that acquires a majority interest of the equity of Company or substantially all of its assets), may sell or assign this Agreement or any of our rights, economic benefits, or obligations under this Agreement, to any Person without your permission or consent. However, you may not assign this Agreement, whether voluntarily or by operation of law, or any of your rights, economic benefits (including but not limited to the Program or Training), or obligations under this Agreement, except with Company's prior written consent and any such attempted assignment without our consent shall be null and void. Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.

e. Severability. Except as set forth in the in Section 20 (Arbitration of Claims Against Company), if one or more provisions of this Agreement are held to be unenforceable under applicable law or the application thereof to any Person or circumstance shall be invalid or unenforceable to any extent, then (i) such provision shall be excluded from this Agreement to the minimum extent necessary so that this Agreement will otherwise remain in full force and effect and enforceable, (ii) the balance of this Agreement shall be interpreted as if such provision were so excluded and (iii) the remainder of this Agreement shall be enforceable in accordance with its terms.

f. Governing Law. The validity, interpretation, construction and performance of this Agreement, all acts and transactions pursuant to this Agreement, and the rights and obligations of the Parties under this Agreement shall be governed by, construed, and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law.

g. Notices. Any notice, consent, demand or request required or permitted to be given under this Agreement shall be in writing and, except as otherwise provided, shall be deemed sufficient: (i) when sent by email from you to Leif, as the Company's ISA program manager, at support@leif.org or to such other email address as Company or Leif may provide to you from time to time, and (ii) when sent by Company or Leif to you via email at the email address you last provided to Company or Leif.

h. Execution; Electronic Transactions. This Agreement may be executed electronically or manually. Execution may be completed in counterparts (including both counterparts that are executed on paper and counterparts that are electronic records and executed electronically), which together shall constitute a single agreement. Any copy of this Agreement (including a copy printed from an image of this Agreement that has been stored electronically) shall have the same legal effect as an original.

VERIFICATION OF REVIEW AND INDEPENDENT DECISION TO ENTER INTO ISA

BY SIGNING BELOW, OBLIGOR ACKNOWLEDGES AND AGREES THAT THIS AGREEMENT IS ENTERED INTO VOLUNTARILY AND AS AN ARMS-LENGTH TRANSACTION. OBLIGOR FURTHER ACKNOWLEDGES AND AGREES WITH EACH OF THE FOLLOWING: (I) THAT I AM OF LEGAL AGE TO EXECUTE THIS AGREEMENT; (II) THAT I HAVE HAD THE OPPORTUNITY TO READ THIS AGREEMENT AND TO REVIEW ITS TERMS AND CONDITIONS WITH MY LEGAL AND FINANCIAL ADVISORS OF MY CHOOSING; (III) THAT COMPANY IS NOT AN AGENT OR FIDUCIARY OR ADVISOR ACTING FOR MY BENEFIT OR IN MY FAVOR IN CONNECTION WITH THE EXECUTION OF THIS AGREEMENT; (IV) THAT COMPANY HAS NOT PROVIDED ME WITH ANY LEGAL, ACCOUNTING, INVESTMENT, REGULATORY OR TAX ADVICE WITH RESPECT TO THIS AGREEMENT; AND (V) THAT COMPANY HAS NOT MADE ANY PROMISES OR ASSURANCES TO ME THAT ARE NOT EXPRESSLY SET FORTH IN WRITING IN THIS AGREEMENT. I UNDERSTAND THAT, BY ENTERING INTO THIS THIS AGREEMENT, I AM IRREVOCABLY AGREEING TO SHARE A FIXED PORTION OF MY FUTURE EARNED INCOME IN CONSIDERATION OF RECEIVING THE PROGRAM OR TRAINING, IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT.

IN WITNESS WHEREOF, the parties have entered into this Income Share Agreement as of the Effective Date.

Obligor: Nghia D Nguyen

Signed:

Address:
4620 Willow Park Ct
Stone Mountain GA 30083

Email: ndnguyen114@gmail.com

Date: September 19, 2019

APPROVED:

Company: Prehired, LLC

Signed:

By: Joshua Jordan

Its: CEO

Date: September 19, 2019

ELECTRONICALLY SIGNED
IP ADDRESS: 172.30.0.6
CONTRACT ID: 5d83dfc261cea3de708917c0
PRODUCT ID: 5d5b81861d0a0113f0c86d8b
STUDENT ID: 5d83ab45626c98a1ffe9b36e
UTC TIME:   2019-09-19 20:06:26.709882

# INCOME SHARE AGREEMENT

This Income Share Agreement (**"Agreement"**), is by and between Prehired (**"Funder"**, and together with any successor, assign, agent or designee the **"Company"**) and ███████ ("**Recipient**"). Company and Recipient are each collectively the **"Parties"**; and individually, each a **"Party"**. Recipient may also be referred to as **"you,"** and **"your"**; and Company may also be referred to as **"we,"** "**our,"** "**us"**.

**This Agreement is not credit or a loan, and the amount you will be required to pay (i) may be *more* or *less* than the amount provided to you; and (ii) will vary in proportion to your future income.**

**This Agreement does <u>not</u> give us any rights regarding your choice of career or employment pursuits. Accordingly, you will have payment obligations under this Agreement *even if you choose* a career (or receive income) unrelated to your Program.**

For good and valuable consideration, Company agrees to provide you with access to the Program, in exchange for which, you agree to pay Company the Income Share during the Contract Term, subject to the following terms:

1. **<u>Definitions</u>.** Terms not elsewhere defined in this Agreement shall have the following meanings:

   a. **"Business Day"** means Monday through Friday, *except* for federal holidays when New York banking institutions are closed.

   b. **"Contract Term"** means the period you have payment obligations under this Agreement. The Contract Term commences on the Effective Date and will expire at the earliest of: (i) Early Termination pursuant to Section 2; (ii) once you satisfy your Required Payments *or* reach the Payment Cap; or (iii) expiration of the Payment Window.

   c. **"Designated Account"** means the bank account designated by you for our use in connection with verifying your identity and Earned Income.

   d. **"Earned Income"** means your total wages, compensation, gross income from self-employment, and other income, as reported or required to be reported for income tax purposes. Earned Income may include another revenue source besides your own employment if you have voluntarily chosen to not seek employment and you are receiving significant revenue from another source. Notwithstanding the foregoing, Earned Income shall <u>not</u> include: (i) the income of your children; (ii) any amount paid to you under title II or XVI of the Social Security Act or under a State program funded title IV under such Act; or (iii) any amount received by you under the Child Nutrition Act of 1966.

   e. **"Effective Date"** means the date this Agreement is accepted and countersigned by Company.

   f. **"Estimated Income Documentation"** means, for each source of your Earned Income, a copy of any pay stub or letter from your employer containing your salary information, a self-employment contract, a consulting agreement, a good faith estimate of your self-employment income for the current calendar year (along with supporting documentation), or other verifiable source acceptable to us.

g. **"Final Income Documentation"** means, for each source of your Earned Income, a year-end pay stub, Form W-2, Form 1099, Schedule K-1, or other verifiable source acceptable to us.

h. **"ISA Amount"** means $15,000.00, which represents the cash price associated with the Program.

i. **"Income Share"** means the percentage of your Earned Income you will pay during the Contract Term. Your Income Share is 12.5% (inclusive of an AutoPay Discount) and is subject to adjustment based on your: (i) election of any applicable consumer benefits and (ii) your Account Reconciliation, as described herein.

j. **"Monthly Payment"** means the dollar amount you will share with us on a monthly basis; and is calculated as your (A) Income Share *multiplied* by (B) your monthly Earned Income. Your Monthly Payments will fluctuate with changes in your Earned Income.

k. **"Payment Cap"** (or **"Ceiling"**) means the maximum amount you might pay under this Agreement, not including any fees and collection costs. Your maximum Payment Cap is $30,000.00. You may also be eligible for incremental Payment Caps as set forth in the chart below.

| Contract Term *(months)* | Incremental Payment Cap |
|:---:|:---:|
| 1 - 12 | **$30,000.00** |
| 13 - 24 | **$30,000.00** |
| 25 - 36 | **$30,000.00** |
| 37+ | **$30,000.00** |

l. **"Payment Window"** means 96 months, and represents the maximum period of your obligations under this Agreement. Your Payment Window will commence on the month that your first Monthly Payment is made. Certain situations of voluntary removal from the the workforce may extend your Payment Window as set forth in Section 8 below.

m. **"Person"** means any individual, corporation, limited liability company, trust, joint venture, association, company, limited or general partnership, unincorporated organization or other entity.

n. **"Program"** means Prehired Science-Based Sales.

o. **"Required Payments"** means the number of Monthly Payments you are required to make whenever your Earned Income is greater than the Minimum Threshold. You have 48 Required Payments.

p. **"Minimum Threshold"** (or **"Floor"**) means a pre-tax annual Earned Income of *less* than $40,000.00 (equivalent to $3,333.33) on a monthly basis (the **"Monthly Minimum Threshold"**).

2. **Cancellation and Early Termination.**

   a. **Cancellation.** You have a right to cancel this Agreement, without penalty, within 7 Business Days from the Effective Date (the **"Cancellation Period"**). If you cancel *prior* to the Cancellation Period, this Agreement will be terminated at no cost to you, you will be withdrawn from the Program, and you will not have any further obligations.

   b. **Partial Refunds.** If you withdraw from the Program *after* the Cancellation Period, you may be entitled to a pro rata reduction in your Income Share *or* the length of the Payment Term, in accordance with your Program's admission policy. Please refer to your Program guidelines for the Company's additional refund procedures.

   c. **Early Termination.** You may terminate your ISA early at any time by paying us: (i) the applicable Payment Cap (ii) *less* all previous Monthly Payments, (iii) *plus* any outstanding fees (the **"Prepayment Amount"**).

3. **Timing and Payments.**

   a. **Grace Period.** Your payments will not begin until (i) your Earned Income meets or exceeds your Minimum Threshold, and (ii) you have completed (or withdrawn from) the Program. Unless your Program offers you an extended grace period, your first Monthly Payment will be due on the first Business Day of the month after items (i) and (ii) above have occurred.

   b. **Monthly Payments.** Monthly Payments are due on the 1st Business Day of each month during the Contract Term. If you enroll in AutoPay, a different monthly payment date may be selected by us. Your initial Monthly Payment will be calculated based on your Estimated Income Documentation. If you fail to provide such documentation (and do not qualify for Deferment), we may assume that your starting Earned Income matches the average full-time income for occupations directly related to your Program.

   c. **Payment Amount.** Your Monthly Payment is calculated as: (A) your Income Share *multiplied* by (B) your monthly Earned Income. All payments shall be applied first to fees, if any, and then to the Monthly Payment as due.

   d. **Payment Deferment.** In any month during which your monthly Earned Income is *less than* your Monthly Minimum Threshold, your Monthly Payment will be zero ($0.00).

   e. **Payment End-Date.** Your Monthly Payments will end upon the earliest to occur of: (i) you make all your Required Payments; (ii) you have cumulatively paid an amount equal to the applicable Payment Cap (plus any required fees); or (iii) you reach the end of your Payment Window. If you make all required payments on time during your Contract Term, you will not owe anything at the end of your Contract Term even if your total payments are less than the ISA Amount.

4. **Electronic Fund Transfers.**

   a. **AutoPay Discount.** An Income Share Percentage discount of 1.00% is available for voluntarily enrolling into automatic electronic fund transfers (**"AutoPay"**). If AutoPay is not established, or is established, and then discontinued at any time during the Contract Term, you will no longer be eligible to receive this discount and your Income Share Percentage may increase by 1.00%. This discount may also be suspended upon the occurrence of an Event of Default.

   b. **AutoPay Authorization.** By authorizing AutoPay, you agree to pay all amounts you owe (including Monthly Payments, any fees, and Reconciliation Amounts) from your Designated Account by authorizing us to debit your Designated Account by ACH electronic fund transfer for such amount due, when due, during the Contract Term.

   c. **Revocation of AutoPay.** You have the right at any time to revoke your prior authorization for electronic funds transfers, by providing written notice of such revocation (to be signed and uploaded to your customer portal) at least three (3) Business Days' prior to a scheduled payment. Revocation of AutoPay will make you ineligible for any AutoPay discounts and any Income Share Percentage discounts you received for enrolling in AutoPay will be discontinued.

5. **Annual Account Reconciliation.** On or before April 30th each year during the Contract Term (and on April 30 following the end of the Contract Term), you agree to: (i) complete and sign an IRS Form 4506T (or any successor form) designating us as a recipient of your tax return information for returns covering all months of your Contract Term; and (ii) provide us with your Final Income Documentation for each source of Earned Income in the prior calendar year. We will use your Final Income Documentation to determine whether the payments you made in the prior calendar year were more or less than owed. If you underpaid, we will bill you for, and you agree to pay, the difference (the **"Reconciliation Amount"**). If you overpaid, we will apply excess amounts first to unpaid fees and then as a credit toward future payments due. If you overpaid in the final year of your Contract Term, we will refund to you the excess

amounts after a final accounting is performed.

6. **Adjustment of Monthly Payments.** We may re-estimate your Monthly Payments periodically, and on each June 1st following the Effective Date. You have two options:

    a. On or before April 30th, you can provide us with Estimated Income Documentation for each source of Earned Income for the current calendar year, which we will use to re-estimate your Monthly Payments.

    b. If you do not to provide us with Estimated Income Documentation, we may assume your monthly Earned Income is *the greater of*: (i) such level that your Monthly Payment obligations would approximately equal such amount required to return the Payment Cap over your remaining Required Payments, or (ii) your average monthly Earned Income from the previous six (6) months of employment. Since this is only an estimate of your Earned Income, it may result in Monthly Payments that are either higher or lower than what you actually owe; and therefore, subject to future Account Reconciliation

    c. Notwithstanding the above paragraph, If you supply us with income verification information within 180 days of our assuming an Earned Income level under paragraph (b) above, you shall be entitled to have any payments that were made in excess of your actual obligation either refunded or credited to future obligations under this Agreement.

7. **Income Verification.** You agree to inform us of any changes in your monthly Earned Income upon our written request, and in any event, within thirty (30) days of such change by uploading an updated Estimated Income Documentation to your customer portal. In order to verify your Earned Income, you grant Company and its agents the right to access and transmit your personal and financial information from your Designated Account, and that we may verify your income independently using a number of sources, including consumer reporting agencies, third party databases, technology, and we may contact your employers, who you authorize to disclose to us, all forms of cash and non-cash compensation paid or provided to you. If information made available to us shows that your Earned Income has changed, we may modify your Monthly Payments even if you did not provide updated Estimated Income Documentation.

8. **Payment Deferment.**

    a. In any month during which your monthly Earned Income is *less than* your Monthly Minimum Threshold, your Monthly Payment will be zero ($0.00) (**"Deferment"**); *provided however*, your account must be current and in good standing at the commencement of any Deferment period. To qualify for Deferment, you must upload to your customer portal documentation verifying the circumstances for Deferment (**"Deferment Documentation"**). Upon our receipt and satisfactory verification of such Deferment Documentation, your account will go in Deferment status for the next upcoming Monthly Payment after which all requested Deferment Documentation has been properly completed and verified. During Deferment, you must provide us with updated Deferment Documentation as requested to maintain eligibility for Deferment. You must notify us within five days if your monthly Earned Income increases to above the Monthly Minimum Threshold.

    b. In limited circumstances we may extend your Payment Window by one month for each month of Deferment, up to an additional sixty months, if you: (i) enroll in a program of study at a college/university or a proprietary or vocational education program that provides a more advanced degree or certification; (ii) are living or traveling outside of the United States and not making any Monthly Payments; or (iii) have voluntarily abandoned the labor force and not actively seeking employment; *provided however*, if you have voluntarily chosen to not seek employment but you are receiving significant revenue from another source, we may calculate your Earned Income by considering such other revenue sources.

9. **Limitation on Income Share Agreements.** You agree that you have not, and will not, enter into additional income-share agreements with us or any other Person that, in the aggregate, exceed twenty percent (20%) of your Earned Income.

10. **Notice of Material Changes.** You agree to notify us by updating your customer portal within four Business Days of any change in your:

    **a.** primary residence, phone number or email, or any other material change to information previously provided;

    **b.** employment status, including both terminations of employment and any new employment;

    **c.** monthly Earned Income;

    **d.** joint filing tax status (so we may exclude earnings of your spouse from the calculation of your Earned Income);

    **e.** Designated Account for purposes of Earned Income verification; and

    **f.** Deferment status.

11. **Default and Remedies.**

    **a. Default.** Without prejudice to our other rights and remedies hereunder, any one or more of the following events shall constitute an **"Event of Default"** under this Agreement: (i) your failure to make any payment (including Monthly Payments, Reconciliation Amounts, or fees) in full and on time as such payment becomes due, and such failure is not cured within fifteen days of the date when due (a **"Material Breach"**); (ii) your failure to provide Final Income Documentation, Estimated Income Documentation or Deferment Documentation within thirty days following its respective due date; (iii) your failure to provide us a completed and signed IRS Form 4506-T (or any successor form) within thirty days of our request; (iv) your failure to provide to us a Notice of a Material Change within ten days following its due date; or (v) your violation of Section 12 (Truthfulness of Application) or any other provision of this Agreement that impairs our rights, including but not limited to our receipt of information we deem to be materially false, misleading or deceptive.

    **b. Remedies Upon Default.** Upon the occurrence of an Event of Default, you acknowledge and agree that we may elect to enforce all legal rights and remedies in the collection of such amounts that are due and all related fees. You further acknowledge and agree to indemnify, pay and reimburse all of our court costs, reasonable attorneys' fees, and other collection costs relating to such Event of Default (including our fees and costs due to your bankruptcy or insolvency, if applicable) to the extent permitted by applicable law. Upon the occurrence of an Event of Default we may assign our interest in and to this Agreement to a third-party, thereby vesting in such third-party all rights, powers and privileges of Company hereunder. Any delay in exercising any of these rights shall not constitute a waiver of such rights.

    **c. Liquidated Damages for Material Breach.** The Parties acknowledge and agree that quantifying losses arising from a Material Breach is inherently difficult because your future income is not currently known nor is your full income potential over the Contract Term. Accordingly, upon the occurrence of a Material Breach that remains uncured after our notice and demand, we may elect to recover liquidated damages from you calculated as either: (i) the ISA Amount (if such Material Breach occurs prior to the first anniversary of the Effective Date) or (ii) the applicable Payment Cap *less any* Monthly Payments made to date (if such Material Breach occurs after the first anniversary of the Effective Date) (**"Liquidated Damages"**).

    **d.** You acknowledge and agree that the harm caused to us by an uncured Material Breach would be impossible or very difficult to accurately estimate at the time of contract, and therefore, the above Liquidated Damages are not a penalty, but rather, a reasonable estimate of the anticipated or actual harm that might arise from such an Event of Default based upon our expected investment returns by providing to you the Program in exchange for your promise to pay the Income Share over the Contract Term.

12. **Truthfulness of Application.** You represent and warrant that: (a) all information provided in connection with your application is true and accurate and you have not provided any false, misleading or deceptive statements or omissions of fact; (b) you have never been convicted of a felony or of any crime involving dishonesty or breach of trust under any federal or state statute, rule or regulation; (c) you are

not contemplating bankruptcy and you have not consulted with an attorney regarding bankruptcy in the past six months; (d) you are at least 19 years of age and the age of majority in your state of current residence; (e) you are a U.S. citizen or permanent resident of the United States; (f) during the Contract Term, you will not conceal, defer or transfer any of your Earned Income for the purpose (whether directly, indirectly, incidental or intentional) of avoiding/reducing you payment obligations hereunder; (g) you will timely and fully provide all information and documentation as required or requested under this Agreement, and such information shall be true, complete and accurate in all respects; (h) you will keep accurate records relating to your Earned Income; and you will retain copies of such information for one full year following the end of the Contract Term; and (i) you have filed all federal tax returns and reports as required by law, they are true and correct in all material respects, and you have paid all federal taxes and other assessments due.

13. **Tax Reporting.** You acknowledge that the federal and state income tax consequences of income share agreements are not certain, and that we have <u>not</u> provided you with any tax advice whatsoever. Notwithstanding the foregoing, recognizing that all Parties are best served by consistent, good faith tax reporting of the transaction in accordance with what the Parties believe to be its economic substance, you agree to report this transaction for all income tax purposes as a financial contract, where the amount of your Income Share payments shall be treated: (i) *first*, with respect to so much of such amount as does not exceed the ISA Amount, as a recovery of investment (with a corresponding reduction in basis) in the contract; and (ii) *second*, as income on the contract which is includible in gross income. You acknowledge that you have had an opportunity to consult with your own trusted advisors about the tax consequences of this Agreement.

14. **Customer Identification Policy.** To help the government fight the funding of terrorism and money laundering activities, we will obtain, verify and record information that identifies each person who enters into this Agreement. What this means for you: when you enter into this Agreement, we reserve the right to ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents, or for you to provide true and correct copies to us.

15. **Communications & Reminders.**

   **a.** You understand and agree that we may monitor and/or record any of your phone conversations with us. We may deliver any documents or notices related to this Agreement by electronic means. You agree to receive such documents or notices by electronic delivery and to participate through an on-line or electronic system established and maintained by us or a third party designated by us.

   **b.** We may use automated telephone dialing, text messaging systems and electronic mail to provide messages to you about payment due dates, missed payments and other important information. The telephone messages may be played by a machine automatically when the telephone is answered, whether answered by you or someone else. These messages may also be recorded in your voicemail. You give us your permission to call or send a text message to any telephone number you provide us now or in the future and to play pre-recorded messages or send text messages with information about this Agreement over the phone. You also give us permission to communicate such information to you via electronic mail. You agree that we will not be liable to you for any such calls or electronic communications, even if information is communicated to an unintended recipient. You understand that, when you receive such calls or electronic communications, you may incur a charge from the company that provides you with telecommunications, wireless and/or Internet services. You agree that we have no liability for such charges.

16. **ISA Administration.** The Funder has designated as its agent, Meratas Inc. and/or its affiliates (**"Administrator"**) to manage the customer portal, and in doing so, Administrator has been given the authority to act on behalf of Funder; including to verify your employment status; monitor your Earned Income; process payments and perform account reconciliations. In connection with our administration of your ISA, you consent to our use of your information or data to collect and analyze relating to the provision, use, and performance of this Agreement, related systems and technologies; and for use in other lawful business development and diagnostic purposes.

17. **Consent to Income Verification; Credit Reporting.** You authorize us to obtain your credit report, verify the information that you provide to us, and gather additional information that may help us assess and understand your performance under this Agreement. You understand and agree that we may verify your information (including employment and income verification) using a number of sources, including but not limited to consumer reporting agencies, third party databases, your past, present or prospective employers and any personal referrals you provide to us. You also understand and agree that we may obtain a credit report and gather additional information, including from the sources described above, in connection with the review or collection of your Agreement. If you ask, you will be informed whether or not we obtained a credit report and, if so, the name and address of the consumer reporting agency that furnished the report. You consent to our sharing of your information with our affiliates and financing parties, which we will do using reasonable data security procedures. You authorize us to report information about this Agreement to credit bureaus. Although this Agreement is not "a loan or other debt or credit instrument," we may inform credit bureaus about your positive payment behavior when you make payments as agreed. However, this also means that late payments, missed payments or other defaults under this Agreement may be reflected in your credit report.

18. **Entire Agreement. Amendments and Waivers.** This Agreement sets forth the entire agreement and understanding of the Parties relating to the subject matter herein and supersedes all prior or contemporaneous discussions, understandings and agreements, whether oral or written, between you and us relating to the subject matter hereof. Only to the extent as necessary to comply with developing federal or state laws as may be applicable to ISAs, we may amend this Agreement by providing you notice via the customer portal or to your address as designated therein. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance.

19. **Notice and Cure.** Prior to initiating a lawsuit regarding a Claim, the party asserting the Claim (the **"Complaining Party"**) shall give the other party (the **"Defending Party"**) written notice of the Claim (a **"Claim Notice"**) and a reasonable opportunity, not less than 30 days, to resolve the Claim. If we are the Complaining Party, we will send the Claim Notice to you at your e-mail and/or physical mail address appearing in our records or, if you are known to be represented by an attorney, to your attorney at his or her office address. Any Claim Notice must explain the nature of the Claim and the relief that is demanded. The Complaining Party must reasonably cooperate in providing any information about the Claim that the Defending Party reasonably requests. As used herein, **"Claim"** (i) means any past, present or future claim, dispute or controversy, regardless of the legal theory on which it is based, arising out of, relating to or in connection with this Agreement, or that arises from or is related to any relationship resulting from this Agreement; and (ii) has the broadest possible meaning and includes initial claims, counterclaims, crossclaims, and third-party claims.

20. **Jurisdiction and Venue.**

    a. The Parties irrevocably and unconditionally submit to the jurisdiction of the United States District Court for the Southern District of New York and New York state courts located in New York City and waive any objection to transferring any action, suit or proceeding arising out of this Agreement to such court. Each of Company and Recipient hereby irrevocably waives, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any action or proceeding with respect to this Agreement, (a) any Claim that it is not personally subject to the jurisdiction of the above-named court for any reason other than the failure to lawfully serve process, (b) that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such court, and (c) to the fullest extent permitted by applicable law, that (i) the suit, action or proceeding in any such court is brought in an inconvenient forum, (ii) the venue of such suit, action or proceeding is improper, and (iii) this Agreement, or the subject matter hereof, may not be enforced in or by such courts

    b. Notwithstanding the above, if a Claim by the Company against you is cognizable in a small claims court (or your state's equivalent court) having jurisdiction over such Claim, the Company may pursue such Claim in that small claims court; however, if the Claim is transferred, removed, or appealed to a

different court, it shall be resolved in accordance with Section 20(a) above. Nothing in that small claims court lawsuit shall constitute a waiver of any Party's rights under this Agreement with respect to Claims asserted in any related or unrelated lawsuits. Moreover, any dispute concerning the validity or enforceability of this Agreement or any part thereof (including, without limitation, the class action waiver below) must be decided in accordance with Section 20(a) above.

21. **WAIVER OF JURY TRIAL.** THE PARTIES WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT OR UNDER ANY AGREEMENT, INSTRUMENT OR OTHER DOCUMENT CONTEMPLATED HEREBY OR RELATED HERETO AND IN ANY ACTION DIRECTLY OR INDIRECTLY RELATED TO OR CONNECTED WITH THE ISA PROVIDED FOR HEREIN, OR ANY CONDUCT RELATING TO THE ADMINISTRATION OR ENFORCEMENT OF SUCH ISA OR ARISING FROM THE RELATIONSHIP OF ANY OF THE PARTIES HERETO. RECIPIENT ACKNOWLEDGES THAT THIS WAIVER MAY DEPRIVE IT OF AN IMPORTANT RIGHT AND THAT SUCH WAIVER HAS KNOWINGLY BEEN AGREED TO BY RECIPIENT.

22. **CLASS ACTION WAIVER.** RECIPIENT ACKNOWLEDGES AND AGREES THAT ANY CLAIM YOU MAY HAVE AGAINST COMPANY, INCLUDING COMPANY'S PAST OR PRESENT EMPLOYEES OR AGENTS, SHALL BE BROUGHT INDIVIDUALLY AND YOU SHALL NOT JOIN SUCH CLAIM WITH CLAIMS OF ANY OTHER PERSON OR ENTITY OR BRING, JOIN OR PARTICIPATE IN A CLASS ACTION AGAINST COMPANY.

23. **Successors and Assigns.** Company may assign and grant participations in this Agreement to other Persons, in which case, this Agreement, and the rights and obligations of the Parties hereunder, will be binding upon and inure to the benefit of Company's successors and assigns. This Agreement is personal to Recipient so you may *not* assign any of your rights, benefits or obligations under this Agreement, except with our prior written consent, and any such attempted assignment without such consent shall be null and void.

24. **Notices.** Any notice, demand or request under this Agreement shall be in writing and, except as otherwise provided, shall be deemed sufficient when sent by email, delivered through the customer portal, or two (2) Business Days after being deposited in the U.S. mail as certified or registered mail with postage prepaid. All notices to Company shall be in writing signed by the Recipient and uploaded to the documentation center via your online customer portal.

25. **Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, then (i) such provision shall be excluded from this Agreement to the minimum extent necessary so that this Agreement will otherwise remain in full force and effect, (ii) the balance of the Agreement shall be interpreted as if such provision were so excluded and (iii) the balance of this Agreement shall be enforceable in accordance with its terms.

26. **Governing Law.** The validity, interpretation, construction, and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto and thereto shall be governed, construed, and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law.

27. **Waiver Due to Death or Disability.** We will waive your obligations under this Agreement, upon your death or if you become totally and permanently disabled. If applicable, you or your estate must provide us with any tuition refund, which we will apply to the ISA Amount. If you would like to assert a waiver based on total and permanent disability, you will need to submit an application accompanied by a physician's statement and such other information or documentation that we may require, showing that you are unable to work in any occupation due to a condition that began or deteriorated after the Effective Date and that the disability is expected to be permanent. If we approve your disability waiver application, such waiver will only be effective as of the date of the completed and approved application.

28. **Execution; Electronic Signature.** Each Party agrees that electronic signatures are intended to authenticate this writing and to have the same force and effect as manual signatures. **"Electronic signature"** means any electronic sound, symbol, or process attached to or logically associated with a

record and executed and adopted by a party with the intent to sign such record pursuant to the New York Electronic Signatures and Records Act (N.Y. State Tech. §§ 301-309) as amended from time to time. Execution may be completed in counterparts, which together constitute a single agreement. Any copy of this Agreement (including a copy printed from an electronic image) shall have the same legal effect as an original.

29. **Marital Property.** If you are married or get married and file your taxes jointly with your spouse, you agree to provide evidence of your individual Earned Income so that we can exclude your spouse's income from your Monthly Payment. If you are married and live in Wisconsin on the date you sign this Agreement or during the Contract Term, your signature on this Agreement confirms that any financial obligation incurred as a result of this Agreement is being incurred in the interest of your marriage or family. If you are married and live in Texas on the date you sign this Agreement or during the Contract Term, you agree to hold your Earned Income in a separate bank account from your spouse.

**30.** THIS AGREEMENT REPRESENTS AN ARMS-LENGTH TRANSACTION. BY SIGNING BELOW, RECIPIENT ACKNOWLEDGES AND AGREES THAT YOU HAVE HAD THE OPPORTUNITY TO READ THIS AGREEMENT AND TO REVIEW ITS TERMS AND CONDITIONS WITH YOUR OWN TRUSTED ADVISORS. NEITHER FUNDER NOR ADMINISTRATOR IS AN AGENT, FIDUCIARY OR ADVISOR OF RECIPIENT IN CONNECTION WITH THIS AGREEMENT. YOU ACKNOWLEDGE AND AGREE THAT WE HAVE NOT PROVIDED YOU WITH ANY LEGAL, ACCOUNTING, INVESTMENT, REGULATORY OR TAX ADVICE WITH RESPECT TO THIS AGREEMENT.

IN WITNESS WHEREOF, the Parties have entered into this Income Share Agreement as of the Effective Date.

**FUNDER**
Prehired
By: _____
Name: Josh Santos
Title: AUTHORIZED SIGNATORY
Date: 02/15/2020

**RECIPIENT**
████████████
By: ████████████
Date: 02-13-2020

[X] **I consent to the** Electronic Funds Transfer Authorization **as specified.**

Recipient IP: 50.37.240.21

Funder IP: 72.80.159.111

## Docket Report Results

**Case Description**

**Case ID:**     JP13-22-000897 - PREHIRED RECRUITING LLC VS MEHMED TIRO *-NON JURY TRIAL*
**Filing Date:** Thursday , January 27th, 2022
**Type:**        60 - JP DEBT ACTION
**Status:**      CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | | **Aliases:** *none* | |
| 2 | 1 | | PLAINTIFF | @3561327 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | | **Aliases:** *none* | |
| 3 | 6 | | DEFENDANT | @3561328 | ███████████ |
| **Address:** | ███████ LAWRENCEVILLE GA 30043 | | | **Aliases:** *none* | |
| 5 | | | JUDGE | 100956 | UFBERG, SUSAN E |
| **Address:** | JUSTICE OF THE PEACE COURT 5 EAST PINE STREET GEORGETOWN DE 19947 | | | **Aliases:** *none* | |

▸ Search Home    ▸ New Search    ▸ Report Selection    ▸ Case Description
▸ Related Cases    ▸ Event Schedule    ▸ Case Parties    ▸ Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Accepts/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001012 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001012 - PREHIRED RECRUITING LLC VS NYIA EVANS -*NON JURY TRIAL* |
| **Filing Date:** | Friday , January 28th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3562009 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3562010 | ████████████████ |
| **Address:** | ████████████████ LAGRANGE GA 30241 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100056 | HEBERG, SUSAN E |

▶ Search Home　　▶ New Search　　▶ Report Selection　　▶ Case Description
▶ Related Cases　　▶ Event Schedule　　▶ Case Parties　　▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Assigns/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

**Case ID:**          JP13-22-001042
**Docket Start Date:**
**Docket Ending Date:**

**Case Description**

**Case ID:**       JP13-22-001042 - PREHIRED RECRUITING LLC VS IKENNA OGBEKA -*NON JURY TRIAL*
**Filing Date:** Monday , January 31st, 2022
**Type:**        60 - JP DEBT ACTION
**Status:**      CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3562290 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3562291 | ████████ |
| **Address:** | ████████ POWDER SPRINGS GA 30127 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | | HEBERG, SUSAN E |

© 2019 Aveiru Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Aveiru Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Accepts/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001047 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001047 - PREHIRED RECRUITING LLC VS LIANE BARBER -*NON JURY TRIAL* |
| **Filing Date:** | Monday , January 31st, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3562300 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3562301 | ███████████ |
| **Address:** | ███████████ ATLANTA GA 30311 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 4000SG | HERERA, SUSAN E |

© 2019 Averu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Acquires/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001052 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001052 - PREHIRED RECRUITING LLC VS MINDY LINGERFELT -*NON JURY TRIAL* |
| **Filing Date:** | Monday , January 31st, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3562309 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3562310 | ███████████ |
| **Address:** | BALL GROUND GA 30107 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home   ▶ New Search   ▶ Report Selection   ▶ Case Description
▶ Related Cases   ▶ Event Schedule   ▶ Case Parties   ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Acquire/Agrees to Disclaimer. Not for official use.

# Docket Report Results

<u>Report Selection Criteria</u>

| | |
|---|---|
| **Case ID:** | JP13-22-001074 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

<u>Case Description</u>

**Case ID:**     JP13-22-001074 - PREHIRED RECRUITING LLC VS ANFERNEE KING *-NON JURY TRIAL*

**Filing Date:**     Monday , January 31st, 2022

**Type:**     60 - JP DEBT ACTION

**Status:**     CLOSED - CLOSED

<u>Related Cases</u>

*No related cases were found.*

<u>Case Event Schedule</u>

*No case events were found.*

Case Parties

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3562366 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3562367 | ███████████ |
| **Address:** | ███████████ DONALSONVILLE GA 39845 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 490966 | HERBER, SUSAN F |

© 2019 Avenu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Avenu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcquiresAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

Case ID:        JP13-22-001182
Docket Start Date:
Docket Ending Date:

**Case Description**

Case ID:       JP13-22-001182 - PREHIRED RECRUITING LLC VS DEMARRIO JAMES -*NON JURY TRIAL*
Filing Date: Tuesday , February 01st, 2022
Type:        60 - JP DEBT ACTION
Status:       CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3562999 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3563000 | ███████████ |
| **Address:** | ███████████ MARIETTA GA 30008 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcquiresAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

    **Case ID:**         JP13-22-001212
    **Docket Start Date:**
    **Docket Ending Date:**

**Case Description**

    **Case ID:**     JP13-22-001212 - PREHIRED RECRUITING LLC VS DANIEL HAUSEN *-NON JURY TRIAL*
    **Filing Date:** Wednesday, February 02nd, 2022
    **Type:**       60 - JP DEBT ACTION
    **Status:**     CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3563174 | PREHIRED RECRUITING LLC |
| **Address:** 8 THE GREEN STE B DOVER DE 19901 | | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3563175 | ███████████ |
| **Address:** CARROLLTON GA 30117 | | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

© 2019 Avenu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Avenu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Assures/Agrees to Disclaimer. Not for official use.

# Docket Report Results

## Report Selection Criteria

**Case ID:**           JP13-22-001223
**Docket Start Date:**
**Docket Ending Date:**

## Case Description

**Case ID:**     JP13-22-001223 - PREHIRED RECRUITING LLC VS TIMMY HUTSON -*NON JURY TRIAL*
**Filing Date:** Wednesday, February 02nd, 2022
**Type:**        60 - JP DEBT ACTION
**Status:**      CLOSED - CLOSED

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case Parties

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3563216 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3563217 | ▆▆▆▆▆▆▆▆ |
| **Address:** | ▆▆ MONROE GA 30656 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▸Search Home    ▸New Search    ▸Report Selection    ▸Case Description
▸Related Cases    ▸Event Schedule    ▸Case Parties    ▸Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001224 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001224 - PREHIRED RECRUITING LLC VS CHASE BYRD -*NON JURY TRIAL* |
| **Filing Date:** | Wednesday, February 02nd, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3563218 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3563219 | ██████████ |
| **Address:** | ██████████ HAZLEHURST GA 31539 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▸Search Home   ▸New Search   ▸Report Selection   ▸Case Description
▸Related Cases   ▸Event Schedule   ▸Case Parties   ▸Docket Entries

© 2019 Aventu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Aventu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

## Docket Report Results

Report Selection Criteria

**Case ID:** JP13-22-001326
**Docket Start Date:**
**Docket Ending Date:**

**Case Description**

**Case ID:** JP13-22-001326 - PREHIRED RECRUITING LLC VS DEDRIC BROWN -*NON JURY TRIAL*
**Filing Date:** Friday , February 04th, 2022
**Type:** 60 - JP DEBT ACTION
**Status:** CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3564131 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3564132 | ████████████ |
| **Address:** | ████████████ STONE MOUNTAIN GA 30083 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Accepts/Agrees to Disclaimer. Not for official use.

## Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001346 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

**Case ID:** JP13-22-001346 - PREHIRED RECRUITING LLC VS ANDRE SOLIS -*NON JURY TRIAL*
**Filing Date:** Friday , February 04th, 2022
**Type:** 60 - JP DEBT ACTION
**Status:** CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| | | | | | |
| 2 | 1 | | PLAINTIFF | @3564170 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| | | | | | |
| 3 | | | DEFENDANT | @3564171 | ███████████ |
| **Address:** | ███████████ CUMMING GA 30028 | | **Aliases:** | *none* | |
| | | | | | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Accepts/Agrees to Disclaimer. Not for official use.

# Docket Report Results

### Report Selection Criteria

**Case ID:**               JP13-22-001365
**Docket Start Date:**
**Docket Ending Date:**

### Case Description

**Case ID:**     JP13-22-001365 - PREHIRED RECRUITING LLC VS CASHA SANDERS -*NON JURY TRIAL*
**Filing Date:**  Friday , February 04th, 2022
**Type:**        60 - JP DEBT ACTION
**Status:**      CLOSED - CLOSED

### Related Cases

*No related cases were found.*

### Case Event Schedule

*No case events were found.*

### Case Parties

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3564211 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3564212 | ████████████ |
| **Address:** | ████████ SUWANEE GA 30024 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcquireAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Case ID:** JP13-22-001367
**Docket Start Date:**
**Docket Ending Date:**

## Case Description

**Case ID:** JP13-22-001367 - PREHIRED RECRUITING LLC VS BRANDON HURT -*NON JURY TRIAL*
**Filing Date:** Friday , February 04th, 2022
**Type:** 60 - JP DEBT ACTION
**Status:** CLOSED - CLOSED

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case Parties

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3564215 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3564216 | ███████████ |
| **Address:** | ███████████ MARIETTA GA 30062 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home     ▶ New Search     ▶ Report Selection     ▶ Case Description
▶ Related Cases     ▶ Event Schedule     ▶ Case Parties     ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Accepts/Agrees to Disclaimer. Not for official use.

# Docket Report Results

<u>Report Selection Criteria</u>

**Case ID:**          JP13-22-001383
**Docket Start Date:**
**Docket Ending Date:**

<u>Case Description</u>

**Case ID:**    JP13-22-001383 - PREHIRED RECRUITING LLC VS ARTIS HUFF -*NON JURY TRIAL*
**Filing Date:** Friday , February 04th, 2022
**Type:**     60 - JP DEBT ACTION
**Status:**    CLOSED - CLOSED

<u>Related Cases</u>

*No related cases were found.*

<u>Case Event Schedule</u>

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3564260 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3564261 | ███████████ |
| **Address:** | ████████ NEWNAN GA 30265 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001386 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

**Case ID:** JP13-22-001386 - PREHIRED RECRUITING LLC VS ANDY LOPEZ -*NON JURY TRIAL*
**Filing Date:** Friday , February 04th, 2022
**Type:** 60 - JP DEBT ACTION
**Status:** CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3564267 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3564268 | ▮▮▮▮▮▮▮▮ |
| **Address:** | ▮▮▮▮▮▮▮ LOGANVILLE GA 30052 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

**Case ID:**              JP13-22-001401
**Docket Start Date:**
**Docket Ending Date:**

**Case Description**

**Case ID:**    JP13-22-001401 - PREHIRED RECRUITING LLC VS MICHAEL PEDIGO -*NON JURY TRIAL*
**Filing Date:**  Friday , February 04th, 2022
**Type:**       60 - JP DEBT ACTION
**Status:**     CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3564312 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3564313 | ███████████ |
| **Address:** | ███████████ DALLAS GA 30157 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home   ▶ New Search   ▶ Report Selection   ▶ Case Description
▶ Related Cases   ▶ Event Schedule   ▶ Case Parties   ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Acquires/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

    **Case ID:**       JP13-22-001469
    **Docket Start Date:**
    **Docket Ending Date:**

**Case Description**

    **Case ID:**     JP13-22-001469 - PREHIRED RECRUITING LLC VS SHADE JOHNSON -*NON JURY TRIAL*
    **Filing Date:**    Tuesday , February 08th, 2022
    **Type:**           60 - JP DEBT ACTION
    **Status:**       CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565372 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565373 | ███████████ |
| **Address:** | ████████████ COVINGTON GA 30014 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

## Docket Report Results

Report Selection Criteria

**Case ID:**           JP13-22-001494
**Docket Start Date:**
**Docket Ending Date:**

### Case Description

**Case ID:**     JP13-22-001494 - PREHIRED RECRUITING LLC VS NETER COOK -*NON JURY TRIAL*
**Filing Date:** Tuesday , February 08th, 2022
**Type:**        60 - JP DEBT ACTION
**Status:**      CLOSED - CLOSED

### Related Cases

*No related cases were found.*

### Case Event Schedule

*No case events were found.*

### Case Parties

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565436 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565437 | ███████████ |
| **Address:** | ██████████ NEWNAN GA 30263 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AccynteAgreee to Disclaimer. Not for official use.

# Docket Report Results

<u>Report Selection Criteria</u>

**Case ID:**            JP13-22-001495
**Docket Start Date:**
**Docket Ending Date:**

<u>Case Description</u>

**Case ID:**    JP13-22-001495 - PREHIRED RECRUITING LLC VS NATHAN NGUYEN -*NON JURY TRIAL*
**Filing Date:** Tuesday , February 08th, 2022
**Type:**       60 - JP DEBT ACTION
**Status:**     CLOSED - CLOSED

<u>Related Cases</u>

*No related cases were found.*

<u>Case Event Schedule</u>

*No case events were found.*

<u>Case Parties</u>

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| | | | | | |
| 2 | 1 | | PLAINTIFF | @3565438 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| | | | | | |
| 3 | | | DEFENDANT | @3565439 | ███████████ |
| **Address:** | ████████ STONE MOUNTAIN GA 30083 | | **Aliases:** | *none* | |
| | | | | | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

© 2019 Avenu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Avenu Insights & Analytics, LLC in the United States and/or other countries.
This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution,
display, or disclosure of this material or the information contained herein is prohibited. User AccuraAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

    **Case ID:**        JP13-22-001521
    **Docket Start Date:**
    **Docket Ending Date:**

**Case Description**

    **Case ID:**      JP13-22-001521 - PREHIRED RECRUITING LLC VS LATANYA JONES -*NON JURY TRIAL*
    **Filing Date:** Tuesday , February 08th, 2022
    **Type:**       60 - JP DEBT ACTION
    **Status:**     CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565499 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565500 | ███████████ |
| **Address:** | ██████████ EAST POINT GA 30344 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001579 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001579 - PREHIRED RECRUITING LLC VS PAUL HUTCHENS -*NON JURY TRIAL* |
| **Filing Date:** | Tuesday , February 08th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565653 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565654 | ███████████ |
| **Address:** | ███████████ ATHENS GA 30606 | | **Aliases:** | *none* | |

▶Search Home   ▶New Search   ▶Report Selection   ▶Case Description
▶Related Cases   ▶Event Schedule   ▶Case Parties   ▶Docket Entries

© 2019 Aveni Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Aveni Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

**Case ID:**           JP13-22-001606
**Docket Start Date:**
**Docket Ending Date:**

**Case Description**

**Case ID:**    JP13-22-001606 - PREHIRED RECRUITING LLC VS JANARD HILL -*NON JURY TRIAL*
**Filing Date:** Tuesday , February 08th, 2022
**Type:**       60 - JP DEBT ACTION
**Status:**     CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565740 | PREHIRED RECRUITING LLC |
| **Address:** 8 THE GREEN STE B DOVER DE 19901 | | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565741 | ███████████ |
| **Address:** ███████████ DARIEN GA 31305 | | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100255 | HERRES, SUSAN E |

© 2019 Aveu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AccaynsAgrees to Disclaimer. Not for official use.

## Docket Report Results

**Report Selection Criteria**

   **Case ID:**       JP13-22-001608
   **Docket Start Date:**
   **Docket Ending Date:**

**Case Description**

   **Case ID:**    JP13-22-001608 - PREHIRED RECRUITING LLC VS SARA VOYLES -*NON JURY TRIAL*
   **Filing Date:** Tuesday , February 08th, 2022
   **Type:**    60 - JP DEBT ACTION
   **Status:**   CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565746 | PREHIRED RECRUITING LLC |
| **Address:** 8 THE GREEN STE B DOVER DE 19901 | | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565747 | ████████ |
| **Address:** ████████ ACWORTH GA 30101 | | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

© 2019 Aveny Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Aveny Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

Report Selection Criteria

**Case ID:**            JP13-22-001757
**Docket Start Date:**
**Docket Ending Date:**

## Case Description

**Case ID:**     JP13-22-001757 - PREHIRED RECRUITING LLC VS ADAGIO GLOVER -*NON JURY TRIAL*
**Filing Date:** Monday , February 14th, 2022
**Type:**        60 - JP DEBT ACTION
**Status:**      CLOSED - CLOSED

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case Parties

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| | | | | | |
| 2 | 1 | | PLAINTIFF | @3567205 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| | | | | | |
| 3 | | | DEFENDANT | @3567206 | ███████ |
| **Address:** | EAST POINT GA 30344 | | **Aliases:** | *none* | |
| | | | | | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home      ▶ New Search      ▶ Report Selection      ▶ Case Description
▶ Related Cases      ▶ Event Schedule      ▶ Case Parties      ▶ Docket Entries

© 2019 Avenu Insights & Analytics, LLC. All rights reserved. Contacta and the accompanying logos are trademarks of Avenu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

**Case ID:**          JP13-22-001154
**Docket Start Date:**
**Docket Ending Date:**

**Case Description**

**Case ID:**      JP13-22-001154 - PREHIRED RECRUITING LLC VS CHAUN WITT -*NON JURY TRIAL*
**Filing Date:** Tuesday , February 01st, 2022
**Type:**        60 - JP DEBT ACTION
**Status:**      CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3562938 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3562939 | ██████████████ |
| **Address:** | ██████████████ MARYSVILLE WA 98271 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶Search Home    ▶New Search    ▶Report Selection    ▶Case Description
▶Related Cases    ▶Event Schedule    ▶Case Parties    ▶Docket Entries

© 2019 Aveva Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Aveva Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcquiresAgrees to Disclaimer. Not for official use.

## Docket Report Results

**Report Selection Criteria**

**Case ID:**           JP13-22-001496
**Docket Start Date:**
**Docket Ending Date:**

**Case Description**

**Case ID:**       JP13-22-001496 - PREHIRED RECRUITING LLC VS WILLIAM KELLEY -*NON JURY TRIAL*
**Filing Date:** Tuesday , February 08th, 2022
**Type:**        60 - JP DEBT ACTION
**Status:**      CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565441 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565442 | ███████████ |
| **Address:** | ████████████ EVERETT WA 98204 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 40002C | HEBERB, SUSAN E |

© 2019 Averu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001522 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

**Case ID:** JP13-22-001522 - PREHIRED RECRUITING LLC VS KIMBERLY SADDLER -*NON JURY TRIAL*
**Filing Date:** Tuesday , February 08th, 2022
**Type:** 60 - JP DEBT ACTION
**Status:** CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565504 | PREHIRED RECRUITING LLC |
| **Address:** 8 THE GREEN STE B DOVER DE 19901 | | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565505 | ████████████ |
| **Address:** ████████████ FEDERAL WAY WA 98001 | | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 129956 | HEBERA, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AceptaAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001525 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001525 - PREHIRED RECRUITING LLC VS KEVIN MURPHY *-NON JURY TRIAL* |
| **Filing Date:** | Tuesday , February 08th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565511 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565512 | ███████████ |
| **Address:** | ███████████ OLYMPIA WA 98501 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | | HEBERS, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Aveno Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Aveno Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

## Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001571 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001571 - PREHIRED RECRUITING LLC VS GIOVANNI ROWELL -*NON JURY TRIAL* |
| **Filing Date:** | Tuesday , February 08th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565624 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565625 | ███████████ |
| **Address:** | ████████ TACOMA WA 98409 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

© 2019 Aveni Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Aveni Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcquiresAgrees to Disclaimer. Not for official use.

# Docket Report Results

Report Selection Criteria

| | |
|---|---|
| **Case ID:** | JP13-22-001582 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

## Case Description

| | |
|---|---|
| **Case ID:** | JP13-22-001582 - PREHIRED RECRUITING LLC VS KEVIN KLEIN -*NON JURY TRIAL* |
| **Filing Date:** | Tuesday , February 08th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case Parties

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565665 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565666 | ███████ |
| **Address:** | ████████████ SEATTLE WA 98104 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Aveni Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Aveni Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcquireAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

Case ID:            JP13-22-000948
Docket Start Date:
Docket Ending Date:

**Case Description**

Case ID:     JP13-22-000948 - PREHIRED RECRUITING LLC VS DAVID BERNAL *-NON JURY TRIAL*
Filing Date: Friday , January 28th, 2022
Type:        60 - JP DEBT ACTION
Status:      CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3561799 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3561800 | ███████████ |
| **Address:** | ████████ SHELBY NC 28152 | | **Aliases:** | *none* | |

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries.
This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AssignsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001211 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001211 - PREHIRED RECRUITING LLC VS RAMI REYHANI -*NON JURY TRIAL* |
| **Filing Date:** | Wednesday, February 02nd, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3563171 | PREHIRED RECRUITING LLC |
| **Address:** 8 THE GREEN STE B DOVER DE 19901 | | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3563172 | ██████████ |
| **Address:** ██████████ CHARLOTTE NC 28204 | | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 408256 | HEREBY, SUSAN F. |

▶ Search Home   ▶ New Search   ▶ Report Selection   ▶ Case Description
▶ Related Cases   ▶ Event Schedule   ▶ Case Parties   ▶ Docket Entries

© 2019 Avenu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Avenu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AccuraAgrees to Disclaimer. Not for official use.

## Docket Report Results

| | |
|---|---|
| **Case ID:** | JP13-22-001220 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

### Case Description

**Case ID:** JP13-22-001220 - PREHIRED RECRUITING LLC VS IVORY JONES *-NON JURY TRIAL*
**Filing Date:** Wednesday, February 02nd, 2022
**Type:** 60 - JP DEBT ACTION
**Status:** CLOSED - CLOSED

### Related Cases

*No related cases were found.*

### Case Event Schedule

*No case events were found.*

### Case Parties

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3563208 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3563209 | ███████████ |
| **Address:** | SANFORD NC 27332 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Aveni Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Aveni Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Acquires/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001339 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001339 - PREHIRED RECRUITING LLC VS ALYSE PORTER -*NON JURY TRIAL* |
| **Filing Date:** | Friday , February 04th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3564156 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3564157 | ████████████ |
| **Address:** | ████████████ CHARLOTTE NC 28273 | | **Aliases:** | *none* | ████████████ |
| 4 | | | JUDGE | 432856 | HERERO, SUSAN E |

▸ Search Home    ▸ New Search    ▸ Report Selection    ▸ Case Description
▸ Related Cases    ▸ Event Schedule    ▸ Case Parties    ▸ Docket Entries

© 2019 Aveiru Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Aveiru Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Acquires/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001357 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001357 - PREHIRED RECRUITING LLC VS CIERRA MYERS -*NON JURY TRIAL* |
| **Filing Date:** | Friday , February 04th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3564187 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3564188 | ████████████ |
| **Address:** | ██████████ DURHAM NC 27703 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Avenu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Avenu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcquiresAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Case ID:**           JP13-22-001384
**Docket Start Date:**
**Docket Ending Date:**

## Case Description

**Case ID:**     JP13-22-001384 - PREHIRED RECRUITING LLC VS ARTHUR SVOBODA -*NON JURY TRIAL*
**Filing Date:** Friday , February 04th, 2022
**Type:**        60 - JP DEBT ACTION
**Status:**      CLOSED - CLOSED

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case Parties

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3564262 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3564263 | ███████████ |
| **Address:** | ████████████ CHARLOTTE NC 28209 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 400966 | HERBER, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Avenu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Avenu Insights & Analytics, LLC in the United States and/or other countries.
This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution,
display, or disclosure of this material or the information contained herein is prohibited. User Acquires/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001482 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001482 - PREHIRED RECRUITING LLC VS TERENCE PINDER -*NON JURY TRIAL* |
| **Filing Date:** | Tuesday , February 08th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC<br>4900 O'HEAR AVE PMB #114<br>N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565409 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN<br>STE B<br>DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565410 | ███████████ |
| **Address:** | ███████████<br>WINTERVILLE NC 28590 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 422050 | HEBERG, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description<br>▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

| | |
|---|---|
| **Case ID:** | JP13-22-001489 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001489 - PREHIRED RECRUITING LLC VS NICHOLAS POLYZOS -NON JURY TRIAL |
| **Filing Date:** | Tuesday , February 08th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565426 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565427 | ███████████ |
| **Address:** | ████████ CHARLOTTE NC 28270 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home   ▶ New Search   ▶ Report Selection   ▶ Case Description
▶ Related Cases   ▶ Event Schedule   ▶ Case Parties   ▶ Docket Entries

© 2019 Avenu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Avenu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Acquire/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001499 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001499 - PREHIRED RECRUITING LLC VS XAVIER HARTSOE -*NON JURY TRIAL* |
| **Filing Date:** | Tuesday , February 08th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565449 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565450 | ███████ |
| **Address:** | ████████ CROUSE NC 28033 | | **Aliases:** | *none* | ███████ |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

**Case ID:** JP13-22-001560
**Docket Start Date:**
**Docket Ending Date:**

**Case Description**

**Case ID:** JP13-22-001560 - PREHIRED RECRUITING LLC VS EARL REMO -*NON JURY TRIAL*
**Filing Date:** Tuesday , February 08th, 2022
**Type:** 60 - JP DEBT ACTION
**Status:** CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565594 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565595 | ████████████ |
| **Address:** | ████████████ FAYETTEVILLE NC 28304 | | **Aliases:** | *none* | |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

© 2019 Avenu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Avenu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Acquire/Agrees to Disclaimer. Not for official use.

## Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001564 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001564 - PREHIRED RECRUITING LLC VS ERICH NYASIMI -*NON JURY TRIAL* |
| **Filing Date:** | Tuesday , February 08th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565603 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565604 | ▬▬▬▬▬ |
| **Address:** | ▬▬▬▬ ANGIER NC 27501 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▸ Search Home    ▸ New Search    ▸ Report Selection    ▸ Case Description
▸ Related Cases    ▸ Event Schedule    ▸ Case Parties    ▸ Docket Entries

© 2019 Averu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001576 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001576 - PREHIRED RECRUITING LLC VS PETE ROWLATT -*NON JURY TRIAL* |
| **Filing Date:** | Tuesday , February 08th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565641 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565642 | ███████████ |
| **Address:** | ████████████████ CHARLOTTE NC 28262 | | **Aliases:** | *none* | |
| | | | JUDGE | | HEBERG, SUSAN E |

▸ Search Home    ▸ New Search    ▸ Report Selection    ▸ Case Description
▸ Related Cases    ▸ Event Schedule    ▸ Case Parties    ▸ Docket Entries

© 2019 Averu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcquireAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001780 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

**Case ID:** JP13-22-001780 - PREHIRED RECRUITING LLC VS NICOLAS RUSSELL -*NON JURY TRIAL*

**Filing Date:** Monday , February 14th, 2022

**Type:** 60 - JP DEBT ACTION

**Status:** CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3567290 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3567291 | ███████████ |
| **Address:** | ███████████ RALEIGH NC 27613 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 429256 | HEBERG, SUSAN E |

© 2019 Averu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001783 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

**Case ID:** JP13-22-001783 - PREHIRED RECRUITING LLC VS MICHAEL NORRIS -*NON JURY TRIAL*

**Filing Date:** Monday , February 14th, 2022

**Type:** 60 - JP DEBT ACTION

**Status:** CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3567297 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3567298 | ████████████ |
| **Address:** | ████ RALEIGH NC 27606 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home      ▶ New Search      ▶ Report Selection      ▶ Case Description
▶ Related Cases      ▶ Event Schedule      ▶ Case Parties      ▶ Docket Entries

© 2019 Aveva Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Aveva Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Assigns/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

    **Case ID:**        JP13-22-001791
    **Docket Start Date:**
    **Docket Ending Date:**

**Case Description**

    **Case ID:**    JP13-22-001791 - PREHIRED RECRUITING LLC VS GRYPHEN BLACKWELL *-NON JURY TRIAL*
    **Filing Date:**    Monday , February 14th, 2022
    **Type:**    60 - JP DEBT ACTION
    **Status:**    CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3567317 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3567318 | ████████████ |
| **Address:** | ██████████ RUTHERFORDTON NC 28139 | | **Aliases:** | *none* | |

© 2019 Averu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001817 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001817 - PREHIRED RECRUITING LLC VS BERNIE LAFLUER -*NON JURY TRIAL* |
| **Filing Date:** | Tuesday , February 15th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | FA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** *none* | | |
| 2 | 1 | | PLAINTIFF | @3567731 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** *none* | | |
| 3 | | | DEFENDANT | @3567732 | ███████████ |
| **Address:** | ███████████ CHARLOTTE NC 28227 | | **Aliases:** *none* | | |

© 2019 Aveva Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Aveva Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcquireAgrees to Disclaimer. Not for official use.

## Docket Report Results

<u>**Report Selection Criteria**</u>

| | |
|---|---|
| **Case ID:** | JP13-22-001086 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

<u>**Case Description**</u>

| | |
|---|---|
| **Case ID:** | JP13-22-001086 - PREHIRED RECRUITING LLC VS PABLO PERFECTO -*NON JURY TRIAL* |
| **Filing Date:** | Monday , January 31st, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

<u>**Related Cases**</u>

*No related cases were found.*

<u>**Case Event Schedule**</u>

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3562396 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3562397 | ██████████████ |
| **Address:** | ██████████████ BUENA PARK CA 90621 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 123256 | HEREFO, SUSAN E |

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Assigns/Agrees to Disclaimer. Not for official use.

## Docket Report Results

**Report Selection Criteria**

**Case ID:**            JP13-22-001275
**Docket Start Date:**
**Docket Ending Date:**

**Case Description**

**Case ID:**    JP13-22-001275 - PREHIRED RECRUITING LLC VS JORDAN TERRADO -*NON JURY TRIAL*
**Filing Date:**  Thursday , February 03rd, 2022
**Type:**       60 - JP DEBT ACTION
**Status:**     CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|-------|-------|----------------|------|-----|------|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3563793 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3563794 | ██████████ |
| **Address:** | ████████ SAN DIEGO CA 92119 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home      ▶ New Search      ▶ Report Selection      ▶ Case Description
▶ Related Cases      ▶ Event Schedule      ▶ Case Parties      ▶ Docket Entries

© 2019 Aveni Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Aveni Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Assigns/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001283 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

**Case ID:** JP13-22-001283 - PREHIRED RECRUITING LLC VS ROBERT FIERRO -*NON JURY TRIAL*
**Filing Date:** Thursday , February 03rd, 2022
**Type:** 60 - JP DEBT ACTION
**Status:** CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3563809 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3563810 | ███████████ |
| **Address:** | ███████ CHINO CA 91710 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶Search Home    ▶New Search    ▶Report Selection    ▶Case Description
▶Related Cases    ▶Event Schedule    ▶Case Parties    ▶Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AccepuAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

**Case ID:**            JP13-22-001331
**Docket Start Date:**
**Docket Ending Date:**

**Case Description**

**Case ID:**      JP13-22-001331 - PREHIRED RECRUITING LLC VS JEAN VILSAINT *-NON JURY TRIAL*
**Filing Date:**  Friday , February 04th, 2022
**Type:**         60 - JP DEBT ACTION
**Status:**       CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3564142 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3564143 | ███████████ |
| **Address:** | ███████████ SAN DIEGO CA 92120 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home    ▶ New Search    ▶ Report Selection    ▶ Case Description
▶ Related Cases   ▶ Event Schedule  ▶ Case Parties      ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

**Case ID:** JP13-22-001335
**Docket Start Date:**
**Docket Ending Date:**

**Case Description**

**Case ID:** JP13-22-001335 - PREHIRED RECRUITING LLC VS MIGUEL HERNANDEZ -*NON JURY TRIAL*
**Filing Date:** Friday , February 04th, 2022
**Type:** 60 - JP DEBT ACTION
**Status:** CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3564149 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3564150 | ███████ |
| **Address:** | ███████ SAN BERNARDINO CA 92410 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

© 2019 Averu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

# Docket Report Results

Report Selection Criteria

| | |
|---|---|
| **Case ID:** | JP13-22-001476 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001476 - PREHIRED RECRUITING LLC VS PHILLIP HAMILTON -*NON JURY TRIAL* |
| **Filing Date:** | Tuesday , February 08th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565393 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565394 | ██████████████ |
| **Address:** | ████████████ WEST COVINA CA 91791 | | **Aliases:** | *none* | |

▶ Search Home      ▶ New Search      ▶ Report Selection      ▶ Case Description
▶ Related Cases      ▶ Event Schedule      ▶ Case Parties      ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Accepts/Agrees to Disclaimer. Not for official use.

## Docket Report Results

**Report Selection Criteria**

    **Case ID:**          JP13-22-001562
    **Docket Start Date:**
    **Docket Ending Date:**

**Case Description**

    **Case ID:**      JP13-22-001562 - PREHIRED RECRUITING LLC VS EDGARDO ESTRADA -*NON JURY TRIAL*
    **Filing Date:**   Tuesday , February 08th, 2022
    **Type:**        60 - JP DEBT ACTION
    **Status:**      CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3565599 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3565600 | ███████████ |
| **Address:** | RIALTO CA 92377 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

© 2019 Aveva Insights & Analytics, LLC. All rights reserved. Contacts and the accompanying logos are trademarks of Aveva Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User Accepts/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

| | |
|---|---|
| **Case ID:** | JP13-22-001759 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

**Case Description**

| | |
|---|---|
| **Case ID:** | JP13-22-001759 - PREHIRED RECRUITING LLC VS ASHNEIL RAMAN *-NON JURY TRIAL* |
| **Filing Date:** | Monday , February 14th, 2022 |
| **Type:** | 60 - JP DEBT ACTION |
| **Status:** | CLOSED - CLOSED |

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3567215 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3567216 | ██████████ |
| **Address:** | ████████ SAN PABLO CA 94806 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

▶ Search Home   ▶ New Search   ▶ Report Selection   ▶ Case Description
▶ Related Cases   ▶ Event Schedule   ▶ Case Parties   ▶ Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.

## Docket Report Results

**Case ID:**            JP13-22-001773
**Docket Start Date:**
**Docket Ending Date:**

### Case Description

**Case ID:**     JP13-22-001773 - PREHIRED RECRUITING LLC VS SHAWN OLIVER -*NON JURY TRIAL*
**Filing Date:** Monday , February 14th, 2022
**Type:**        60 - JP DEBT ACTION
**Status:**      CLOSED - CLOSED

### Related Cases

*No related cases were found.*

### Case Event Schedule

*No case events were found.*

### Case Parties

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3567273 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3567274 | ██████████ |
| **Address:** | ██████████ SAN CLEMENTE CA 92672 | | **Aliases:** | *none* | |

▶Search Home    ▶New Search    ▶Report Selection    ▶Case Description
▶Related Cases    ▶Event Schedule    ▶Case Parties    ▶Docket Entries

© 2019 Averu Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Averu Insights & Analytics, LLC in the United States and/or other countries.
This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution,
display, or disclosure of this material or the information contained herein is prohibited. User Accepts/Agrees to Disclaimer. Not for official use.

# Docket Report Results

**Report Selection Criteria**

**Case ID:** JP13-22-001784
**Docket Start Date:**
**Docket Ending Date:**

**Case Description**

**Case ID:** JP13-22-001784 - PREHIRED RECRUITING LLC VS MICHAEL LITTLE -*NON JURY TRIAL*
**Filing Date:** Monday , February 14th, 2022
**Type:** 60 - JP DEBT ACTION
**Status:** CLOSED - CLOSED

**Related Cases**

*No related cases were found.*

**Case Event Schedule**

*No case events were found.*

**Case Parties**

| Seq # | Assoc | Party End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 1 | 2 | | AGENT | EA12741 | JORDAN, JOSHUA |
| **Address:** | PREHIRED RECRUITING LLC 4900 O'HEAR AVE PMB #114 N CHARLESTON SC 29405 | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | @3567301 | PREHIRED RECRUITING LLC |
| **Address:** | 8 THE GREEN STE B DOVER DE 19901 | | **Aliases:** | *none* | |
| 3 | | | DEFENDANT | @3567302 | ███████████ |
| **Address:** | ███████ CONCORD CA 94520 | | **Aliases:** | *none* | |
| 4 | | | JUDGE | 100956 | UFBERG, SUSAN E |

© 2019 Aveni Insights & Analytics, LLC All rights reserved. Contacts and the accompanying logos are trademarks of Aveni Insights & Analytics, LLC in the United States and/or other countries. This material contains trade secrets and other confidential information and is subject to a confidentiality agreement. The unauthorized use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited. User AcceptsAgrees to Disclaimer. Not for official use.